IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Reagor-Dykes Motors, LP, et al., | ) | Case No. 18-50214-rlj-11 |
| | ) | Jointly Administered |
| Debtors, | ) | |
| | ) | |
| | ) | |
| Reagor-Dykes Motors, LP, | ) | |
| Reagor-Dykes Imports, LP, | ) | |
| Reagor-Dykes Amarillo, LP, | ) | Adversary Proceeding |
| Reagor-Dykes Auto Company, LP, | ) | No.: 20-05005-rlj |
| Reagor-Dykes Plainview, LP, and | ) | |
| Reagor-Dykes Floydada, LP, | ) | |
| Reagor Auto Mall, Ltd., | ) | |
| Reagor-Dykes Snyder, L.P., | ) | |
| Reagor-Dykes Auto Mall I LLC, | ) | |
| Reagor-Dykes II LLC, | ) | |
| Reagor-Dykes III LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| Ford Motor Credit Company LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S
BRIEF IN OPPOSITION TO TRUSTEE DENNIS FAULKNER'S
(AS SUCCESSOR TO DEBTOR PLAINTIFFS) MOTION TO STRIKE**

Respectfully submitted,

**BAKER BOTTS LLP**

Michael S. Goldberg
State Bar No. 08075800
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
713-229-1234
713-229-1522 (Fax)
michael.goldberg@bakerbotts.com

and

**BAKER BOTTS LLP**

Kevin M. Sadler
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
650-739-7518
650-739-7618 (Fax)
kevin.sadler@bakerbotts.com

and

**PHILLIPS LYTLE LLP**

Craig A. Leslie
Jacob S. Sonner
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com
jsonner@phillipslytle.com

**ATTORNEYS FOR DEFENDANT**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ......................................................................................... 1

ARGUMENT .............................................................................................. 2

I.   THIS COURT CAN CONSIDER ALL OF THE ITEMS THAT
     FORD CREDIT CITED OR REFERENCED IN ITS MOTION
     TO DISMISS ...................................................................................... 2

II.  FORD CREDIT'S MOTION TO DISMISS CANNOT BE
     CONVERTED TO A MOTION FOR SUMMARY JUDGMENT,
     AND THE TRUSTEE IS NOT ENTITLED TO "LIMITED" DISCOVERY
     ....................................................................................................... 19

CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

Page

**Cases**

*In re 1701 Commerce, LLC,*
  511 B.R. 812 (Bankr. N.D. Tex. 2014) ....................................................................4, 13

*Acevedo v. Quicken Loans, Inc.,*
  2014 WL 12577401 (S.D. Tex. Jan. 31, 2014) ....................................................... 19, 20

*Ayati-Ghaffari v. JP Morgan Chase Bank, N.A.,*
  2019 WL 1550141 (E.D. Tex. Feb. 10, 2019) ................................................... 3, 14, 16

*Butler v. Colonial Savings, F.A.,*
  2020 WL 292273 (S.D. Tex. Jan. 1, 2020)....................................................................... 3

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) .......................................................................................... 2

*In re Crymes,*
  2018 WL 4006320 (Bankr. N.D. Tex. Aug. 20, 2018).............................................2, 17

*Ford Motor Credit Co. LLC v. Reagor,*
  Case No. 5:18-cv-00186-c, Dkt. 1...........................................................................*passim*

*In re Holcomb,*
  423 B.R. a (Bankr. N.D. Tex. Sept. 1, 2005)...........................................................3, 13

*In re Idearc Inc.,*
  423 B.R. 138, 146 (Bankr. N.D. Tex. 2009)..................................................... 3, 15, 16

*In re Jacobson,*
  2006 WL 2796672 (W.D. Tex. Sept. 26, 2006) .......................................................4, 13

*In re James*
  300 B.R. 890 (Bankr. W.D. Tex. 2003) ........................................................................13

*In re Katrina Canal Breaches Litigation,*
  495 F.3d 191 (5th Cir. 2007) .......................................................................................... 2

*Kaye v. Lone Star Fund V (U.S.), L.P.,*
  453 B.R. 645 (N.D. Tex. 2011) ...................................................................................... 2

*In re Kleibrink,*
  346 B.R. 734 (Bankr. N.D. Tex. 2006) ........................................................3, 14, 15, 16

*Krystal One Acquisitions, L.L.C. v. Bank of Am., N.A.*,
    805 Fed. App'x 283 (5th Cir. 2020) .................................................................... 3, 7, 9, 11

*Merkle v. Gragg*,
    2020 WL 5209538 (W.D. Tex. Aug. 31, 2020) .................................................. 3, 14, 16

*Nixon v. Goldman Sachs Mortgage Corp.*,
    2016 WL 3763425 (N.D. Tex. July 14, 2016) .................................................. 3, 7, 9, 11

*Phalanx Group Int'l v. Critical Solutions Int'l*,
    2019 WL 954727 (N.D. Tex. Feb. 26, 2019) ........................................................ 19, 20

*In re Rollings*,
    451 Fed. App'x 340 (5th Cir. 2011) .......................................................................... 4, 13

*In re Soporex, Inc.*,
    446 B.R. 750, 764 Bankr. N.D. Tex. 2011 ................................................................. 3, 13

*In re Superior Air Parts, Inc.*,
    486 B.R. 728 (Bankr. N.D. Tex. 2012) ...................................................................... 2, 17

*USA v. Smith*,
    Case No. 2:19-CR-079-D-BR ......................................................................................... 10

*In re Vitro Asset Corp.*,
    2013 WL 6044453 at *1 (Bankr. N.D. Tex. Nov. 14, 2013) ............................... 3, 15, 16

*In re Xtreme Power Inc.*,
    563 B.R. 614 (Bankr. W.D. Tex. 2016) ..................................................................... 2, 17

**Other Authorities**

Bankruptcy Rule 7012(b) ........................................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 19

Fed. R. Civ. P. 12(d) .................................................................................................................. 19

Fed. R. Civ. P. 56 ...................................................................................................................... 19

FRE 201 .................................................................................................................................. 2, 3

FRE 201(b) .................................................................................................................................. 3

FRE 201(d) .................................................................................................................................. 3

## INTRODUCTION

Ford Credit submits this Brief in Opposition to Trustee Dennis Faulker's (as Successor to Debtor Plaintiffs') Motion to Strike, which seeks an Order limiting the record upon which the Court will decide Ford Credit's pending Motion to Dismiss this Adversary Proceeding.  As discussed below, the Creditors' Trustee is asking this Court to ignore, *inter alia*, judicial admissions made by the Debtors, the Court's own holdings in the underlying bankruptcy proceeding involving the Debtors, the results of a related jury trial held in the District Court for the Northern District of Texas, documents referred to in the Adversary Complaint or central to the claims made therein, and other documentary evidence that this Court is clearly entitled to consider and judicially notice under the Federal Rules of Evidence and well-settled law interpreting the same.

Because this Court is entitled to consider each of these items on Ford Credit's pending Motion to Dismiss, the Court should reject the Creditors' Trustee's attempt to purge them from consideration.  Equally important, most of these items are cited for basic background facts and, contrary to the Creditors' Trustee's argument, none of them raise any "issues of fact" that preclude dismissal of the Adversary Proceeding.  Instead, the Adversary Proceeding should be dismissed because it attempts to shift blame for Debtors' own admitted fraud to Ford Credit – the ***primary victim*** of that fraud – and because, as a matter of law, the Creditors' Trustee cannot plausibly state any claims against Ford Credit.  And, because the Creditors' Trustee cannot plausibly state any claims against Ford Credit, the Court should also reject the Creditors' Trustee's alternative request that the Court convert Ford Credit's motion into a motion for summary judgment and allow "limited" discovery before further considering the motion.

## ARGUMENT

### I.   THIS COURT CAN CONSIDER ALL OF THE ITEMS THAT FORD CREDIT CITED OR REFERENCED IN ITS MOTION TO DISMISS

The Creditors' Trustee asks this Court to essentially ignore all of the items that Ford Credit has cited or referenced in its Motion to Dismiss, even though the law is to the contrary. Because this Court is entitled to consider all of those items, the Creditors' Trustee's Motion to Strike should be denied in its entirety.

Initially, and contrary to the Creditors' Trustee's contention, it is well-settled that, in considering Ford Credit's Motion to Dismiss, this Court can consider, *inter alia*, evidence which is: (1) attached to Ford Credit's motion to dismiss; (2) referred to in the Trustee's adversary complaint; and (3) "central" to the claims alleged in the Adversary Complaint. *See In re Xtreme Power Inc.*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *In re Crymes*, 2018 WL 4006320, at *3 (Bankr. N.D. Tex. Aug. 20, 2018); *In re Superior Air Parts, Inc.*, 486 B.R. 728, 732 n.1 (Bankr. N.D. Tex. 2012). Specific reference to particular documents in the Adversary Complaint warrants consideration of such underlying documents on Ford Credit's motion to dismiss. *See In re Xtreme Power Inc.*, 563 B.R. at 630. General reference to documents in the Adversary Complaint also warrants consideration of such documents, when such documents are "necessary to establish an element of … the [Creditors' Trustee's] claims . . .." *See id.* at 629 (citing *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)).

This Court can also consider evidence of which it can take judicial notice. Federal Rule of Evidence 201 broadly provides that "at any stage of the proceeding," the Court may take judicial notice of any fact that is either: (1) "generally known within the trial

court's territorial jurisdiction;" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE Rule 201(b), (d).

And, pursuant to Rule 201, this Court may properly take judicial notice of its own docket and of pleadings and other filings in cases before it, "whether requested or not." *In re Kleibrink*, 346 B.R. 734, 744 n.8 (Bankr. N.D. Tex. 2006); *see also Merkle v. Gragg*, 2020 WL 5209538, at *1 (W.D. Tex. Aug. 31, 2020); *Ayati-Ghaffari v. JP Morgan Chase Bank, N.A.*, 2019 WL 1550141 at *4 (E.D. Tex. Feb. 10, 2019). Rule 201 also permits the Court to take judicial notice of entered orders, "and their content," which is not "'subject to reasonable dispute'" and is "'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *In re Kleibrink*, 346 B.R. at 744 n.8.

Evidence and arguments "made, proffered or, adduced" at hearings or trials before a Bankruptcy Court are also subject to judicial notice. *See In re Idearc Inc.*, 423 B.R. 138, 146 (Bankr. N.D. Tex. 2009); *see also In re Vitro Asset Corp.*, 2013 WL 6044453 at *1 (Bankr. N.D. Tex. Nov. 14, 2013). And the Court may likewise take judicial notice of filings in other actions. *See Krystal One Acquisitions, L.L.C. v. Bank of Am., N.A.*, 805 Fed. App'x 283, 287 (5th Cir. 2020); *see also Butler v. Colonial Savings, F.A.*, 2020 WL 292273 at *1 (S.D. Tex. Jan. 1, 2020); *Nixon v. Goldman Sachs Mortgage Corp.*, 2016 WL 3763425 at *3 n.2 (N.D. Tex. July 14, 2016).

Finally, and perhaps most importantly here, it is well-established that a party's judicial admissions (including, among other things, a debtor's bankruptcy schedules) can be considered as evidence in deciding a motion to dismiss. *See, e.g., In re Soporex, Inc.*, 446 B.R. 750, 764 Bankr. N.D. Tex. 2011) (taking judicial notice of accounts receivable identified in debtors' bankruptcy schedules); *In re Holcomb*, 2005 WL 6443634, at *1 n.3

(Bankr. N.D. Tex. Sept. 1, 2005) (taking judicial notice of stock ownership statement in

debtor's bankruptcy schedule); *In re Rollings*, 451 Fed. App'x 340, 348 (5th Cir. 2011)

("Statements in bankruptcy schedules are executed under penalty of perjury and when

offered against a debtor are eligible for treatment as judicial admissions." (internal

quotations omitted)); *In re Jacobson*, 2006 WL 2796672 at *17 (W.D. Tex. Sept. 26, 2006)

(taking judicial notice of contents within debtor's statement of financial affairs); *In re 1701*

*Commerce, LLC*, 511 B.R. 812, 829 (Bankr. N.D. Tex. 2014).

        As discussed below, the above rules allow this Court to consider all of the

items cited by Ford Credit or referenced in its Motion to Dismiss.  The Creditors' Trustee's

arguments to the contrary consist primarily of two strawman arguments, alleging that issues

of fact exist as to: (1) Ford Credit's alleged "inquiry notice" of Debtors' fraud; and (2) the

allegedly "disputed" amount owed by Debtors to Ford Credit.  Dkt. 27 at 4-11.  However,

neither of these alleged issues of fact have any bearing on Ford Credit's Motion to Dismiss

or otherwise preclude dismissal of the claims asserted in the Adversary Proceeding.  And the

Creditors' Trustee's remaining arguments seeking to bar this Court's consideration of such

items are equally unavailing.

        This Adversary Proceeding should be dismissed in its entirety, as a matter of

law, because: (1) the Creditors' Trustee has not alleged, and cannot allege, a fraudulent

transfer of the Debtors' interest in any property (*see* Dkt. 16 at 8-11); (2) the Creditors'

Trustee has not alleged, and cannot allege, that its fraudulent transfer claim will benefit

Debtors' bankruptcy estate (other than creating a massive and impermissible windfall for the

Debtors themselves) (*see* Dkt. 16 at 11-13); (3) the Creditors' Trustee's alleged fraudulent

transfers were made by Debtors' in satisfaction of an antecedent debt, namely the floorplan

financing irrefutably provided by Ford Credit during the entire time that the transfers took place (*see* Dkt. 16 at 13-14); (4) the Creditors' Trustee's fraudulent transfer claim fails to plausibly allege the elements of that cause of action (*see* Dkt. 16 at 14-15); (5) the Creditors' Trustee's equitable subordination claim is barred because the Creditors' Trustee has not alleged, and cannot allege, the elements of such a claim (*see* Dkt. 16 at 15-17); (6) the Creditors' Trustee's surcharge claim fails because there are unencumbered assets available to pay the amounts that the Creditors' Trustee claims are owed, and because the amounts the Creditors' Trustee seeks to surcharge did not, as a matter of law, directly benefit Ford Credit (*see* Dkt. 16 at 17-19); (7) the Creditors' Trustee has not alleged, and cannot allege, a turnover claim because he cannot identify any "debt" owed by Ford Credit that is property of Debtors' bankruptcy estate (*see* Dkt. 16 at 19-20); (8) the Creditors' Trustee's preferential transfer claim fails because Ford Credit is insulated as a secured creditor from such allegations and, in any event, the Creditors' Trustee's allegations do not plausibly allege the elements of the claim (*see* Dkt. 16 at 20-123); (9) the Creditors' Trustee's lien determination claim is barred by this Court's orders concerning Ford Credits' valid security interest in all of Debtors' assets (*see* Dkt. 16 at 23-24); and (10) the Creditors' Trustee's disallowance claim is premature.

None of these issues implicate any "issue of fact," or require that the Court determine whether or when Ford Credit had "notice" of Debtors' fraud.  They also do not require that the Court determine the specific amount that Debtors owed to Ford Credit or the specific amount of Ford Credit's secured or unsecured claim.  Accordingly, the Creditors' Trustee has not only failed to demonstrate that any of the items cited by Ford Credit or referenced in its Motion to Dismiss should be stricken, he has also failed to

demonstrate a valid basis for this Court to convert Ford Credit's Motion to Dismiss or to defer consideration of that motion pending even "limited" discovery sought by the Creditors' Trustee as alternative relief.

### A.   THIS COURT IS ENTITLED TO CONSIDER PLEADINGS, BRIEFS, ORDERS, AND THE JURY VERDICT FROM *FORD MOTOR CREDIT COMPANY LLC V. REAGOR-DYKES AMARILLO, L.P., ET AL.*, CASE NO. 5:18-CV-00186

The Trustee's argument that this Court should strike (or disregard) the pleadings briefs, orders, and jury verdict in Ford Credit's action against Debtors' principals in the United States District Court for the Northern District of Texas is a red herring. First, the Creditors' Trustee's argument mischaracterizes the basis upon which Ford Credit seeks dismissal of the claims in Adversary Proceeding and attempts to manufacture "issues of fact" where none exist. Second, it is well-settled law that this Court can take judicial notice of the pleadings, briefs, orders, and jury verdict in the District Court action and can consider them in deciding Ford Credit's Motion to Dismiss.

      i.   Original Complaint and Application for Writ of Sequestration (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-00186-c, Dkt. 1)

The Statement of Facts supporting Ford Credit's Motion to Dismiss references the complaint filed in the District Court action solely to demonstrate that: (1) Ford Credit discovered Debtors' floorplan financing fraud in June of 2018; (2) Debtors fraudulently delayed payments due and owing to Ford Credit; (3) Debtors fraudulently engaged in double-flooring; and (4) Ford Credit commenced the District Court seeking to recover $116,168,000.00 from Debtors and their principals. *See* Dkt. 16 at 2-3. None of these facts are in dispute, and there are no "issues of fact" as to any of them that precludes dismissal of the Adversary Proceeding.

The Trustee does not, and cannot, dispute that Debtors defrauded Ford

Credit or that Debtors engaged in double-flooring. Indeed, the Trustee's Adversary

Complaint admits as much. *See* Dkt. 1 at ¶¶ 27-32. To this extent, there is no basis for the

Court to strike or disregard Ford Credit's complaint in the District Court action.

To the extent that Ford Credit also cites its complaint in the District Court

action regarding the date that Ford Credit discovered Debtors' fraud, and the amount owed

by Debtors and their principals on July 31, 2018, those basic background facts are not

material to any of Ford Credit's legal arguments in support of its Motion to Dismiss.

Instead, the substantive arguments made in Ford Credit's Motion to Dismiss focus on the

inadequacy of the allegations in the Adversary Complaint, and why it must be dismissed as

a matter of law. Dkt. 16 at 5-25. It is on that basis that Ford Credit seeks dismissal, not on

the basis of Ford Credit's complaint in the District Court action.

Contrary to the Creditors' Trustee's argument, Ford Credit's citation of its complaint

in the District Court action for these basic background facts does not otherwise raise any

"issue of fact" that precludes dismissal of the claims asserted in the Adversary Proceeding,

because this Court is entitled to take judicial notice of Ford Credit's complaint in the

District Court action for such basic background facts. *See Krystal One Acquisitions, L.L.C.*,

805 Fed. App'x at 287; *Nixon*, 2016 WL 3763425 at *3 n.2.

ii. Brief in Opposition to Defendants' Rule 56(d) Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment and to Take Discovery (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-00186-c, Dkt. 36)

and

Order denying Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment and to Take Discovery (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-00186-c, Dkt. 39)

and

Reply Brief in Support of Ford Credit's Motion for Summary Judgment and
Order granting same (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-
00186-c, Dkts. 42, 48)

The Statement of Facts in support of Ford Credit's Motion to Dismiss also

references: (1) Ford Credit's brief in opposition to Debtors' principals' attempt to delay

summary judgment in the District Court action ("Brief in Opposition to Defendants' Rule

56(d) Motion"); (2) the District Court's Order denying the motion by Debtors' principals'

attempt to delay summary judgment ("Order Denying Defendants' Rule 56(d) Motion"); (3)

the Reply Brief in Support of Ford Credit's Motion for Summary Judgment ("Reply Brief in

Support of Motion for Summary Judgment"); and (4) the District Court's Order granting

Ford Credit summary judgment ("Order Granting Summary Judgment").  Ford Credit cites

these briefs and orders as confirmation of the basic background fact that Ford Credit has

repeatedly denied that it participated in Debtors' fraud in any way, or knew about Debtors'

fraud and allowed it to continue.  Ford Credit also cites these briefs and orders as

confirmation of the basic background fact that none of the allegations made against Ford

Credit by Debtors in the District Court action were substantiated or credited by the District

Court, and did not preclude the District Court from granting summary judgment in Ford

Credit's favor in that action.

Just as Debtors' unsupported allegations to the contrary were rejected by the

District Court in that action, Ford Credit submits that this Court should reject the same

unsupported allegations made in the Adversary Complaint.  But, regardless, the merits of

Ford Credit's Motion to Dismiss are not predicated on this Court rejecting those allegations,

nor is there any "issue of fact" as to those allegations that precludes the Court from granting

Ford Credit's Motion to Dismiss.

Instead, it is well-settled that this Court may take judicial notice of Ford

Credit's Brief in Opposition to Defendants' Rule 56(d) Motion, the Order Denying

Defendants' Rule 56(d) Motion, the Reply Brief in Support of Motion for Summary

Judgment, and the Order Granting Summary Judgment for the basic background facts that

they are cited to establish. *See Krystal One Acquisitions, L.L.C.*, 805 Fed. App'x at 287; *Nixon*,

2016 WL 3763425 at *3 n.2. The substantive arguments made in Ford Credit's Motion to

Dismiss focus on the inadequacy of the allegations in the Adversary Complaint, and why it

must be dismissed as a matter of law. It is on those bases that Ford Credit seeks dismissal –

not on the basis of any submissions or findings made in the District Court action.

iii.   Amended Proposed Judgment and Final Judgment (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-00186-c, Dkts. 49, 104)

Ford Credit's brief in support of its Motion to Dismiss cites the Amended

Proposed Judgment and the Final Judgment entered against one of Debtors' principals in

the District Court action, after a jury trial, because those judgments demonstrate that

approximately $49 million remains due and owing from Debtors to Ford Credit. *See* Dkt.

16 at 3, 7 n.8. The argument by the Creditors' Trustee that this Court cannot take judicial

notice of these Judgments is simply wrong. *See Krystal One Acquisitions, L.L.C.*, 805 Fed.

App'x at 287; *Nixon*, 2016 WL 3763425 at *3 n.2. And, contrary to the Creditors' Trustee's

related argument, any dispute regarding the exact amount that remains due and owing to

Ford Credit is not an "issue of fact" that precludes dismissal of the Adversary Proceeding.

The Final Judgment entered against Debtors' principal in the District Court

action, together with the Debtors' judicial admissions in the underlying bankruptcy case (*see*

Point I.C.i, below), confirm that Ford Credit is the Debtors' largest unsecured creditor. The

Creditors' Trustee does not, and cannot, deny that this is so – and any alleged dispute

regarding the exact amount owed by Debtors to Ford Credit does not change that Ford

Credit is the Debtors' largest unsecured creditor or preclude this Court from considering this

undisputed, judicially admitted fact in deciding Ford Credit's Motion to Dismiss the

Adversary Proceeding.

### B.    FACTUAL RESUME IN *USA V. SMITH*, CASE NO. 2:19-CR-079-D-BR (DKT. 11)

The Creditors' Trustee's argument that the Factual Resume in the criminal

case against Debtors' CFO, Shane Smith, raises an "issue of fact" and precludes dismissal of

the Adversary Complaint is similarly without merit.[1]  The Factual Resume, submitted in

connection with Shane Smith's plea and admission to the criminal charges brought against

him, explain in detail the ***very same fraud alleged by the Trustee in this adversary proceeding***

including, as the Creditors' Trustee alleges, efforts by the Debtors to "make it appear as if …

missing vehicles had been sold within the last 7 days … so that loans [payable to Ford

Credit] would remain in compliance."  Dkt. 1 at ¶ 33.

The particulars of Debtors' undisputed fraud, which the Trustee readily

acknowledges in this Adversary Proceeding, are not, in any way, critical to the well-founded

bases for dismissing each of the Trustee's claims with prejudice.  The Court can, therefore,

take judicial notice of the filings in Shane Smith criminal proceedings for the basic

---

[1]    The Trustee has not addressed, and thus apparently does not object to, Ford Credit's reference to the thirteen other dealership employees that have also pleaded guilty to criminal charges filed against them in the District Court for their role in the fraud committed by Debtors against Ford Credit.  *See* Dkt. 16 at 4 n.5.

background information they provide  *See Krystal One Acquisitions, L.L.C.*, 805 Fed. App'x at 287; *Nixon*, 2016 WL 3763425 at *3 n.2.[2]

### C.    COURT ORDERS AND  DEBTORS' JUDICIAL ADMISSIONS IN *IN RE REAGOR-DYKES MOTORS, LP, ET AL.*, CASE NO. 18-50214-RLJ-11

The Trustee does not specifically dispute that this Court can consider Debtors' judicial admissions in their bankruptcy cases that: (1) Ford Credit is Debtors' largest secured and unsecured creditor; or (2) that Ford Credit holds a perfected security interest in "dealership assets," including the proceeds of Ford Credit's vehicle inventory collateral held by Debtors in their bank accounts.  Dkt. 27 at 11.  Instead, the Trustee argues that Ford Credit's Motion to Dismiss hinges on a determination of the precise amount of Ford Credit's secured and unsecured claims – which it does not.

As discussed above, the exact amount of Ford Credit's secured and unsecured claims is not a determinative issue that must be resolved in deciding Ford Credit's Motion to Dismiss.  *See* Point I.A, *supra*.  Instead, the substantive arguments made in Ford Credit's Motion to Dismiss focus on the inadequacy of the allegations in the Adversary Complaint, and why it must be dismissed as a matter of law.  As to those arguments, it is the relative magnitude of Ford Credit's claims that matter, not the exact amount, and there is no dispute that Ford Credit is the Debtors' largest secured and unsecured creditor.  Meanwhile, the nature and extent of Ford Credit's security interests are confirmed by Debtors' judicial admissions and this Court's Orders in Debtors' bankruptcy – which recognized not only that Debtors needed cash collateral orders to use Ford Credit's cash collateral, but also

---

[2]    Meanwhile, even if the Court is inclined to consider the Creditors' Trustee's argument that the criminal charges against Shane Smith cannot be considered as evidence that Ford Credit was the largest victim of Debtors' fraud, the Court can once again look to the Debtors' judicial admissions for confirmation that Ford Credit is indeed the largest unsecured creditor in Defendants' bankruptcies.  *See* Point I.C.i, below.

recognized that Ford Credit was entitled to stay relief because it established the validity of

its security interest in Debtors' assets. *See* Point I.C.i-iii, below.

Accordingly, there is no basis for the Trustee's request that this Court ignore

Debtors' judicial admissions or this Court's prior Orders. And there is no "issue of fact"

that precludes this Court from granting Ford Credit's Motion to Dismiss.

i.  Debtors' Official Form 204, Bankruptcy Schedules, and First Amended
    Modified Disclosure Statement for Second Amended Joint Plan of
    Reorganization (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-00186-
    c, Dkts. 11, 421, 423, 425, 427, 429, 431, and 1390)

On August 3, 2018, Debtors filed Form 204, which identified their creditors

with the 20 largest unsecured claims. *See* Case No. 18-50214-rlj-11, Dkt. 11. Ford Credit's

claim is identified as being more than 97 percent of the total. *See id.* Meanwhile, Debtors'

sworn Bankruptcy Schedules unambiguously state that Ford Credit holds the largest secured

claims against Debtors. *See* Case No. 18-50214-rlj-11, Dkts. 421, 423, 425, 427, 429, 431.

Debtors reconfirmed as much in their First Amended Modified Disclosure Statement for

Second Amended Joint Plan of Reorganization. *See* Case No. 18-50214-rlj-11, Dkts. 1390 at

47-48; *see* Case No. 18-50214-rlj-11, Dkts. 1390-3. Debtors' Bankruptcy Schedules also

unequivocally state that Ford Credit has a security interest in "DEALERSHIP ASSETS,"

separate and apart from the security interest held in the dealerships' "VEHICLE

INVENTORY." *See* Case No. 18-50214-rlj-11, Dkts. 421 at 23.

Together with this Court's Orders concerning Debtors' motion for use of cash

collateral (*see* Point I.C.ii, below) and the proceedings, decision, and order concerning Ford

Credit's motion for stay relief (*see* Point I.C.iii, below), Debtors' Form 204 disclosure,

Bankruptcy Schedules, and Reorganization Plan establish that Ford Credit is the largest

secured and unsecured creditor in Debtors' bankruptcy. They also establish that Ford

Credit's security interest extends beyond Debtors' vehicle inventory, to other assets

including, as addressed in Ford Credits' Motion to Dismiss, proceeds from Ford Credit's

financing and Debtors' sale of vehicle inventory.  *See* Dkt. 16 at 7-12.

Debtors' Form 204 disclosure, Bankruptcy Schedules, and Reorganization

Plan all contain and comprise judicial admissions that this Court may consider as evidence

of the uncontroverted fact that Ford Credit is indeed Debtors' largest secured and unsecured

creditor.[3]  *See In re Soporex, Inc.*, 446 B.R. at 764; *In re Holcomb*, 2005 WL 6443634, at *1 n.3;

*In re Rollings*, 451 Fed. App'x at 348; *In re Jacobson*, 2006 WL 2796672 at *17; *In re 1701*

*Commerce, LLC*, 511 B.R. at 829.[4]  And that uncontroverted fact, in turn, is properly

considered by this Court as one of several bases for the dismissal of the claims asserted by

the Creditors' Trustee in this Adversary Proceeding.  *See* Dkt. 16 at 7-14, 20-23.

ii.   Interim Cash Collateral Orders (*Ford Motor Credit Co. LLC v. Reagor*, Case No.
      5:18-cv-00186-c, Dkts. 30, 134, 192, 476, 567 and 764)

Ford Credit's Motion to Dismiss cites this Court's Cash Collateral Orders in

Debtors' bankruptcies as support for the irrefutable fact that Debtors were forced to seek

(and obtain) the Court's permission to use Ford Credit's cash collateral to fund "'normal

day-to-day expenses of [their] operations such as payroll, office supplies, utilities, taxes,

rents.'"  *See* Dkt. 16 at 19 (citing Case No. 5:18-cv-00186-c, Dkts. 30, 134, 192, 476, 567 and

---

[3]      While the Creditors' Trustee argues that this Court should not consider these items, the
Creditors' Trustee does not – and cannot – deny that Ford Credit is the largest secured and
unsecured creditor in Debtors' bankruptcy.

[4]      Debtors' reliance on *In re James* for the alleged proposition that the Court "should not"
consider the contents of Debtors' bankruptcy schedules for their truth is misplaced.  That is not the
holding of that case.  *See In re James* 300 B.R. 890, 895-96 (Bankr. W.D. Tex. 2003) (denying request
to take judicial notice of certain facts not adequately identified).  And there is a wealth of authority
to the contrary.  *See, e.g.*, *In re Rollings*, 451 Fed. App'x at 348.  Here, Ford Credit has specifically
called the Court's attention to judicially noticeable facts.

764).  The Court's Cash Collateral Orders also establish that Debtors entered into

Wholesale Agreements and other loan agreements (namely, the Security Agreements),

which grant Ford Credit a lien in the inventory, *as well as the proceeds, products, rents, issues*

*and profits* of such inventory.  *See, e.g.*, Case No. 5:18-cv-00186-c, Dkts. 30 at 4 (emphasis

added).  The Cash Collateral Orders further held that Debtors' operating revenue "is

primarily generated through the sales and leasing of financed vehicles" and therefore

"constitute[s] Ford Credit's Cash Collateral."  *Id.* at 5.

      The Trustee's Motion to Strike notably omits these portions of the cash

collateral orders.  And, contrary to the Creditor's Trustee's argument, this Court can

properly consider findings in its own Cash Collateral Orders in deciding Ford Credit's

Motion to Dismiss.  *In re Kleibrink*, 346 B.R. at 744 n.8; *Merkle*, 2020 WL 5209538, at *1;

*Ayati-Ghaffari*, 2019 WL 1550141 at *4.

      The Cash Collateral Orders are particularly relevant to the grounds for

dismissing the Trustee's fraudulent transfer and surcharge claims.  Because, as a matter of

law, Ford Credit has a security interest in the proceeds, issues, and profits, of its vehicle

inventory, the Trustee cannot state a claim that such funds were fraudulently transferred to

Ford Credit prior to Debtors filing for bankruptcy.  *See* Dkt. 16 at 10-11.  The Cash

Collateral Orders further establish that the Trustee cannot maintain its surcharge claim

because any expenses incurred while Debtors attempted to continue operations were not for

the direct benefit of Ford Credit.  *See* Dkt. 16 at 18-19.[5]

---

[5]    Ford Credit has objected to the fee applications and reimbursement of expense applications
by Debtors' Counsel and Chief Restructuring Officer.  *See* Case No. 18-50214-rlj-11, Dkt. 2032.

     iii.    Transcript of Proceedings, Opinion, and Order concerning Ford Credit's Motion for Stay Relief (*Ford Motor Credit Co. LLC v. Reagor*, Case No. 5:18-cv-00186-c, Dkts. 854, 865, and 890)

The nature and extent of Ford Credit's security interests in Debtors' vehicle inventory, the proceeds from their sale, and other assets of Debtors was further confirmed by this Court after an evidentiary hearing on Ford Credit's motion for stay relief in Debtors' bankruptcy proceedings. *See* Case No. 5:18-cv-00186-c, Dkts. 854, 865, and 890. There is simply no question that this Court may take judicial notice of both the evidence that it previously received in a contested bankruptcy hearing (in which Debtors and their counsel participated), and the issues that the Court decided as a result of that hearing. *See In re Idearc Inc.*, 423 B.R. at 146; *In re Vitro Asset Corp.*, 2013 WL 6044453 at *1.

At the hearing on Ford Credit's motion for stay relief, Ford Credit established that Debtors granted Ford Credit a security interest in "all assets" of the dealerships (including their vehicle inventory). *See* Dkt. 854 at 34-35. Ford Credit also entered into evidence, without objection, the Wholesale Agreements and Security Agreements governing Debtors' obligations and evidencing the basis for Ford Credit's security interest.[6] *See id.* at 10-11. Ultimately, the Court granted Ford Credit's motion for stay relief and, in doing so, found that Ford Credit established that it held a valid security interest in Debtors' assets. *See* Dkt. 865. The Court then awarded Ford Credit possession of its collateral. *See* Dkt. 890.

---

[6]    Debtors purported to reserve their right to "dispute" Ford Credit's claims and "liens," but did not dispute the unambiguous terms of their Wholesale Agreements or Security Agreements with Ford Credit or the nature and extent of the UCC-1 financing statements filed and maintained by Ford Credit with respect to those contracts.

Contrary to the Creditors' Trustee's argument, this Court has broad discretion to take judicial notice of the evidence presented on Ford Credit's motion for stay relief and its own decision and order granting that motion. *See In re Kleibrink*, 346 B.R. at 744 n.8; *see also Merkle*, 2020 WL 5209538, at *1; *Ayati-Ghaffari*, 2019 WL 1550141 at *4; *In re Idearc Inc.*, 423 B.R. at 146; *In re Vitro Asset Corp.*, 2013 WL 6044453 at *1. Together with Debtors' bankruptcy schedules (Point I.C.i, *supra*), the Court's Interim Cash Collateral Orders (Point I.C.ii, *supra*), and the contracts governing Ford Credit's extension of floorplan financing to Debtors (Point I.D, below), this evidence establishes, as a matter of law, that Ford Credit maintained a properly-perfected security interest in all of Debtors' assets, including, *inter alia*, all proceeds of Debtors' sales of vehicle collateral. Dkt. 16 at 10-13.

**D.  WHOLESALE AGREEMENTS, SECURITY AGREEMENTS, AND UCC-1 FINANCING STATEMENTS ATTACHED AS EXHIBITS B, C, E, F, H, I, K, L. N, O, Q, R, S, T TO CLAIM 83-1, PART 2 IN *IN RE REAGOR-DYKES MOTORS, LP, ET AL.*, CASE NO. 18-50214-RLJ-11**

The Court is also entitled to judicially notice, and consider, the Wholesale Agreements, Security Agreements, and UCC-1 Financing Statements that were attached to Ford Credit's claims in Debtors' bankruptcy proceedings. The Creditors' Trustee's argument that the Court cannot consider these documents in determining Ford Credit's Motion to Dismiss is once again without merit. The Court may consider all of these documents because they are subject to judicial notice, are directly referenced in the Creditors' Trustee's adversary complaint, and are central to the Creditors' Trustee's claims.

First, as set forth above, the Wholesale Agreements and Security Agreements between Debtors and Ford Credit, and Ford Credit's UCC-1 Financing Statements, were entered into evidence and reviewed by the Court in connection with Ford Credit's motion for stay relief. *See* Dkt. 854 at 10-11. Accordingly, this Court may take judicial notice of

them.  *See In re Kleibrink*, 346 B.R. at 744 n.8; *see also Merkle*, 2020 WL 5209538, at *1; *Ayati-Ghaffari*, 2019 WL 1550141 at *4; *See In re Idearc Inc.*, 423 B.R. at 146; *In re Vitro Asset Corp.*, 2013 WL 6044453 at *1.

   Second, the Trustee's claims in this Adversary Proceeding directly reference Debtors' agreements with Ford Credit as follows:

> "Each dealership had a separate credit extension from [Ford Credit], with individual credit line limits on new and used vehicles."  Dkt. 1 at ¶ 22 (referencing Debtors' Wholesale Agreements with Ford Credit).

> "Under the terms of the [Ford Credit] credit agreements, [Debtors were] required to repay [Ford Credit] within seven days of the date that [Debtors] sold a vehicle…."  Dkt. 1 at ¶ 22 (further referencing Debtors' Wholesale Agreements with Ford Credit).

> "[Ford Credit] secured that financing with security interests in collateral that included [Debtors'] new and used vehicle inventory, as well as its furniture, fixtures, and equipment."  Dkt. 1 at ¶ 22 (referencing Debtors' Security Agreements with Ford Credit and its UCC-1 filings).

The Adversary Complaint's direct reference to the Wholesale Agreements and Security Agreements, alone, is sufficient to establish that this Court may consider these agreements in deciding Ford Credit's Motion to Dismiss.  *See In re Xtreme Power Inc.*, 563 B.R. at 630.

   In addition, the agreements between Debtors and Ford Credit are sufficiently "central" to the Creditors' Trustee's claims that they can properly be considered in deciding Ford Credit's Motion to Dismiss on that basis.  *In re Crymes*, 2018 WL 4006320, at *3; *In re Superior Air Parts, Inc.*, 486 B.R. at 732 n.1.[7]  For example, to the extent the Creditors' Trustee alleges preferential transfers "on account of an antecedent debt," the contracts and

---

[7]  Although they are not physically "attached" to Ford Credit's Motion to Dismiss, the evidence at issue is part of the record before this Court and explicitly and specifically referenced by Ford Credit and effectively incorporated in its Motion to Dismiss.

agreements between Debtors and Ford Credit are necessarily "central" to those claims

because the only "antecedent debt" alleged by the Trustee arises from those agreements and

Debtors' contractual obligations under them.  *See, e.g.*, Dkt. 1 at ¶ 22.

> **E.    DEBTORS' MOTION TO APPROVE COMPROMISE AND
> SETTLEMENT WITH VISTA BANK AND COURT ORDER
> APPROVING SAME IN *IN RE REAGOR-DYKES MOTORS, LP, ET AL.*,
> CASE NO. 18-50214-RLJ-11 (DKTS. 1723 AND 1761)**

The Trustee does not dispute that the Court can take judicial notice of

Debtors' receipt of $7.5 million in funds from the settlement of their claims against Vista

Bank.  *See* Case No. 18-50214-rlj-11 Dkts. 1723 and 1761.  Instead, the Trustee argues that

the fact of Debtors' settlement cannot be considered as evidence of unencumbered funds

available to pay expenses which bar the Trustee's surcharge claim in this Adversary

Proceeding.

However, the record of Debtors' settlement with Vista Bank expressly confirms

that it "generates substantial value" for Debtors bankruptcy estates and that

Vista Bank has released any claims against Debtors and has agreed to subordinate its claims.

*See* Case No. 18-50214-rlj-11 Dkts. 1723 at 2.  That record also confirms that Debtors'

bankruptcy estates include unencumbered funds that must be exhausted before the

Creditors' Trustee seeks to surcharge Ford Credit.  *See* Dkt. 16 at 17-19.

It is telling that the Creditors' Trustee does not dispute that the Vista Bank

settlement resulted in unencumbered funds flowing into the Debtors' estates.  Instead, he

attempts to preclude the Court from considering that undisputed fact in deciding Ford

Credit's Motion to Dismiss.  That attempt is without merit, for the reasons set forth above,

and this Court is entitled to consider the settlement, and Ford Credit's absolute defense to

the Creditors' Trustee's surcharge claim premised, in part, upon that settlement and the

availability of unencumbered funds to pay any alleged administrative expenses.  *See* Dkt. 16 at 17-19.

## II.    FORD CREDIT'S MOTION TO DISMISS CANNOT BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT, AND THE TRUSTEE IS NOT ENTITLED TO "LIMITED" DISCOVERY

Rule 12(d), as made applicable in this Adversary Proceeding by Bankruptcy Rule 7012(b), grants this Court discretion to convert a motion under Rule 12(b)(6) to one for summary judgment pursuant to Rule 56 when "matters outside the pleadings are presented to and not excluded by the court…."  Rule 12(d).  Determining whether a motion should be reviewed pursuant to Rule 12(b)(6) or Rule 56 is "driven by whether [the] court deems it appropriate to consider materials outside the pleadings and otherwise not appropriate for a 12(b)(6) analysis."  *Phalanx Group Int'l v. Critical Solutions Int'l*, 2019 WL 954727, at *2 (N.D. Tex. Feb. 26, 2019).  Conversion of a motion to dismiss to a motion for summary judgment requires that all parties be on notice of the possibility for conversion, and to take into account a defendants' well-founded argument that there is no basis for converting its motion to dismiss.  *See, e.g.*, *Acevedo v. Quicken Loans, Inc.*, 2014 WL 12577401, at *3-4 (S.D. Tex. Jan. 31, 2014).

As set forth above, the evidence cited and referenced in Ford Credit's motion to dismiss is properly before this Court, and Rule 12(d) therefore does not apply to Ford Credit's Motion to Dismiss.  *See* Point I, *supra*; *see also Phalanx Group Int'l*, 2019 WL 954727, at *2.  Further, Ford Credit flatly rejects the Creditors' Trustee's arguments that the pending Motion to Dismiss should be converted to a Motion for Summary Judgment, or that he is entitled to "limited" discovery, because the Creditors' Trustee has not identified, and cannot

identify, any discovery necessary to its opposition to Ford Credit's Motion to Dismiss.[8]  *See*

*Acevedo*, 2014 WL 12577401, at *3-4.  Accordingly, the alternative request for relief by the

Creditors' Trustee, seeking conversion, should be denied.  *See Phalanx Group Int'l*, 2019 WL

954727, at *2.

**CONCLUSION**

Based on the foregoing, Ford Credit respectfully requests that the Court deny the

Creditors' Trustee's Motion to Strike in its entirety, and grant Ford Credit such other and

further relief to which Ford Credit may show itself justly entitled.


Respectfully submitted,                          *And*

**BAKER BOTTS LLP**                          **BAKER BOTTS LLP**


By:  */s/ Michael S. Goldberg*                By:  */s/ Kevin M. Sadler*
    Michael S. Goldberg                              Kevin M. Sadler
    State Bar No. 08075800                           1001 Page Mill Road
    One Shell Plaza                                  Building One, Suite 2
    910 Louisiana Street                             Palo Alto, California 94304-1007
    Houston, Texas 77002                             650-739-7518
    713-229-1234                                     650-739-7618 (Fax)
    713-229-1522 (Fax)                               kevin.sadler@bakerbotts.com
    michael.goldberg@bakerbotts.com

**COUNSEL FOR DEFENDANT**


*And*

---

[8]     As demonstrated above, and in Ford Credit's Reply Brief in Support of its Motion to
Dismiss, the arguments by the Creditors' Trustee that there are "issues of fact" precluding dismissal,
or that Ford Credit's Motion to Dismiss is premised on "affirmative defenses" (rather than fatal
flaws in the Adversary Complaint), are without merit.  And discovery, at this stage, is therefore both
unnecessary and futile.

**PHILLIPS LYTLE LLP**

Craig A. Leslie, Esq.
Jacob S. Sonner, Esq.
One Canalside
125 Main Street
Buffalo, New York  14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com
jsonner@phillipslytle.com

**COUNSEL FOR DEFENDANT**
***PRO HAC VICE***

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

*/s/ Kevin M. Sadler*
Kevin M. Sadler