IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Reagor-Dykes Motors, LP, et al., | ) | Case No. 18-50214-rlj-11 |
| | ) | Jointly Administered |
| Debtors, | ) | |
| | ) | |
| | ) | |
| Reagor-Dykes Motors, LP, | ) | |
| Reagor-Dykes Imports, LP, | ) | |
| Reagor-Dykes Amarillo, LP, | ) | Adversary Proceeding |
| Reagor-Dykes Auto Company, LP, | ) | No.: 20-05005-rlj |
| Reagor-Dykes Plainview, LP, and | ) | |
| Reagor-Dykes Floydada, LP, | ) | |
| Reagor Auto Mall, Ltd., | ) | |
| Reagor-Dykes Snyder, L.P., | ) | |
| Reagor-Dykes Auto Mall I LLC, | ) | |
| Reagor-Dykes II LLC, | ) | |
| Reagor-Dykes III LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| Ford Motor Credit Company LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS DEBTORS' COMPLAINT**

Respectfully submitted,

**BAKER BOTTS LLP**

Michael S. Goldberg
State Bar No. 08075800
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
713-229-1234
713-229-1522 (Fax)
michael.goldberg@bakerbotts.com

and

**BAKER BOTTS LLP**

Kevin M. Sadler
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
650-739-7518
650-739-7618 (Fax)
kevin.sadler@bakerbotts.com

and

**PHILLIPS LYTLE LLP**

Craig A. Leslie
Jacob S. Sonner
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com
jsonner@phillipslytle.com

**ATTORNEYS FOR DEFENDANT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I. THE FRAUDULENT TRANSFER CLAIM IS BARRED AS A MATTER OF LAW AND NOT ALLEGED WITH SUFFICIENT PARTICULARITY ............................................................................................................. 1

    A. The Creditor Trustee's Fraudulent Transfer Claim does not allege, and he cannot identify, any transfer by the Debtors of property of their estate ..................................................................................................... 2

    B. The Creditor Trustee's Fraudulent Transfer Claim does not allege, and he fails to identify, any benefit afforded to the Debtors' estate ................ 4

    C. The Creditors' Trustee fails to overcome the equitable bar to the fraudulent transfer claim ................................................................................ 5

    D. The Creditors' Trustee's fraudulent transfer claim is not adequately pled ...... 6

II. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE AN EQUITABLE SUBORDINATION CLAIM ................................................. 7

III. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A SURCHARGE CLAIM ................................................................................... 8

IV. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A TURNOVER CLAIM ..................................................................................... 9

V. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A PREFERENTIAL TRANSFER CLAIM ............................................................ 9

VI. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A LIEN DETERMINATION CLAIM .................................................................. 10

VII. THE CREDITORS' TRUSTEE'S DISALLOWANCE CLAIM IS BARRED ....... 10

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**Cases**

*In re Acequia, Inc.*,
   34 F.3d 800 (9th Cir. 1994) ................................................................................................ 5

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
   390 B.R. 80 (S.D.N.Y. 2008) *aff'd*, 379 Fed. Appx. 10 (2d Cir. 2010) ............................ 5

*In re ASARCO LLC*,
   513 B.R. 499 (S.D. Tex. 2012) ............................................................................................ 5

*Begier v. IRS*,
   496 U.S. 53 (1990) ............................................................................................................... 2

*Colonial Bank v. Freeman*,
   2006 WL 8433477 (S.D. Fla. May 24, 2006) .................................................................... 6

*In re Consol. Cotton Gin Co.*,
   347 B.R. 572 (Bankr. N.D. Tex. 2006) .............................................................................. 9

*Coral Petroleum, Inc. v. Banque Paribas-London*,
   797 F.2d 1351 (5th Cir. 1986) ............................................................................................ 3

*In re Delta Towers, Ltd.*,
   924 F.2d 74 (5th Cir. 1991) ................................................................................................ 8

*In re Domistyle, Inc.*,
   811 F.3d 691 (5th Cir. 2015) .............................................................................................. 8

*Georgia Pac. Corp.*, 712 F.2d 962, 969 (5th Cir. 1983) ........................................................ 4

*In re Herby's Foods, Inc.*,
   2 F.3d 128 (5th Cir. 1993) .................................................................................................. 8

*In re IFS Fin. Corp.*,
   417 B.R. 419 (Bankr. S.D. Tex. 2009) .............................................................................. 7

*In re JKJ Chevrolet, Inc.*,
   26 F.3d 481 (4th Cir. 1994) ................................................................................................ 8

*Matter of Maple Mortg., Inc.*,
   81 F.3d 592 (5th Cir. 1996) ................................................................................................ 2

*In re Margaux Tex. Ventures, Inc.*,
   545 B.R. 506 (Bankr. N.D. Tex. 2014) .................................................................. 8

*In re Mirant Corp.*,
   675 F.3d 530 (5th Cir. 2012) ................................................................................ 5

*In re Philip Servs. Corp.*,
   359 B.R. 616 (Bankr. S.D. Tex. 2006) .................................................................. 4

*Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*,
   57 F.3d 321 (3d Cir. 1995) ................................................................................... 9

*In re Reagor-Dykes Motors, LP*,
   2020 WL 4939180 (Bankr. N.D. Tex. Aug. 24, 2020) ................................. 6, 7, 10

*In re Rocco Co., Inc.*,
   2014 WL 7404566 (D. N.J. Dec. 29, 2014) .......................................................... 4

*In re Southmark Corp. (Southmark Corp. v. Crescent Heights VI, Inc. et al.)*,
   95 F.3d 53 (5th Cir. 1996) .................................................................................... 3

*In re Southmark Corp. (Southmark Corp. v. Grosz)*,
   49 F.3d 1111 (5th Cir. 1995) ................................................................................ 2

*Stalnaker v. DLC, Ltd.*,
   376 F.3d 819 (8th Cir. 2004) ................................................................................ 5

*In re Tronox Inc.*,
   464 B.R. 606 (Bankr. S.D.N.Y. 2012) .................................................................. 5

*In re Tusa-Expo Holdings, Inc.*,
   811 F.3d 786 (5th Cir. 2016) ................................................................................ 4

**Statutes**

11 U.S.C. 502(d) .......................................................................................................... 10

11 U.S.C. § 363 .............................................................................................................. 4

11 U.S.C. § 502(h) ......................................................................................................... 5

11 U.S.C. § 542(b) ......................................................................................................... 9

11 U.S.C. § 548 .............................................................................................................. 6

Texas Bus. & Comm. Code § 9-315 .............................................................................. 4

**Other Authorities**

Fed. R. Civ. P 8(a)............................................................................................................ 6

Fed. R. Civ. P 9(b).........................................................................................................6, 7

## INTRODUCTION

Ford Credit submits this Reply Brief in further support of its motion to dismiss.[1] Creditors' Trustee Dennis Faulkner (the "Creditors' Trustee"), as successor to the Debtors, continues Debtors' baseless effort to shift blame for their own admitted fraud to the *primary victim* of that fraud – Ford Credit. As a matter of law, however, Debtors' payments to Ford Credit, which held a first-priority, properly perfected security interest in its collateral and the proceeds of that collateral, cannot support any of the claims asserted in this Adversary Proceeding. And because the Creditors' Trustee has not plausibly stated any claim for relief against Ford Credit, and because he cannot do so, amendment of the Adversary Complaint would be futile, even "limited" discovery is not warranted, and the Adversary Complaint should be dismissed, with prejudice.

## ARGUMENT

### I. THE FRAUDULENT TRANSFER CLAIM IS BARRED AS A MATTER OF LAW AND NOT ALLEGED WITH SUFFICIENT PARTICULARITY

Ford Credit has identified four independent bases for dismissal of the Creditors' Trustee's fraudulent transfer claim. First, the Creditors' Trustee cannot, as a matter of law, allege a transfer of any interest in Debtors' property. Second, the Creditors' Trustee impermissibly seeks a windfall recovery against Ford Credit, the largest and primary victim of Debtors' fraud. Third, the alleged fraudulent transfers were made in satisfaction of admitted antecedent debt. And fourth, the Creditors' Trustee has not alleged the elements of a fraudulent transfer claim with sufficient particularity. The Creditors' Trustee's opposing arguments are contrary to the law and cannot save this claim from dismissal.

---

[1] This reply brief adopts and incorporates the definitions given to all defined terms that were identified in the initial brief filed by Ford Credit in support of its motion to dismiss.

### A. The Creditor Trustee's Fraudulent Transfer Claim does not allege, and he cannot identify, any transfer by the Debtors of property of their estate

Initially, with respect to the alleged fraudulent transfer claim, the Creditors' Trustee does not dispute that a debtor "does not own an equitable interest in property he holds in trust for another…." *Begier v. IRS*, 496 U.S. 53, 58-59 (1990); *Matter of Maple Mortg., Inc.*, 81 F.3d 592, 595 (5th Cir. 1996). He also concedes that property subject to a creditor's security interest is not property of the Debtors' estate. To the extent the Creditors' Trustee nevertheless contends these well-settled principles do not apply here, because the allegedly fraudulent transfers came from a "commingled" account, his contention lacks merit.

First, contrary to the Creditors' Trustee's argument, the Adversary Complaint ***does not*** allege the source of funds transferred, let alone affirmatively state the transfers originated from a "commingled" account. *See id.* at ¶¶ 58-63, Ex. 1. "Commingled" accounts are vaguely referenced in paragraphs 81 and 82 of the Adversary Complaint, but those allegations concern the Creditors' Trustee's claim seeking avoidance of Ford Credit's security interest, not the source of transferred funds relative to the fraudulent transfer claim. *See* Dkt. 1 at ¶¶ 81-82. Even if the Adversary Complaint did allege the source of the transfers, however, the Creditors' Trustee's argument that funds from "commingled" accounts are "presumptively" property of the Debtors' estate is simply wrong.

The Creditors' Trustee misconstrues the standard for determining whether specific funds, as opposed to accounts generally, are "controlled" by a debtor, such that they qualify as property of the debtor's estate. The relevant test is whether Debtors' purported control over ***specific amounts*** paid to Ford Credit was "unfettered" and "without restriction," such that they could be used by Debtors for any purpose. *See In re Southmark Corp. (Southmark Corp. v. Grosz)*, 49 F.3d 1111, 1117 (5th Cir. 1995) (debtors do not control specific funds in

commingled accounts where agreement compels use of them for creditor's benefit); *see also In re Southmark Corp. (Southmark Corp. v. Crescent Heights VI, Inc. et al.)*, 95 F.3d 53, 53 (5th Cir. 1996); *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1359 (5th Cir. 1986) (affirming dismissal of a preference avoidance action where funds originated from a general account, but their use was restricted to repayment of loan).

The unambiguous and undisputed agreements between Ford Credit and Debtors – which are referenced in the Adversary Complaint (Dkt. 1 at ¶ 22) and are part of the record on this motion – confirm that Debtors did not enjoy "unfettered" and "unrestricted" discretion or control over the amounts transferred.[2] And the Creditors' Trustee does not address, much less refute, that Debtors were obligated to pay such funds to Ford Credit.

The Creditors' Trustee also fails to address that: (1) Debtors have admitted Ford Credit held a first priority security interest in all of their assets (Case No. 18-50214-rlj-11, Dkt. 421 at 22, 423 at 23, 425 at 22, 427 at 23, 428 at 22, and 431 at 23); (2) the Court has confirmed Ford Credit's properly-perfected, first-priority security interest in Debtors' assets including, but not limited to, vehicles in inventory and the proceeds thereof (*see* Case No. 18-50214-rlj-11, Dkt. 865, 890); and (3) Debtors' agreements with Ford Credit expressly required them to hold all proceeds from vehicle sales in trust for Ford Credit (*see* Case No. 18-50214-rlj-11, Claim 83-1, Part 2, Exhibits B, C, E, F, H, I, K, L, N, O, Q, R, S, T.).

Instead, the Creditors' Trustee argues that the absence of a "control agreement" concerning unspecified accounts from which Debtors allegedly transferred funds, leaves Ford Credit's security interest in those funds unperfected. This is not the law. While a security interest in a deposit account can be perfected through a "control agreement," a

---

[2]  *See* Case No. 18-50214-rlj-11, Claim 83-1, Part 2, Exhibits B, C, E, F, H, I, K, L, N, O, Q, R, S, T.

- 3 -

security interest in *funds within a deposit account* is also automatically perfected when the funds are proceeds of the secured party's collateral (*e.g.,* inventory sale proceeds). Texas Bus. & Comm. Code § 9-315; *In re Tusa-Expo Holdings, Inc.*, 811 F.3d 786, 794 (5th Cir. 2016).[3] Here, the Adversary Complaint expressly acknowledges that the funds at issue include proceeds from the sale of Ford Credit's collateral. *See* Dkt. 1 at ¶¶ 81-82.

The Creditors' Trustee's argument that Ford Credit must trace the source of funds transferred from Debtors to establish they were subject to Ford Credit's security interest is also wrong on the law.[4] Instead, it was the Creditors' Trustee's burden to plausibly allege that the source of the transfers was *not* from proceeds of Ford Credit's secured collateral. *See, e.g.*, *In re Tusa-Expo Holdings, Inc.*, 811 F.3d at 798 (dismissing preferential transfer claims based on failure to do so). Because the Creditors' Trustee has not done so – and cannot do so – the Creditors' Trustee's fraudulent transfer claim must be dismissed.

### B.     The Creditor Trustee's Fraudulent Transfer Claim does not allege, and he fails to identify, any benefit afforded to the Debtors' estate

The Creditors' Trustee does not deny that the recovery sought against Ford Credit ($315 million) grossly exceeds the amount necessary to pay unsecured claims ($45,787,423, according to Debtors' own Liquidation Analysis). *See* Dkt. 1390-3. The Creditors' Trustee also does not deny that Ford Credit is the primary victim of Debtors' fraud and their largest

---

[3]     That Debtors sought and obtained Ford Credit's consent and, ultimately, Court approval to use cash collateral further demonstrates Ford Credit's perfected security interest in the funds in Debtors' accounts. Indeed, 11 USC § 363 expressly recognizes that Ford Credit's security interest in funds held by Debtors at commencement of their bankruptcy case prohibited them from using those funds without providing adequate protection for the diminution of Ford Credit's cash collateral.

[4]     None of the cases relied upon by the Creditors' Trustee purport to require that a secured creditor like Ford Credit trace proceeds of its collateral for dismissal of a fraudulent transfer claim. Instead, they concern tracing requirements for funds held in a constructive trust. *See Georgia Pac. Corp.*, 712 F.2d 962, 969 (5th Cir. 1983); *In re Philip Servs. Corp.*, 359 B.R. 616, 628 (Bankr. S.D. Tex. 2006); *In re Rocco Co., Inc.*, 2014 WL 7404566, at *3-4 (D. N.J. Dec. 29, 2014).

unsecured creditor. And he makes no attempt to articulate any purported benefit to Debtors' estate, other than a general suggestion that unspecified unsecured creditors (*primarily Ford Credit*) and certain administrative expenses have not been paid "in full."[5] That allegation does not, however, allow the Creditors' Trustee to seek a windfall recovery through a fraudulent transfer claim. *See, generally Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 95-96 (S.D.N.Y. 2008) *aff'd*, 379 Fed. Appx. 10 (2d Cir. 2010).[6]

The Creditors' Trustee's further argument that, upon disgorgement of the allegedly fraudulent transfers, Ford Credit will be entitled to a claim pursuant to Bankruptcy Code § 502(h) is irrelevant to the dispositive issue of whether disgorgement benefits Debtors' estate in the first instance. Because the Creditors' Trustee does not – and cannot – articulate any such benefit, the fraudulent transfer claim must, again, be dismissed.

### C. The Creditors' Trustee fails to overcome the equitable bar to the fraudulent transfer claim

Contrary to the Creditors' Trustee's next argument regarding the fraudulent transfer claim, Ford Credit's motion does not implicate an "affirmative defense." Rather, the motion identifies another fundamental and incurable defect in the claim. That is, specifically, that Debtors irrefutably received value from Ford Credit – two years of inventory financing – and that Debtors' transfers to Ford Credit were made in satisfaction of the resulting, and undisputed, antecedent debt. The Creditors' Trustee does not deny this.

Despite the Creditors' Trustee's attempted misdirection, the relevant issue on Ford

---

[5] Ford Credit has objected to the fee applications and reimbursement of expense applications by Debtors' Counsel and Chief Restructuring Officer. *See* Case No. 18-50214-rlj-11, Dkt. 2032.

[6] The authorities on which the Creditors' Trustee purports to rely are not to the contrary. Specifically, each of those authorities articulates a particular benefit to the estate separate and apart from a windfall recovery. *See, e.g.*, *In re ASARCO LLC*, 513 B.R. 499 (S.D. Tex. 2012); *In re Tronox Inc.*, 464 B.R. 606 (Bankr. S.D.N.Y. 2012); *In re Mirant Corp.*, 675 F.3d 530 (5th Cir. 2012); *Stalnaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004); *In re Acequia, Inc.*, 34 F.3d 800 (9th Cir. 1994).

- 5 -

Credit's motion is not "good faith."[7] Rather, it is whether the fraudulent transfer claim is so contrary to the purpose of 11 U.S.C. § 548 that it is barred as a matter of law. The answer is, unequivocally, yes. It is patently inequitable (and a perversion of fraudulent transfer law) to seek recovery of transfers by Debtors to satisfy obligations they incurred in exchange for the benefit of inventory financing provided by Ford Credit. *See* Dkt. 16 at 13-14.

### D. The Creditors' Trustee's fraudulent transfer claim is not adequately pled

As this Court has already decided, the heightened Rule 9(b) pleading standard applies to the Creditors' Trustee's fraudulent transfer claim. *See In re Reagor-Dykes Motors, LP,* 2020 WL 4939180, at *8-9 (Bankr. N.D. Tex. Aug. 24, 2020) (rejecting "more relaxed" pleading standard under Rule 8(a)). The Creditors' Trustee admits he is unable to identify any allegation in the Adversary Complaint that Debtors intended to "prefer one creditor over another," but falls back on the Debtors' check kiting and alleged "Ponzi-like" scheme in an attempt to obtain a presumption of Debtors' fraudulent intent that does not apply here.

This Court has already held that a check kiter's fraudulent intent is not automatically presumed. *See id.* at * 9 (citing *Colonial Bank v. Freeman*, 2006 WL 8433477, at *8-9 (S.D. Fla. May 24, 2006). Specifically, in the *FirstCapital* case, the Court determined that Debtors' fraudulent intent was sufficiently alleged only because it was "buttressed" with allegations that the defendant, as the bank holding Debtors' funds, knowingly assisted overdrafts and creation of a float to pay down Debtors' obligations to Ford Credit and to "hide that inventory … had been sold out of trust." *See id.* at *9. Here, by contrast, the Adversary Complaint does not allege Ford Credit participated in any way in Debtors' check kiting.

---

[7] As set forth in Ford Credit's motion to dismiss, and in opposition to the Creditors' Trustee's motion to strike, Ford Credit denies the Creditors' Trustee's repetition of unfounded claims that Ford Credit was in any way involved in (or should have known of or discovered) Debtors' fraud.

And, despite the Creditors' Trustee's entirely unsupported argument to the contrary, the transfers at issue were not made "in furtherance" of a Ponzi scheme. *See In re IFS Fin. Corp.*, 417 B.R. 419, 428 (Bankr. S.D. Tex. 2009) (describing payments to investors as part of an actual Ponzi scheme as being "in furtherance" of that scheme). In fact, the Creditors' Trustee fails to identify any allegations in the Adversary Complaint that the transfers were made ***for any purpose other than satisfying antecedent obligations to Ford Credit***.

Finally, and even if this Court were to conclude otherwise, the Adversary Complaint fails to identify specific transfers and the manner in which each particular transfer was fraudulent or interfered with the rights of other creditors. Therefore, the Creditors' Trustee's fraudulent transfer claim still fails to satisfy Rule 9(b)'s pleading requirements, and must be dismissed. *See In re Reagor-Dykes Motors, LP¸* 2020 WL 4939180, at *11.

## II. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE AN EQUITABLE SUBORDINATION CLAIM

As this Court recently held, to adequately state an equitable subordination claim, plaintiffs must allege "conduct that falls into one of three categories: (1) fraud, illegality or breach of fiduciary duty, (2) undercapitalization, or (3) control or use of the debtor as an alter ego for the benefit of the claimant …." *In re Reagor-Dykes Motors, LP¸* 2020 WL 4939180, at *12 (Bankr. N.D. Tex. Aug. 24, 2020). Contrary to the Creditors' Trustee's apparent contention, generic allegations of "inequitable conduct" are not sufficient to state an equitable subordination claim. *See id.*

Here, the Creditors' Trustee does not – and cannot – identify any allegation in the Adversary Complaint that Ford Credit engaged in fraud or illegal activity or breached any fiduciary duty. The Creditors' Trustee also does not – and cannot – identify any allegations that Ford Credit controlled or used Debtors as an alter ego. And the Creditors' Trustee's

unsupported allegations concerning Debtors' purported undercapitalization are, without more, insufficient to state a plausible equitable subordination claim. *See In re Herby's Foods, Inc.*, 2 F.3d 128, 132 (5th Cir. 1993); *In re Margaux Tex. Ventures, Inc.*, 545 B.R. 506, 515-16 (Bankr. N.D. Tex. 2014). That claim must, therefore, be dismissed, with prejudice.

### III.  THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A SURCHARGE CLAIM

The Creditors' Trustee does not dispute that, as a matter of law, alleged administrative expenses must be satisfied first by unencumbered assets of the estate – which includes Vista Bank's $7.5 million settlement payment. *See* Dkt. 1723, 1761. For this reason alone, the surcharge claim must be dismissed. *See In re Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991); *see also In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 483 (4th Cir. 1994).

The Creditors' Trustee nevertheless argues that Ford Credit may be surcharged based on the Fifth Circuit's decision in *In re Domistyle, Inc. See In re Domistyle, Inc.*, 811 F.3d 691, 696 (5th Cir. 2015). That decision does not, however, excuse the Creditors' Trustee from his obligation to plead that the expenses he seeks to surcharge "directly" benefitted Ford Credit. *See id.* at 698. And the Creditors' Trustee has not done so.

In the Creditors' Trustee's own words, the expenses that he seeks to surcharge were incidental to Debtors' possession of Ford Credit's collateral while they attempted to "salvage the going concern value of the dealership."[8] *See* Dkt. 29 at 21. Thus, the Creditors' Trustee effectively concedes that these expenses were not incurred to maintain or maximize the value of Ford Credit's motor vehicle inventory, whose value continuously erodes. *See Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 326 (3d

---

[8]   And they largely include rents it was barred from paying out of Ford Credit's cash collateral. *See, e.g.*, Case No. 18-50214 -rlj-11, Dkt. 567 at 6-7.

Cir. 1995); *see also In re Consol. Cotton Gin Co.,* 347 B.R. 572, 580 (Bankr. N.D. Tex. 2006).

As a matter of law, the surcharge claim must be dismissed as a result.

**IV. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A TURNOVER CLAIM**

The Creditors' Trustee does not dispute that Debtors were permitted use of Ford Credit's cash collateral, but were prohibited from exceeding monthly budgets without Ford Credit's "written consent." The Creditors' Trustee also does not dispute that those budgets specifically included amounts for Trustee and professional fees. Instead, the Creditors' Trustee effectively argues that – notwithstanding the cash collateral orders, and Debtors' undisputed judicial admissions – he should still be permitted to seek recovery of fees that did not directly benefit Ford Credit above and beyond the budgeted amounts in those orders. This is not the law and the turnover claim should be dismissed accordingly.[9]

**V. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A PREFERENTIAL TRANSFER CLAIM**

As set forth in Point I above, the Creditors' Trustee's argument that Ford Credit's security interest in amounts held by Debtors in purportedly "commingled" accounts was not perfected is fatally flawed. *See* Point I.A, *supra*. Further, none of the allegations cited by the Creditors' Trustee identify the source of alleged preferential transfers to Ford Credit.

Even had the Adversary Complaint done so, the Creditors' Trustee cannot – and does not – argue that he can adequately plead a preferential transfer claim against Ford Credit when the Adversary Complaint: (1) fails to identify particular transfers (resorting instead to daily transfer summaries); and (2) fails to identify the antecedent debt associated

---

[9] Contrary to the Creditors' Trustee's contention, this is not "a factual dispute." Quite the opposite, these facts are not in dispute, and the Adversary Complaint does not and cannot plausibly allege a claim for turnover of a debt that is property of Debtors' estate. *See* 11 U.S.C. § 542(b).

- 9 -

with any such transfers. *See In re Reagor-Dykes Motors, LP*, 2020 WL 4939180, at *8. The preferential transfer claim should, therefore, be dismissed with prejudice.

## VI. THE ADVERSARY COMPLAINT DOES NOT PLAUSIBLY ALLEGE A LIEN DETERMINATION CLAIM

The Creditors' Trustee's arguments in opposition to dismissal of its lien determination claim rest solely on flawed arguments that: (1) this Court has not recognized Ford Credit's valid security interest in Debtors' assets; and (2) that Ford Credit's security interest in proceeds from the sale of its collateral can only be perfected by a "control agreement." To the contrary, the Court ***has*** affirmatively determined that Ford Credit held a valid security interest in Debtors' assets (*see* Case No. 18-50213-rlj-11, Dkt. 865, 890) and, as set forth above, Ford Credit's security interest in the proceeds of its collateral were properly perfected with or without a "control agreement" (Point I.A, *supra*). The "determination of lien" claim alleged against Ford Credit must, therefore, be dismissed.

## VII. THE CREDITORS' TRUSTEE'S DISALLOWANCE CLAIM IS BARRED

The Creditors' Trustee's only argument in opposition to dismissal of the disallowance claim rests on the flawed contention that he has adequately alleged claims for fraudulent and preferential transfers. For the reasons set forth above, he has not, and his disallowance claim must also be dismissed.[10]

## CONCLUSION

Based on the above, and Ford Credit's initial brief, Ford Credit respectfully requests that the Court dismiss Debtors' Adversary Complaint in its entirety, with prejudice.

---

[10] The disallowance claim must also be dismissed based on the Fifth Circuit's holding in *In re Davis,* that 11 U.S.C. 502(d) is "designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate." That holding remains good law and requires dismissal of the disallowance claim.

| | |
|---|---|
| Respectfully submitted, | *And* |
| **BAKER BOTTS LLP** | **BAKER BOTTS LLP** |
| By: */s/ Michael S. Goldberg*<br>    Michael S. Goldberg<br>    State Bar No. 08075800<br>    One Shell Plaza<br>    910 Louisiana Street<br>    Houston, Texas  77002<br>    713-229-1234<br>    713-229-1522 (Fax)<br>    michael.goldberg@bakerbotts.com | By: */s/ Kevin M. Sadler*<br>    Kevin M. Sadler<br>    1001 Page Mill Road<br>    Building One, Suite 2<br>    Palo Alto, California  94304-1007<br>    650-739-7518<br>    650-739-7618 (Fax)<br>    kevin.sadler@bakerbotts.com |

**COUNSEL FOR DEFENDANT**

*And*

**PHILLIPS LYTLE LLP**

Craig A. Leslie, Esq.
Jacob S. Sonner, Esq.
One Canalside
125 Main Street
Buffalo, New York  14203
716-847-8400
716-852-6100 (Fax)
cleslie@phillipslytle.com
jsonner@phillipslytle.com

**COUNSEL FOR DEFENDANT**
*PRO HAC VICE*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 6, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

                                                               */s/ Kevin M. Sadler*
                                                                Kevin M. Sadler