IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| IN RE: | |
| Reagor-Dykes Motors, LP,<br>Reagor-Dykes Imports, LP,<br>Reagor-Dykes Amarillo, LP,<br>Reagor-Dykes Auto Company, LP,<br>Reagor-Dykes Plainview, LP, and<br>Reagor-Dykes Floydada, LP,<br>Reagor Auto Mall, Ltd.,<br>Reagor-Dykes Snyder, L.P.,<br>Reagor-Dykes Auto Mall I LLC,<br>Reagor-Dykes II LLC,<br>Reagor-Dykes III LLC, | Case No. 18-50214-rlj-11<br>Jointly Administered |
|      Debtors, | |
| Dennis Faulkner, Creditors' Trustee, | |
|      *Plaintiff,* | Adversary No. 20-05005-rlj |
|      vs. | |
| Ford Motor Credit Company LLC, | |
|      *Defendant.* | |

## FORD MOTOR CREDIT COMPANY LLC'S ANSWER TO ADVERSARY COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant Ford Motor Credit Company LLC ("Ford Credit" or "Defendant"), by its attorneys, Baker Botts L.L.P. and Phillips Lytle LLP, for its answer ("Answer") to the Adversary Complaint filed June 10, 2020 (the "Complaint"), initiating the above-captioned adversary proceeding ("Proceeding"), answers as follows:[1]

---

[1]    Unless otherwise defined herein, capitalized terms have the same meanings that are ascribed to them in the Complaint.

1.    Ford Credit denies the allegations in Paragraph 1.

2.    Ford Credit admits that is a wholly-owned subsidiary of Ford Motor Company.  As to the statements pertaining to Ford Motor Company, Ford Credit lacks knowledge or information sufficient to form a belief as to the truth of the allegations.  Ford Credit otherwise denies the allegations in Paragraph 2.

3.    Ford Credit admits that Debtors' allegations as to the relief they initially sought from Ford Credit (prior to the appointment of, and vesting of the Debtors' claims in, the Creditors' Trustee ("Plaintiff")), are stated in Paragraph 3.  Ford Credit denies that is liable, responsible for, or that Plaintiff is in any way entitled to any recovery from Ford Credit, and otherwise denies the remaining allegations in Paragraph 3.

4.    Admit that, prior to filing for bankruptcy, Reagor-Dykes Motors LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada, LP, owned and operated auto dealerships (the "Reagor-Dykes Dealerships").  Paragraph 4 otherwise contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 4.

5.    Ford Credit denies the allegations in Paragraph 5.

6.    Ford Credit denies the allegations in Paragraph 6.

7.    Paragraph 7 contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit admits that venue is proper in the District and otherwise denies the allegations in Paragraph 7.  Ford Credit also affirmatively states that, pursuant to Fed. R. Bankr. P. 7008, it does not consent to the entry of final orders or judgments by the Bankruptcy Court.

8.     Ford Credit admits that Reagor-Dykes Motors, LP d/b/a
Spike Dykes Ford Lincoln Mercury was a Texas limited partnership and, upon information
and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford
Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 8.

9.     Ford Credit admits that Reagor-Dykes Imports, LP d/b/a
Reagor-Dykes Mitsubishi Lubbock was a Texas limited partnership and, upon information
and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford
Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 9.

10.     Ford Credit admits that Reagor-Dykes Amarillo, LP d/b/a
Reagor-Dykes Mitsubishi Amarillo was a Texas limited partnership and, upon information
and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford
Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 10.

11.     Ford Credit admits that Reagor-Dykes Auto Company, L.P. d/b/a
Reagor-Dykes Ford Lincoln was a Texas limited partnership and, upon information and
belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford
Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 11.

12.     Ford Credit admits that Reagor-Dykes Plainview, L.P. d/b/a
Reagor-Dykes Toyota was a Texas limited partnership and, upon information and belief,
formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit

otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13.    Ford Credit admits that Reagor-Dykes Floydada, L.P. d/b/a Reagor-Dykes Chevrolet was a Texas limited partnership and, upon information and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.    Ford Credit admits that Reagor Auto Mall, Ltd. was a Texas limited partnership and, upon information and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.    Ford Credit admits that Reagor-Dykes Snyder, L.P. was a Texas limited partnership and, upon information and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.    Ford Credit admits that Reagor-Dykes Auto Mall I LLC was a Texas limited liability company and, upon information and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.    Ford Credit admits that Reagor-Dykes II LLC was a Texas limited liability company and, upon information and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.    Ford Credit admits that Reagor-Dykes III LLC was a Texas limited liability company and, upon information and belief, formerly had a place of business located at 1215 Avenue J. Lubbock, Texas.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.    Ford Credit denies the allegations in Paragraph 19.

20.    Ford Credit admits that it is a Delaware Limited Liability Company and that it is authorized to do certain business in the State of Texas, and further admits that it may, to the extent permitted by Texas or other applicable law, be served with process via CT Corporation System, which has the address stated in this Paragraph 20.

21.    Ford Credit admits that the Complaint defines "Reagor-Dykes" to include six (6) bankrupt auto vehicle dealerships that sold new and used motor vehicles and that the Reagor-Dykes dealerships, Auto Mall, and RD Snyder were part of a larger group of dealerships that operated as "RDAG" or the "Reagor-Dykes Auto Group."  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.    Ford Credit admits that it previously provided certain wholesale financing to the Reagor-Dykes dealerships, entered into agreements with each dealership regarding the same, extended credit to each of the Reagor-Dykes dealerships, and secured the credit that it extended to each of the Reagor-Dykes dealerships by properly filing and perfecting blanket security interests in the assets of each of the Reagor-Dykes dealerships.  Ford Credit's agreements with the Reagor-Dykes dealerships, and the filings concerning its security interests, speak for themselves.  Ford Credit otherwise denies the allegations in Paragraph 22.

23.     Ford Credit admits that periodic audits of the vehicle inventory at the Reagor-Dykes dealerships were conducted by Alliance Inspection Management LLC ("AIM") on behalf of Ford Credit.  Ford Credit further states that the agreements between Ford Credit and the Reagor-Dykes dealerships speak for themselves.  Otherwise, Ford Credit denies the allegations in Paragraph 23.

24.     Ford Credit lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.     In response to Paragraph 25, Ford Credit denies that it published guidelines concerning "appropriate compensation" for dealership employees.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     Ford Credit lacks knowledge or information sufficient to form a belief regarding the allegation in Paragraph 26 that the Reagor-Dykes dealerships intentionally left portions of its financial reporting to Ford Credit blank.  Ford Credit otherwise denies the allegation in Paragraph 26.

27.     Ford Credit denies that it provided working capital guidelines to the Reagor-Dykes dealerships.  Paragraph 27 otherwise contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the "intentions" of the Reagor-Dykes dealerships and otherwise denies the allegations in Paragraph 27 of the Complaint.

28.     Ford Credit admits it was the primary and largest victim of the fraud committed by Shane Smith and the Reagor-Dykes dealerships, and has learned that the

Reagor-Dykes dealerships at times failed to make payoffs to Ford Credit within seven days after a floorplanned vehicle was sold, but denies that it was aware of this at the time relevant to the transfers at issue. Ford Credit admits that a failure to make a payoff within the required time after a floorplanned vehicle is sold is commonly known as selling a vehicle "out of trust." Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint.

29.      Ford Credit admits it was the primary and largest victim of the fraud committed by Shane Smith and the Reagor-Dykes dealerships, and has learned that the Reagor-Dykes dealerships at times engaged in the practices known as "re-flooring," "fake flooring," or "dummy flooring," but denies that it was aware of this at the time relevant to the transfers at issue. Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint.

30.      Ford Credit admits it was the primary and largest victim of the fraud committed by Shane Smith and the Reagor-Dykes dealerships, and has learned that the Reagor-Dykes dealerships at times engaged in the practices known as "double flooring" and "triple flooring" and that, in some of those instances, vehicles were double-floored with Ford Credit and GM Financial, but denies that it was aware of this at the time relevant to the transfers at issue. Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30.

31.      Paragraph 31 contains legal conclusions as to which no response is required. If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 31.

32.      Ford Credit denies the allegations in Paragraph 32.

33.    Ford Credit denies the allegations in Paragraph 33.

34.    Ford Credit denies the allegations in Paragraph 34.

35.    In response to Paragraph 35, Ford Credit states that its Motion to Appoint Chapter 11 Trustee [Docket No. 47] speaks for itself.  Ford Credit otherwise denies the allegations in Paragraph 35.

36.    In response to Paragraph 36, Ford Credit states that its Motion to Appoint Chapter 11 Trustee [Docket No. 47] speaks for itself.  Ford Credit otherwise denies the allegations in Paragraph 36.

37.    Ford Credit denies the allegations in Paragraph 37.

38.    Ford Credit denies the allegations in Paragraph 38.

39.    In response to Paragraph 39, Ford Credit states that the prior testimony of Gary Byrd speaks for itself.  Ford Credit otherwise denies the allegations in Paragraph 39.

40.    In response to Paragraph 40, Ford Credit states that the prior testimony of Gary Byrd speaks for itself.  Ford Credit otherwise denies the allegations in Paragraph 40.

41.    In response to Paragraph 41, Ford Credit states that the audit report referenced in this Paragraph speaks for itself.  Ford Credit lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning either the alleged falsification of Borrowed Vehicle Agreements by the Reagor-Dykes dealerships or the alleged communication between the Reagor-Dykes employee and the auditor that is alleged in this paragraph.  Ford Credit otherwise denies the allegations in Paragraph 41.

42.    Ford Credit admits that it generally expects dealerships that it finances to maintain a violation rate of less than 2%, and states that the audit reports referenced in this Paragraph, and any communications with the dealerships regarding the same, speak for

themselves.  Otherwise, Ford Credit lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43.     Ford Credit denies the allegations in Paragraph 43.

44.     Paragraph 44 contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 44.

45.     Ford Credit lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint.

46.     In response to Paragraph 46, Ford Credit states that the audit reports referenced in this Paragraph speak for themselves.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47.     In response to Paragraph 47, Ford Credit states that the results of the FBI investigation of the Reagor-Dykes dealerships, the charges filed against former employees of the Reagor-Dykes dealerships, and those employees' plea agreements speak for themselves. Ford Credit otherwise admits the allegations in Paragraph 47, upon information and belief.

48.     In response to Paragraph 48, Ford Credit states that the prior testimony of Gary Byrd and the June 2018 audit reports speak for themselves.  Ford Credit otherwise denies the allegations in Paragraph 48.

49.     Ford Credit denies the allegations in Paragraph 49.

50.     In response to Paragraph 50, Ford Credit states that Ford Credit's Motion to Appoint Chapter 11 Trustee and the prior testimony of Rene Leal speak for themselves.  Ford Credit otherwise denies the allegations in Paragraph 50 of the Complaint.

51.     In response to Paragraph 51, Ford Credit admits that, in June of 2018, James Conlan, an employee of Ford Credit, undertook a review of certain audits of the Reagor-Dykes dealerships.  In further response, Ford Credit states that the prior testimony of James Conlan concerning his review and the accompanying Exhibit to that testimony speak for themselves.   Ford Credit further states that it has learned that the Reagor-Dykes dealerships at times sold vehicles without timely repaying amounts owed to Ford Credit, but denies that it was aware of this at the time relevant to the transfers at issue.  Ford Credit otherwise denies the allegations in Paragraph 51 of the Complaint.

52.     In response to Paragraph 52, Ford Credit states that the prior testimony of James Conlan concerning his review speaks for itself.  Ford Credit further states that it has learned that the Reagor-Dykes dealerships at times falsified sales data reported to Ford Credit, but denies that it was aware of this at the time relevant to the transfers at issue.  Ford Credit otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52.

53.     Ford Credit denies the allegations in Paragraph 53.

54.     In response to Paragraph 54, Ford Credit states that the prior testimony of James Conlan, and the report concerning the July 2018 audit speak for themselves.  Ford Credit admits that, as a result of the July 2018 audit, the Reagor-Dykes dealerships owed Ford Credit in excess of $41 million to repay financing that Ford Credit extended to the dealerships to purchase vehicle inventory that the dealerships had sold prior to that audit.  Ford Credit otherwise denies the allegations in Paragraph 54.

55.     In response to Paragraph 55, Ford Credit admits that it sought payment of all amounts due as a result of the July 2018 audit, that the Reagor-Dykes dealerships

authorized EFTs to Ford Credit that totaled more than $41 million, and that those EFTs were subsequently returned for insufficient funds or because payment on them was stopped.  Ford Credit otherwise denies the allegations in Paragraph 41.

56.     In response to Paragraph 56, Ford Credit states that the proceedings and orders of the Bankruptcy Court referred to in this Paragraph speak for themselves.  Ford Credit otherwise denies the allegations in Paragraph 56.

57.     In response to Paragraph 57, Ford Credit states that its filings in connection with the underlying bankruptcy proceedings involving the Reagor-Dykes dealerships speak for themselves.  Ford Credit otherwise denies the allegations in Paragraph 57 of the Complaint.

58.     In response to Paragraph 58, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

59.     Ford Credit denies the allegations in Paragraph 59.

60.     Ford Credit denies the allegations in Paragraph 60.

61.     Ford Credit denies the allegations in Paragraph 61.

62.     Ford Credit denies the allegations in Paragraph 62.

63.     Ford Credit denies the allegations in Paragraph 63.

64.     Because Plaintiff has stipulated to discontinue and withdraw Count II of the Complaint, no response to Paragraph 64 is required.  If a response to Paragraph 64 is deemed to be required, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

65.    Because Plaintiff has stipulated to discontinue and withdraw Count II of the Complaint, no response to Paragraph 65 is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 65.

66.    Because Plaintiff has stipulated to discontinue and withdraw Count III of the Complaint, no response to Paragraph 66 is required.  If a response to Paragraph 66 is deemed to be required, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

67.    Because Plaintiff has stipulated to discontinue and withdraw Count III of the Complaint, no response to Paragraph 67 is required.  In addition, Paragraph 67 contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 67.

68.    Because Plaintiff has stipulated to discontinue and withdraw Count III of the Complaint, no response to Paragraph 68 is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 68.

69.    Because Plaintiff has stipulated to discontinue and withdraw Count IV of the Complaint, no response to Paragraph 69 is required.  If a response to Paragraph 69 is deemed to be required, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

70.    Because Plaintiff has stipulated to discontinue and withdraw Count IV of the Complaint, no response to Paragraph 70 is required.  In addition, Paragraph 70 contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 70.

71.     Because Plaintiff has stipulated to discontinue and withdraw Count IV of the Complaint, no response to Paragraph 71 is required.  In addition, Paragraph 71 contains legal conclusions as to which no response is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 71.

72.     Because Plaintiff has stipulated to discontinue and withdraw Count IV of the Complaint, no response to Paragraph 72 is required.  If a response is deemed to be required, Ford Credit denies the allegations in Paragraph 72.

73.     In response to Paragraph 73, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

74.     Ford Credit denies the allegations in Paragraph 74.

75.     Ford Credit denies the allegations in Paragraph 75.

76.     Ford Credit denies the allegations in Paragraph 76.

77.     Ford Credit denies the allegations in Paragraph 77.

78.     In response to Paragraph 78, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

79.     In response to Paragraph 79, Ford Credit states that this Paragraph selectively quotes portions of the interim cash collateral orders (taken out of context), and ignores other orders and proceedings in the Bankruptcy Court.  Ford Credit further states that the cash collateral orders speak for themselves, and otherwise denies the allegations in Paragraph 79.

80.     Ford Credit denies that it "had no valid lien" on Debtors' cash on the Petition Date of August 1, 2018.  Paragraph 80 otherwise contains legal conclusions as to

which no response is required.  If a response is deemed to be required, Ford Credit denies the remaining allegations in Paragraph 80.

81.   Paragraph 81, in part, contains legal conclusions regarding the Texas Business and Commerce Code, as to which no response is required.  If a response is deemed to be required to those portions of Paragraph 81, Ford Credit denies them, and otherwise denies the remaining allegations in Paragraph 81.

82.   Paragraph 82, in part, contains legal conclusions regarding the Texas Business and Commerce Code as to which no response is required.  If a response is deemed to be required to those portions of Paragraph 82, Ford Credit denies them, and otherwise denies the allegations in Paragraph 82.

83.   Ford Credit admits that Debtors' allegations as to certain relief they initially sought from Ford Credit (prior to the appointment of, and vesting of the Debtors' claims in, the Creditors' Trustee), are stated in Paragraph 83.  Ford Credit denies that is liable, responsible for, or that Plaintiff is in any way entitled to any recovery from Ford Credit, and otherwise denies the remaining allegations in Paragraph 83.

84.   In response to Paragraph 84, Ford Credit repeats and realleges its responses stated above as if fully stated herein.

85.   Ford Credit admits that Debtors' allegations as to certain relief they initially sought from Ford Credit (prior to the appointment of, and vesting of the Debtors' claims in, the Creditors' Trustee), are stated in Paragraph 85.  Ford Credit denies that is liable, responsible for, or that Plaintiff is in any way entitled to any recovery from Ford Credit, and otherwise denies the remaining allegations in Paragraph 85.

86.    Paragraph 86 contains no factual allegations and, therefore, requires no response.  If a response is deemed to be required, Ford Credit repeats and realleges its responses stated above as if fully stated herein, denies that is liable, responsible for, or that Plaintiff is in any way entitled to any recovery from Ford Credit, and otherwise denies the allegations in Paragraph 86.

All allegations in the Complaint not specifically admitted above are denied.

## DEFENSES

Without accepting any burden not otherwise imposed upon it pursuant to applicable law, Ford Credit asserts the following with regard to the Complaint:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The transfers made by Debtors that the Plaintiff seeks to avoid  and/or recover (collectively, the "Transfers" and each a "Transfer") were not transfers of the Debtors' property or an  interest of the Debtors in property.

### THIRD DEFENSE

Any Transfers received by Ford Credit were either Ford Credit's property, Ford Credit's collateral, or proceeds of Ford Credit's collateral and subject to Ford Credit's properly-perfected, first-priority blanket security interests.

### FOURTH DEFENSE

The Transfers were not made with intent to hinder, delay or defraud Debtors' creditors and/or creditors other than Ford Credit.

**FIFTH DEFENSE**

Ford Credit did not enter into any financial transaction with the Debtor with fraudulent intent.

**SIXTH DEFENSE**

Debtors were not operating a Ponzi scheme at the time that Ford Credit extended financing to the Debtors.

**SEVENTH DEFENSE**

Plaintiff is not entitled to a Ponzi scheme presumption and/or the Ponzi scheme presumption is not applicable to Ford Credit.

**EIGHTH DEFENSE**

Ford Credit did not have actual or constructive knowledge of any fraud or fraudulent scheme perpetrated by the Debtors at the time of the Transfers.

**NINTH DEFENSE**

Ford Credit acted in good faith during all relevant times.

**TENTH DEFENSE**

The Transfers were made to satisfy antecedent debt and/or Debtors received reasonably equivalent value in exchange for the Transfers.

**ELEVENTH DEFENSE**

Any Transfer made by Debtors to Ford Credit during the 90 day period prior to the Petition Date ("Preference Period"), may not be avoided because such Transfer was received in payment of debt incurred by the Debtors in the ordinary course of business or financial affairs of Debtors and Ford Credit and either (a) the Transfer was made in the

ordinary course of business or financial affairs of Debtors and Ford Credit, or (b) the Transfer was made according to ordinary business terms.

## TWELFTH DEFENSE

Any Transfer made by Debtors to Ford Credit during the Preference Period may not be avoided because such Transfer was intended by Debtors and Ford Credit to be contemporaneous exchange for new value given to Debtors, and was in fact a substantially contemporaneous exchange.

## THIRTEENTH DEFENSE

Any Transfer made by Debtors to Ford Credit during the Preference Period may not be avoided because any such Transfer did not enable Ford Credit to receive more than it would receive if such Transfer had not been made and this Case were one under Chapter 7.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred to the extent it cannot prove that the Debtors were insolvent at the time of the Transfers.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred by the doctrine of *in pari delicto.*

## SIXTEENTH DEFENSE

Plaintiff's claims are barred as a matter of equity.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred by 11 U.S.C. § 546 and the limitations on avoidance powers therein and Plaintiffs' claims are or may be barred by applicable statutes of limitation.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred to the extent they seek relief already afforded in the Debtors' main bankruptcy case.

## NINETEENTH DEFENSE

Ford Credit is entitled to post-petition payments received.

## TWENTIETH DEFENSE

Any recovery by Plaintiff, if any, is limited to the total amount of the then-remaining and legally supportable unsecured claims against the Debtors.

## TWENTY-FIRST DEFENSE

Any recovery by Plaintiff, if any, must be reduced by the amount owed to Ford Credit as an unsecured creditor.

## TWENTY- SECOND DEFENSE

Any recovery by Plaintiff, if any, must be reduced by the value given in exchange for the Transfers.

## TWENTY- THIRD DEFENSE

Ford Credit expressly preserves all of its rights of setoff and recoupment.

## TWENTY- FOURTH DEFENSE

Congress recently amended section 547(b) to impose a statutory duty of exercising "reasonable due diligence" when analyzing the circumstances of a case, including affirmative defenses, prior to a plaintiff commencing a preference action.  As such, Plaintiffs failed to sufficiently state a claim for relief under 11 U.S.C. § 547(b) and the relief sought in the Complaint should be denied.

## TWENTY-FIFTH DEFENSE

Any Transfer made by Debtors to Ford Credit during the Preference Period may not be avoided because subsequent to each Transfer Ford Credit provided value for the benefit of Debtors, not secured by an otherwise unavoidable security interest, and on account of which new value Debtors did not make an otherwise unavoidable Transfer to or for the benefit of Ford Credit.

## FIRST COUNTERCLAIM

Pursuant to Fed. R. Bankr. P. 7008(b), Ford Credit requests an award of its attorneys' fees.

## DEMAND FOR JURY TRIAL

Pursuant to 28 U.S.C. § 1547(e) and Fed. R. Bankr. P. 9015, Ford Credit demands a trial by jury for all the issues so triable.

## RESERVATION OF RIGHTS

Ford Credit reserves the right to amend, supplement or otherwise modify this answer to assert such other defenses and/or claims as may become apparent through discovery, or otherwise, in this Proceeding.

**WHEREFORE**, Ford Credit requests that the Court dismiss the Complaint against it, award Ford Credit its costs, disbursements and attorneys' fees, and grant such further relief as the Court may deem just, proper, and equitable.

Dated:  April 9, 2021                  By:  /s/ Kevin M. Sadler
                                            Kevin M. Sadler, Esq.
                                            BAKER BOTTS L.L.P.
                                            1001 Page Mill Road
                                            Building One, Suite 200
                                            Palo Alto, CA 94304-1007
                                            (650) 739-7500 – Telephone
                                            (650) 739-7699 – Facsimile
                                            kevin.sadler@bakerbotts.com

                                            Michael S. Goldberg, Esq.
                                            BAKER BOTTS L.L.P.
                                            910 Louisiana Street
                                            Houston, TX 77002-4995
                                            (713) 229-1401 – Telephone
                                            (713) 229-2801 – Facsimile
                                            michael.goldberg@bakerbotts.com

                                            Craig A. Leslie, Esq.
                                            Jacob S. Sonner, Esq.
                                            Admitted Pro Hac Vice
                                            PHILLIPS LYTLE LLP
                                            One Canalside
                                            125 Main Street
                                            Buffalo, NY 14203
                                            (716) 847-8400 – Telephone
                                            (716) 852-6100 – Facsimile
                                            cleslie@phillipslytle.com
                                            jsonner@phillipslytle.com

                                            *ATTORNEYS FOR DEFENDANT*
                                            *FORD MOTOR CREDIT COMPANY LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2021, a copy of the foregoing Answer was filed electronically.  Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System ("ECF").  Parties may access this filing through ECF.


 /s/ Kevin M. Sadler
Kevin M. Sadler, Esq.