IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| IN RE: Reagor-Dykes Motors, LP, et al. *Debtors*, | Case No. 18-50214-rlj-11 Jointly Administered |
| Dennis Faulkner, Creditors' Trustee, *Plaintiff* vs. Ford Motor Credit Company, LLC, *Defendant* | Adversary No. 20-05005-rlj |

**TRUSTEE'S REPLY IN SUPPORT OF REQUEST TO CERTIFY
WRIT OF HABEAS CORPUS AD TESTIFICANDUM**

Plaintiff Creditors' Trustee Dennis Faulkner (the "Trustee") files this reply in support of his request to certify a Writ of Habeas Corpus Ad Testificandum [Dkt. 242] ("Request to Certify") as follows:

1. Ford Motor Credit Company ("FMCC") again seeks to turn a straightforward motion into an opportunity to rehash its argument regarding the legality of a Ponzi scheme presumption in this case. Lindsay Williams is a fact witness that has first-hand knowledge of the Debtors' fraudulent schemes, as evidenced in her Factual Resume attached to the Request to Certify. Her testimony by deposition or live at trial is unquestionably relevant to Reagor-Dykes' fraudulent intent.

2. FMCC's position is this: We [FMCC] are going to win, therefore Ms. Williams' testimony is not relevant. FMCC attempts to foreclose testimonial evidence proving Reagor-

Dykes' fraud even though the Fifth Circuit and other courts have embraced the use of the term "Ponzi-like scheme" repeatedly. The Court is in a better position to assess the relevant case law than a fact witness or expert.[1] The Court has already addressed FMCC's cited case law, which relates to the ordinary course of business defense to a preference action, not the presumption of fraudulent intent in a fraudulent transfer action.[2]

3. The fact that Reagor-Dykes sold vehicles is a not new revelation and does not foreclose the Trustee's claims. Reagor-Dykes operated at a loss and lacked adequate capital to repay its obligations but for engaging in a massive fraudulent scheme. The Fifth Circuit applied a presumption of fraudulent intent to a similar scheme involving a business that sold legitimate life insurance investments that were ultimately unprofitable:

> Because the life settlements were bad investments, each new purchase of a fractional interest created a liability to the investor. And because the LP Entities were depleting all their resources on commissions and distributions, they did not have sufficient funds to cover those liabilities. Instead, the LP Entities—through the Licensees—continued to recruit new investors to keep the business funded. Eventually, however, the LP Entities no longer had enough capital to conduct their business operations or continue maintaining the policies that had not yet matured.

*See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 113-14, 119 (5th Cir. 2019). The Fifth Circuit described the scheme in *Life Partners* as "Ponzi-like"; the Trustee did not invent the term. *Id*. at 119, 121. FMCC keeps repeating the refrain that the Fifth Circuit has never applied the Ponzi

---

[1] Both Robert Reilly and Dennis Faulkner properly left this legal issue with the Court.

[2] Dkt. 202 at 4. This distinction is important because the "narrow" Ponzi exception to the ordinary course of business defense is based upon the lack of business operations that can inform whether the transfers were in the ordinary course. *In re Am. Housing Found.*, 785 F.3d 143, 160-61 (5th Cir. 2015) ("The Trustee relies on a line of cases narrowly holding that 'a Ponzi scheme is not a business, and that transfers related to the scheme are not within the "ordinary course of business."'"). On the other hand, a business engaged in legitimate operations can have the requisite fraudulent intent in a fraudulent transfer action. Of note, this Court found in the context of a fraudulent transfer claim that the operation in the *American Housing* case was "a form of a Ponzi scheme...." that "burdened AHF with far more than it could legitimately deliver, all to the detriment of AHF's real creditors." *In re Am. Housing Found.*, 2012 WL 4622310, at *14 (Bank. N.D. Tex. Sept. 30, 2012). The Court further stated that "Ponzi or Ponzi-like schemes raise equitable concerns" because the "typical defendants/transferees are likewise victims of the scheme," but asking them to turnover money paid to them "is a proper application of the law…" *Id*. at *15 (internal citations omitted).

2

presumption to a business involved in legitimate transactions but fails to address *In re Life Partners.*

4. Judge Isgur found fraudulent intent in a scheme that engaged in legitimate transactions but that eventually devolved into a fraudulent scheme:

> Even if IFS began as a legitimate enterprise, IFS's officers eventually concluded that it had no hope of honoring its commitments to investors. IFS orchestrated a series of fraudulent inter-company loans to distort its balance sheets and solicited new investments to pay-off old investments. By 1998, IFS's transfers were made solely to keep the fraudulent scheme going. Under Supreme Court and Fifth Circuit precedent, the existence of a pervasive fraudulent scheme is sufficient to find fraudulent intent with respect to transfers made in furtherance of that scheme.

*In re IFS Fin. Corp.*, 417 B.R. 419, 428 (Bankr. S.D. Tex. 2009). Judge Isgur stated that IFS "continued to borrow money in a Ponzi-like scheme," but concluded that a finding that IFS became a traditional Ponzi scheme was not necessary to find fraudulent intent:

> The Fifth Circuit's reasoning applies whether the organization neatly fits within a judicially constructed definition of Ponzi scheme or was a fraudulent scheme that had some, but perhaps not all, attributes of the traditional Ponzi scheme. When an organization perpetuating a fraud makes a transfer necessary for continuation of the fraud, the transfer is made with actual intent to defraud.

*Id*. at 428, 439 n.15. The Fifth Circuit affirmed, stating that "[e]vidence that a company operated as a fraudulent enterprise at the time of the transfer, moreover, may be sufficient to establish actual intent." *In re IFS Fin. Corp.*, 669 F.3d 255, 265 (5th Cir. 2012).

5. A key element common to both of these cases is the fact that the business's legitimate operations were insufficient to cover its obligations and the company resorted to obtaining funds through fraud to stay afloat. Like a Ponzi scheme, this type of fraudulent scheme is bound to fail and leave creditors unpaid. Reagor-Dykes was engaged in such a fraudulent scheme. Ms. Williams will testify at trial (as she did in her deposition) that from 2016 to 2018, Reagor-Dykes lacked adequate cash flow from legitimate operations to repay its obligations and engaged in various fraudulent schemes to obtain new funds to repay old debts. Ms. Williams will

testify that these schemes included fake flooring, double flooring, and check kiting for the express purpose of repaying FMCC and perpetuating the scheme.

6. Ms. Williams will also provide testimony regarding bogus accounting adjustments Shane Smith instructed Reagor-Dykes employees to make to the financial statements in order to make Reagor-Dykes appear profitable. The Trustee's non-retained expert, Joe Danko, led a team at BlackBriar Advisors LLC that reversed these fraudulent entries to correct the financial statements for tax filings. FMCC has faulted Mr. Danko for obtaining information regarding these bogus accounting adjustments from Ms. Williams and four other former Reagor-Dykes employees because some of them pled guilty to their involvement in Reagor-Dykes' scheme. While Ms. Williams' credibility as a penitent wrongdoer would be apparent from the video of her deposition, the Court should have the opportunity to assess Ms. Williams' credibility at trial.

7. The Trustee respectfully requests that the Court certify a writ of habeas corpus ad testificandum to the District Court for the Northern District of Texas, Lubbock Division, requiring Lindsay Williams to appear and testify at trial on April 25, 2022, either in person or remotely. The Trustee further requests that the Court recommend that the district court issue such writ to the Warden of the FMC Carswell facility.

Date: March 8, 2022

    Respectfully submitted,

    **BRACEWELL LLP**

    By: */s/ Bryan S. Dumesnil*
        Bryan S. Dumesnil
        State Bar No. 00793650
        bryan.dumesnil@bracewell.com
        Bradley J. Benoit
        State Bar No. 24012275
        brad.benoit@bracewell.com
        Diane M. Lancaster
        State Bar No. 24046966
        diane.lancaster@bracewell.com

       711 Louisiana, Suite 2300
       Houston, Texas  77002
       (713) 223-2300 - Telephone
       (800) 404-3970 – Facsimile

**STRICKLIN LAW FIRM, P.C.**

By: */s/ Samuel M. Stricklin*
    Samuel M. Stricklin
    State Bar No. 19397050
    sam.stricklin@stricklaw.pro
    2435 N. Central Expy
    Suite 1200, Palisade, Bldg. II
    Richardson, TX 75080
    (972) 238-8687 - Telephone

**COUNSEL TO CREDITORS' TRUSTEE DENNIS FAULKNER**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedures via the Court's electronic filing service on March 8, 2022.

Kevin M. Sadler
State Bar No. 17512450
kevin.sadler@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
(650) 739-7518 – Telephone
(650) 739-7618 – Facsimile

Michael S. Goldberg
State Bar No. 08075800
michael.goldberg@bakerbotts.com
**BAKER BOTTS LLP**
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
(713) 229-1234 – Telephone
(713) 229-1522 – Facsimile

Craig A. Leslie
cleslie@phillipslytle.com
Jacob S. Sonner
jsonner@phillipslytle.com
**PHILLIPS LYTLE LLP**
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400 – Telephone
716-852-6100 – Facsimile

                                        */s/ Bryan S. Dumesnil*
                                        Bryan S. Dumesnil