

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 4, 2022**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| REAGOR-DYKES MOTORS, LP,[1] | § § | Case No.: 18-50214-RLJ-11 |
| Debtors. | § § § | (Jointly Administered) |
| DENNIS FAULKNER, Creditors' Trustee of the Creditors Trust, | § § § § | |
| Plaintiff, | § § § | |
| v. | § § | Adversary No. 20-05005 |
| FORD MOTOR CREDIT COMPANY, LLC, | § § § § | |
| Defendant. | § § | |

**ORDER**

___

[1] The following chapter 11 cases are jointly administered in Case No. 18-50214: Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (Case No. 18-50321), Reagor-Dykes III LLC (Case No. 18-50322), Reagor-Dykes II LLC (Case No. 18-50323), Reagor Auto Mall, Ltd. (Case No. 18-50324), and Reagor Auto Mall I LLC (Case No. 18-50325).

1

Ford Motor Credit Company, LLC (FMCC) lodged several objections to the Trustee's summary judgment evidence proffered in support of his response to FMCC's second motion for summary judgment.[2]

## I.

FMCC submits that certain items of the Trustee's evidence are inadmissible hearsay. Inadmissible evidence cannot be considered on a motion for summary judgment because it "would not establish a genuine issue of material fact if offered at trial." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990)). "[S]ummary judgment evidence need not be 'in a form that would be admissible at trial[.]'" *Geiserman*, 893 F.2d at 793 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). For example, the court may consider testimony by affidavit that might not otherwise be admissible at trial. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 373–74 (5th Cir. 2007)

## II.

FMCC objects to the transcript of Shane Smith's[3] trial testimony, factual resumes from criminal proceedings, Reagor-Dykes employee emails, and Reagor-Dykes' internal excel files.

### A.

The Trustee argues that Smith's trial testimony[4] is admissible under the Fifth Circuit's holding in *Kelley v. Price Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993), and Federal Rule of Evidence 807. But the circumstances of *Kelley* are different from those here. In *Kelley*, a certified transcript of a *prior trial* was incorporated in the record of a court-ordered new trial

---

[2] "Trustee" refers to the plaintiff, Dennis Faulkner, Creditors' Trustee of the Creditors Trust.
[3] Shane Smith was the Chief Financial Officer of Reagor-Dykes.
[4] Smith testified at Bart Reagor's criminal trial on October 12, 2021; Bart Reagor was the Chief Executive Officer of Reagor-Dykes. ECF No. 337-9, Def.'s Ex. F-3 at App. 2109–2240.

between the same parties;[5] and the cases referenced in *Kelley* do not consider a situation where a certified transcript of a non-party's trial testimony is made part of the record in a separate proceeding.[6] The Trustee asks the Court to apply *Kelley* in a manner that allows trial testimony—in an unrelated action—to be admitted to the record here. This reading of *Kelley* is too broad. Smith's trial testimony is not admissible under *Kelley*.

Turning to Rule 807, the Trustee contends that Smith's testimony is admissible hearsay because sufficient guarantees of trustworthiness support the testimony.[7] Under Rule 807, otherwise inadmissible hearsay evidence is admissible when it "is supported by sufficient guarantees of trustworthiness … [and] it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807. The Trustee argues that Smith's testimony is sufficiently trustworthy because (1) the statements were made under oath in court, voluntarily as part of a plea agreement, for the purpose of admitting to crimes, and were subject to a cross-examination; (2) the statements are corroborated by records, documents, and other statements of employees; and (3) FMCC relied on Smith's trial testimony for its expert testimony. Although such corroborating factors support the truthfulness of Smith's testimony, other evidence better relates to the transfers made by Reagor-Dykes. The Trustee fails to show that Smith's testimony is "more probative" than any other evidence of Reagor-Dykes' intent when making transfers to FMCC. *See* ECF No. 341, Pl.'s Br. in Opp'n to Second Mot. Summ. J. at 27, 47–48; Fed. R. Evid. 807. The Court denies admission of Smith's trial testimony.

---

[5] *Kelley*, 992 F.2d at 1415 n.12.
[6] *See Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990); *Downes v. Beach*, 587 F.2d 469, 471–72 (10th Cir. 1978); *Langston v. Johnson*, 478 F.2d 915, 918 n.17 (D.C. Cir. 1973).
[7] "Rule" refers to the Federal Rules of Evidence, unless otherwise stated.

3

B.

For the factual resumes,[8] the Trustee argues they are admissible under Rules 803(22) and 807. Under Rule 803(22), a party may introduce evidence of a final judgment when "(A) the judgment was entered after a trial or guilty plea … ; (B) the conviction was for a crime punishable by death or by imprisonment for more than a year … ; (C) the evidence is admitted to prove any fact essential to the judgment … ." Fed. R. Evid. 803(22). The Fifth Circuit has admitted guilty pleas to show intent in related civil proceedings. *First Nat'l Bank of Louisville v. Lustig*, 961 F.2d 1162, 1165 (5th Cir. 1992) ("In determining whether there is a genuine issue of material fact on each element … , the guilty pleas should receive the same treatment as any other piece of evidence.").[9] Factual resumes provide the factual basis for a plea agreement that is accepted by the court. Here, all but one factual resume state intent as an element of the charged crimes—wire fraud[10] or bank fraud.[11] As intent is an essential element of the crimes, the factual resumes that state the parties had the "intent to defraud" can be considered in determining whether an issue of material fact exists regarding Reagor-Dykes' alleged actual intent to hinder, delay, or defraud creditors when Reagor-Dykes made transfers to FMCC. The one exception, the factual resume of Steven Anthony Reinhart, concerns his admissions to misprision of a

---

[8] ECF No. 342, Pl.'s Exs. A-1–A-14 at App. 6–139. These exhibits contain the factual resumes of various Reagor-Dykes employees' criminal trials. They were used as the factual basis for the trial court's acceptance of their guilty pleas.

[9] *See First Nat'l Bank of Louisville v. Lustig*, 832 F. Supp. 1058, 1064–65 (E.D. La. 1993) (after remand from the Fifth Circuit, the district court considered a guilty plea as evidence to determine whether a genuine issue of material fact existed), *aff'd*, 96 F.3d 1554, 1574 (5th Cir. 1996).

[10] 18 U.S.C. § 1343; Fifth Circuit Pattern Jury Instruction 2.57 (5th Cir. 2015 ed.) ("the defendant acted with a specific intent to defraud").

[11] 18 U.S.C. § 1344; Fifth Circuit Pattern Jury Instructions 2.58A (5th Cir. 2015 ed.) ("the defendant had the intent to defraud the financial institution").

4

felony,[12] which does not require intent as an element of the crime. Reinhart's factual resume,[13] therefore, should not be admitted as evidence.

Except for Reinhart's factual resume, the factual resumes are admissible hearsay under the hearsay exception in Rule 803(22). The Court need not consider Rule 807.

## C.

The Trustee argues that the Reagor-Dykes' excel sheets and employee emails fall within the business records exception to hearsay. *See* Fed. R. Evid. 803(6). FMCC argues they are not admissible because the Trustee has not shown that the creators had an obligation to create the documents and has not properly authenticated the documents were created for business purposes. To admit the documents as business records under Rule 803(6), the records (i) must have been made at or near the time of the recorded information by someone with knowledge, (ii) were kept in the ordinary course of business, and (iii) were made in a regular practice; elements (i), (ii), and (iii) must be shown by the testimony of the custodian or a qualified witness, after which the opponent then may show the evidence lacks trustworthiness.

### 1.

### The Excel Sheets

FMCC alleges that the excel sheets are not admissible under Rule 803(6) because they were part of Reagor-Dykes' fraud, some have unknown authors, and no witness sponsored the documents. Courts have found that a trustee can "establish [the business record] requirements through 'the testimony of the custodian or another qualified witness,' or by means of an out-of-court certification procedure established by rule or statute." *Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1267 (11th Cir. 2015) (quoting Fed. R. Evid. 803(6)).

---

[12] 18 U.S.C. § 4; Fifth Circuit Pattern Jury Instructions 2.06 (5th Cir. 2019 ed.).
[13] ECF No. 342, Pl.'s Ex. A-14 at App. 136.

5

Additionally, a trustee's testimony sufficiently authenticates the requirements of Rule 803(6) when the trustee's testimony is presented with circumstantial evidence establishing the trustworthiness of the documents. *Curtis*, 781 F.3d at 1268–69; *United States v. Flom*, 558 F.2d 1179, 1182–83 (5th Cir. 1977) ("the law is clear that under circumstances which demonstrate trustworthiness it is not necessary that the one who kept the record, or even had supervision over their preparation, testify"). Here, the Trustee relies on the method of collection, certain electronic records, interviews with employees, and the deposition of Lindsay Williams[14] to conclude that the excel sheets were created and used in the ordinary course of Reagor-Dykes' business. ECF No. 288-1, Pl.'s Ex. B at App. 786; ECF No. 342-5, Pl.'s Ex. B at App. 1720.

Fraudulent activity does not preclude a business's records from being business records. *See United States v. Kaiser*, 609 F.3d 556, 575–76 & n.6 (2d Cir. 2010). "The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803 advisory committee's note to para. 6.

Here, Reagor-Dykes employees routinely relied on the spreadsheets. An example is an exhibit[15] discussed in Lindsay Williams's deposition. ECF No. 342-1, Pl.'s Ex. A-15 at App. 204. Ms. Williams describes the spreadsheet as "the daily intercompany spreadsheet, and it shows basically the amount coming from each dealership payable to which dealership it's payable to." *Id*. at App. 205. The spreadsheet documents check kiting. *Id*. at App. 206:15–18. In the spreadsheet, Smith directs the amount of money to deposit at each bank. *Id*. at App. 208. Employees then would deposit the requested amount. The purpose of the documents was to

---

[14] Lindsay Williams was an accounting manager for Reagor-Dykes.
[15] ECF No. 337-9, Def's Ex. F-16 at App. 2515–18.

6

perpetuate a check-kiting scheme, but the reliability of the documents is evidenced by the employee's reliance on the documents.

The Court finds that the excel sheets fall within the Rule 803(6) exception to hearsay because Reagor-Dykes employees relied upon them in the ordinary course of business.

### 2.

### Employees' Emails

For the emails, FMCC argues the Trustee has not established that the emails were made in the ordinary course of business. "Neither a paper document, such as a letter or memo or note, nor an email, falls within the business-records exception of Rule 803(6) simply because it concerns a business matter." *Canatxx Gas Storage Ltd. v. Silverhawk Cap. Partners, LLC*, No. H-06-1330, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008). "[T]he critical element in making particular entries eligible for admission is whether the entries were 'made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls' for the business, such as 'payrolls, accounts receivable, accounts payable, bills of lading and the like.'" *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-cv-313-WCB, 2012 WL 2595275, at *4 (E.D. Tex. July 5, 2012) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 113–14 (1943)).

Here, the Trustee states that the "records were kept in the course of Reagor-Dykes' regularly conducted business activity, and that making the records was a regular practice of that activity." ECF No. 342-5, Pl.'s Ex. B at App. 1720. The Trustee makes these assertions based upon metadata, Reagor-Dykes' record-collection method, interviews with Lindsay Williams, and the deposition of Lindsay Williams.[16] *Id*. The Trustee has adequately established that the emails

---

[16] The deposition of Lindsay Williams is particularly enlightening. ECF No. 342-1, Pl.'s Ex. A-15. Ms. Williams discusses an email sent by Shane Smith, and she answers "yes" to the question of whether the email was "illustrative

were made in Reagor-Dykes' ordinary course of business. The Court finds that the emails are admissible under the Rule 803(6) exception to the general hearsay exclusion.

### III.

### The Order

The Court concludes that the factual resumes except Reinhart's, the excel sheets, and the emails are admissible evidence and overrules FMCC's objections to same. The Court sustains FMCC's objection to Smith's trial testimony.

It is SO ORDERED.

### End of Order ###

---

of instructions to check kite." *Id*. at App. 194–96. Then Ms. Williams was asked if Shane Smith typically asked "[where] things stood in terms of the money, funds on hand available on a particular day"; Ms. Williams responded by stating that Shane Smith asked for updates usually multiple times a day. *Id*. at App. 285–86. This statement weighs in favor of finding that the emails were part of the regularly conducted business activity.