

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 4, 2022**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| REAGOR-DYKES MOTORS, LP,[1] | § | Case No.:  18-50214-RLJ-11 |
| | § | (Jointly Administered) |
| Debtors. | § | |
| ———————————————— | § | ———————————————— |
| | § | |
| DENNIS FAULKNER, Creditors' | § | |
| Trustee of the Creditors Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 20-05005 |
| | § | |
| FORD MOTOR CREDIT | § | |
| COMPANY, LLC, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

In March 2022, Ford Motor Credit Company, LLC (FMCC) filed a motion for summary

---

[1] The following chapter 11 cases are jointly administered in Case No. 18-50214: Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (Case No. 18-50321), Reagor-Dykes III LLC (Case No. 18-50322), Reagor-Dykes II LLC (Case No. 18-50323), Reagor Auto Mall, Ltd. (Case No. 18-50324), and Reagor Auto Mall I LLC (Case No. 18-50325).

judgment to dismiss the preferential and fraudulent transfer claims brought by the plaintiff,

Dennis Faulkner, Trustee of the Reagor-Dykes Auto Group Creditors Liquidating Trust

(Trustee).  The Court, on June 3, 2022, issued an opinion and order granting in part and denying

in part FMCC's summary judgment motion (the First Summary Judgment Opinion).  *Faulkner v.*

*Ford Motor Credit Co., LLC (In re Reagor-Dykes Motors, LP)*, No. 18-50214-RLJ-11, 2022 WL

2046144, at *17 (Bankr. N.D. Tex. June 3, 2022).  The Court held that the Trustee was

foreclosed from asserting the Ponzi-scheme presumption of fraudulent intent.  *Id*.  The Court did

not, however, dismiss the fraudulent transfer claim, finding that the Trustee pleaded and

presented some evidence of fraudulent intent under a "badges of fraud" theory and with direct

evidence.  *Id*. at *9.  Because the Trustee pleaded the "badges of fraud"/direct-evidence theory

for the first time in his response to FMCC's summary judgment motion, the Court granted

FMCC's request to file a second motion for summary judgment to address that issue more

comprehensively.  On June 29, 2022, FMCC filed its second motion for summary judgment on

this "new" theory, asserting that the Trustee's fraudulent transfer claim should be dismissed in its

entirety.  The Trustee filed his response in opposition, which was followed by FMCC's reply.

The Court has by separate order addressed FMCC's evidentiary objections.

The Court denies FMCC's second summary judgment motion.  An abbreviated

explanation of the Court's ruling follows.  *See* Fed. R. Civ. Proc. 52(a)(3).[2]

## I.

### Standard for Actual Fraudulent Transfer Claim

Section 548(a)(1)(A) of the Bankruptcy Code provides that a "trustee may avoid any

transfer ... that was made ... within 2 years before the date of the filing of the petition, if the

---

[2] Made applicable in bankruptcy proceedings under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

debtor ... made such transfer ... with actual intent to hinder, delay, or defraud any [creditor]."[3]

Because the phrase "intent to hinder, delay, or defraud" is disjunctive—though the cited cases

focus on intent to defraud—proof of intent to hinder or to delay or to defraud is sufficient.

*Wiggains v. Reed (In re Wiggains)*, 848 F.3d 655, 661 (5th Cir. 2017).

Actual fraudulent transfers typically occur in one of three forms: first, when a debtor

conveys property to a friend with the expectation that the property or other value will be returned

to the debtor after creditors cease collection efforts; second, when a debtor conveys property to

family or a friend desiring to keep the property from a creditor; and third, when a debtor conveys

property in exchange for assets that are more difficult for a creditor to seize. *Boston Trading*

*Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1508 (1st Cir. 1987). These examples are not exclusive—

"anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Husky Int'l*

*Elecs., Inc. v. Ritz*, 578 U.S. 356, 360 (2016); *see also Kasolas v. Nicholson (In re Fox Ortega*

*Enters., Inc.)*, 631 B.R. 425, 442–43 (Bankr. N.D. Cal. 2021) (relying on *Husky International* to

hold that transfers under a Ponzi scheme constituted actual fraud).

Section 548(a)(1) focuses on the debtor's intent in making the transfer. The plaintiff

must provide evidence that the debtor made each transfer with actual intent to hinder, delay, or

defraud "any entity to which the debtor [is] … indebted." § 548(a)(1)(A); *Furr v. TD Bank, N.A.*

*(In re Rollaguard Sec., LLC)*, 591 B.R. 895, 918 (Bankr. S.D. Fla. 2018) ("In order to prosecute

a claim based on actual intent to hinder, delay, or defraud a creditor, the plaintiff must show that

the alleged fraudulent intent is related to the transfers sought to be avoided."). This does not

mean, however, that evidence of fraudulent intent must specifically mention every transfer

sought to be avoided or that evidence of intent cannot apply to numerous transfers. Courts have

---

[3] "Section" or "§" hereinafter refers to the Bankruptcy Code, 11 U.S.C., unless otherwise stated.

relied on evidence of intent spanning a specific time period to determine that large numbers of transfers during that time were made with intent to hinder, delay, or defraud. *See, e.g.*, *Faulkner v. Kornman (In re The Heritage Org., L.L.C.)*, 413 B.R. 438, 468–71 (Bankr. N.D. Tex. 2009) (finding allegations of a fraudulent scheme were relevant to determine intent on transfers made during time of scheme); *Perlman v. PNC Bank, N.A.*, No. 19-61390, 2020 WL 13389823, at *5– 6 (S.D. Fla. June 16, 2020) (same); *Welch v. Highlands Union Bank*, 526 B.R. 152, 161 (W.D. Va. 2015) (same).

Evidence of the debtor's intent to hinder, delay, or defraud must concern "any entity to which the debtor was … indebted." § 548(a)(1)(A). While fraudulent transfer actions typically target transfers made with intent to defraud creditors other than the transferee, the language of § 548(a)(1)(A) places no limitation on the type of creditor sought to be defrauded, and thus intent to hinder, delay, or defraud a creditor-transferee is encompassed by the statute. *See* 5 COLLIER ON BANKRUPTCY ¶ 548.04 (16th 2022). Indeed, courts have found transfers to be fraudulent when they were made with intent to defraud the creditor body as a whole. *See, e.g.*, *Stettner v. Smith (In re IFS Fin. Corp.)*, 669 F.3d 255, 264–65 (5th Cir. 2012) (finding transfers made under a fraudulent scheme that harmed the creditor body were fraudulent transfers); *In re Heritage Org.*, 413 B.R. at 468–71, 490 (same).

The plaintiff may prove intent with direct or circumstantial evidence. *In re Wiggains*, 848 F.3d at 661. Intent is best proved with direct evidence, but circumstantial evidence is more common. Courts use "badges of fraud"— common factors indicating actual fraudulent intent— to assess the circumstantial evidence of the transferor's intent. *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1066–67 (5th Cir. 2008). The direct evidence raised here is discussed below in section II; badges of fraud are addressed in section III.

## II.

## Direct Evidence of Reagor-Dykes' Fraudulent Intent[4]

A debtor's admission of intent to defraud, though rare, would constitute direct evidence. *Wiggains*, 848 F.3d at 662; *Chow v. Prince (In re Prince)*, No. 10-4214, 2012 WL 1095506, at *9 (Bankr. E.D. Tex. Mar. 30, 2012).  "When a debtor admits that he acted with the necessary intent[,] there is no need for the court to rely on circumstantial evidence or inferences in determining whether the debtor had that intent." *Wiggains*, 848 F.3d at 662 (citation and internal alterations omitted).

As direct evidence of Reagor-Dykes' intent in making transfers to FMCC, the Trustee cites factual resumes,[5] Shane Smith's trial testimony,[6] Shane Smith's affidavit,[7] Lindsay Williams's deposition testimony,[8] and Reagor-Dykes employees' emails.  FMCC contends that the evidence fails to show intent.  The Court considers the evidence, particularly Shane Smith's affidavit and Lindsay Williams's testimony.  *See Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020).

## A.

## Shane Smith's Affidavit

The Trustee contends that Shane Smith's affidavit directly evidences Reagor-Dykes' actual intent to hinder, delay, or defraud creditors.  The bulk of the affidavit, however, concerns

---

[4] The Reagor-Dykes Auto Group consisted of all the entities listed in note 1.  Only the following six entities, however, made transfers to FMCC that are the subject of this proceeding: Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada, LP.  "Reagor-Dykes" hereinafter refers to these six entities.

[5] Reagor-Dykes employees submitted factual resumes in their criminal trials which were used as the factual basis for the trial court's acceptance of their guilty pleas.  *See* ECF No. 342, Pl.'s Exs. A-1–A-14 at App. 6–139.

[6] Shane Smith was the Chief Financial Officer of Reagor-Dykes.  Smith testified at the criminal trial of Reagor-Dykes' CEO, Bart Reagor, on October 12, 2021.  ECF No. 337-9, Def.'s Ex. F-3 at App. 2109–2240.

[7] Smith signed a sworn affidavit on November 30, 2021.  ECF No. 337-7, Def.'s Ex. C at App. 951–58.

[8] Lindsay Williams was an accounting manager for Reagor-Dykes.  Williams was deposed on February 15, 2022.  ECF No. 342-1, Pl.'s Ex. A-15 at App. 140–432.

the fraud committed but not specifically Reagor-Dykes' intent on the transfers.  *See* ECF No.

337-7, Def.'s Ex. C at App. 951.[9]  The affidavit does not address *payments*.  Rather, Smith's

testimony refers to *spreading* payments and kiting checks as the means to cover-up Reagor-

Dykes' fraud.  Strictly construed under the statute—*transfers* made with actual intent—such

testimony falls short of constituting direct evidence of intent on the transfers.  Such evidence is

better characterized as circumstantial evidence of Reagor-Dykes' intent in making payments to

FMCC.

## B.

## Lindsay Williams's Testimony

The Trustee refers to excerpts from Lindsay Williams's testimony to show actual intent.

Lindsay Williams's deposition testimony demonstrates that Reagor-Dykes may have made

payments to FMCC with the intention to hinder, delay, or defraud creditors:

Q: Okay. Did Reagor-Dykes ever pay off vehicles in anticipation of an audit?

A: Yes.

Q: Why was that done?

A:  To reduce the amount of sold-not-due units for the audit. There would be a large
number of vehicles that needed to be paid off. And if – they would pay down
as much as they could in the days leading up to the audit so that the number of
vehicles that had to be located and accounted for would be reasonable – fairly
reasonable.

Q: So did that result in a spike in payoffs before the audit?

A: Yes.

ECF No. 342-1, Pl.'s Ex. A-15 at App. 227–28.  Lindsay Williams also testified that when

Reagor-Dykes failed to make payments to FMCC, FMCC "secured their inventory and secured

---

[9] "ECF No." hereinafter refers to the numbered docket entries in this adversary proceeding, No. 20-05005,
unless otherwise stated.

their collateral and stopped floor plan advances." *Id.* at App. 215–16. Speaking to the timing of

Reagor-Dykes' fraudulent conduct, Lindsay Williams stated the double flooring occurred in

2016, 2017, and 2018 and was a mechanism used to generate funds to pay FMCC. *Id.* at App.

300–02. Reagor-Dykes was kiting funds at the same time. *Id.* at App. 179–181. Considering

these statements in the light most favorable to the nonmovant, they show that some transfers

between 2016 and 2018 were made to FMCC for the purpose of hiding Reagor-Dykes' fraud.

The evidence presented by the Trustee, specifically Lindsay Williams's testimony, raises

an issue of material fact of Reagor-Dykes' actual intent when making payments to FMCC.

## III.

### Circumstantial Evidence and the Badges of Fraud

As direct evidence of the debtor's actual intent "will rarely be available," courts

traditionally rely on circumstantial evidence. *Hayes v. Palm Seedlings Partners-A (In re Agric.*

*Rsch. & Tech. Grp., Inc.)*, 916 F.2d 528, 534 (9th Cir. 1990). Historically, courts recognized

certain "badges of fraud" that aid the factfinder in assessing the transferor's intent to defraud

under § 548. *In re Soza*, 542 F.3d at 1067. The badges of fraud are bridges that connect

"questionable acts commonly associated with fraud to findings of actual fraudulent intent." 5

COLLIER ON BANKRUPTCY ¶ 548.04(1)(b) (16th 2022). The Fifth Circuit has recognized the

following badges of fraud:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close
> associate relationship between the parties; (3) the retention of possession, benefit
> or use of the property in question; (4) the financial condition of the party sought to
> be charged both before and after the transaction in question; (5) the existence or
> cumulative effect of the pattern or series of transactions or course of conduct after
> the incurring of debt, onset of financial difficulties, or pendency or threat of suits
> by creditors; and (6) the general chronology of events and transactions under
> inquiry.

*In re Soza*, 542 F.3d at 1067 (quoting *Chastant v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)).  Additionally, to determine whether a debtor made a transfer with actual intent, courts may look to the badges of fraud enumerated in the Uniform Fraudulent Transfer Act.  *See Janvey v. Brown*, 767 F.3d 430, 435–36 (5th Cir. 2014).  The badges of fraud expressed in the Uniform Fraudulent Transfer Act include:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

UFTA § 4(b); 5 COLLIER ON BANKRUPTCY ¶ 548.04(1)(b)(i) (16th 2022).  Courts are not bound to these lists; they may consider other facts to determine intent.  *In re 1701 Commerce, LLC*, 511 B.R. 812, 836 (Bankr. N.D. Tex. 2014) ("This list is not exhaustive, and a court may also consider other suspicious facts suggesting that a transfer was made with actual fraudulent intent"); UFTA § 4 cmt. 5.[10]

"Not all, or even a majority, of the 'badges of fraud' must exist to find actual fraud." *In re Soza*, 542 F.3d at 1067.  The existence of only one badge of fraud, however, is insufficient to prove fraudulent intent.  *See Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988) (requiring several badges of fraud to prove fraudulent intent); *United States v. Fernon*, 640 F.2d 609, 613 (5th Cir. Unit B March 1981).  "[T]he party seeking to avoid a transfer must establish,

---

[10] *See, e.g.*, *In re Heritage Org.*, 413 B.R. at 480; *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 370–71 (S.D. Tex. 2008); *In re Sissom*, 366 B.R. 677, 692 (Bankr. S.D. Tex. 2007).

by a preponderance of the evidence, the presence of multiple badges of fraud." *In re The Heritage Org.*, 413 B.R. at 464. "Once that occurs, the burden shifts to the defendant to show, again by a preponderance of the evidence, that the [transferor] had a legitimate purpose in making the transfer." *Id.*

For summary judgment, the Court considers whether the Trustee cited sufficient circumstantial evidence, filtered through the badges of fraud, to raise genuine issues of material fact on Reagor-Dykes' actual intent in making the payment transfers to FMCC. *See Faulkner v. Kornman (In re The Heritage Org., L.L.C.)*, No. 04-35574-BJH-11, 2008 WL 5215688, at *8 (Bankr. N.D. Tex. Dec. 12, 2008). The Court does not, at this stage, make credibility determinations; the Court will thus not weigh evidence for or against a finding of actual intent to hinder, delay, or defraud. *See id.*; *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001).

The Trustee alleges Reagor-Dykes' fraudulent schemes, financial condition, course of conduct after financial difficulties, and the general chronology of events indicate that Reagor-Dykes' transfers were made with actual intent to hinder, delay, or defraud. FMCC disagrees with the Trustee's assertions and argues, in addition, that payment of antecedent debt is per se not fraudulent. The Court addresses each in turn, considering the admissible evidence presented by the Trustee.

**(i)      Reagor-Dykes' Fraudulent Schemes**

The Fifth Circuit, in *In re IFS Financial Corporation*, stated "[e]vidence that a company operated as a fraudulent enterprise at the time of the transfer . . . may be sufficient to establish actual intent." *In re IFS Fin. Corp.*, 669 F.3d at 265. Another court in this district that recently followed *In re Reagor-Dykes Motors* likened a fraudulent scheme to a badge of fraud. *Yaquinto v. CBS Radio, Inc. (In re Tex. E&P Operating, Inc.)*, No. 17-34386-SGJ-7, 2022 WL 2719472, at *10–11 (Bankr. N.D. Tex. July 13, 2022) (citing *In re Reagor-Dykes Motors*, 2022 WL 2046144,

9

at *7).  And courts in other districts have held the existence of a fraudulent scheme, alongside

other badges of fraud, is circumstantial evidence of fraudulent intent.  *Welch*, 526 B.R. at 161

("[T]he Amended Complaint sets forth nine examples of circumstantial evidence available to

[defendant], including references to writing checks without sufficient available funds with

subsequent covering deposits and frequently overdrawn accounts."); *Perlman*, 2020 WL

13389823, at *6 ("When these allegations are read in conjunction with the remainder of the

allegations setting out [transferor's] allegedly fraudulent scheme, these allegations are sufficient

for purposes of a motion to dismiss [a fraudulent transfer claim.]"); *Christian Brothers High Sch.*

*Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 307

(S.D.N.Y. 2010) ("Even if the Ponzi scheme presumption were not applicable, the guilty

pleas…—which confirm[] the existence of the fraud scheme…—provide[] overwhelming

evidence of actual fraudulent intent.").

        The Trustee presented evidence of Reagor-Dykes' fraudulent activity—including double

flooring, fake flooring, check kiting, and selling vehicles out of trust—to support his fraudulent

transfer claim.  The Trustee previously argued Reagor-Dykes' fraudulent conduct was so

pervasive that the Ponzi-scheme presumption should apply to relieve him from proving

fraudulent intent for each transfer.  *See S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th

Cir. 2007) ("In this circuit, proving that [the transferor] operated as a Ponzi scheme establishes

the fraudulent intent behind the transfers it made.").  The Court rejected that argument in the

First Summary Judgment Opinion, holding that because Reagor-Dykes did not operate as a Ponzi

scheme, the Ponzi-scheme presumption does not apply.  *In re Reagor-Dykes Motors*, 2022 WL

2046144, at *8.

For each transfer the Trustee seeks to avoid, he now argues the evidence proves the transfers to FMCC were made with actual intent to hinder, delay, or defraud creditors. FMCC admits the Trustee presented substantial evidence of fraudulent activity but argues the evidence fails to show Reagor-Dykes made the transfers to FMCC with the intent to defraud *other* creditors and thus his fraudulent transfer claim fails. But contrary to FMCC's focus on other creditors, under § 548(a)(1)(A), as described above, fraudulent transfers can include transfers made to defraud a creditor-transferee—in this case, FMCC.

Certain fraudulent schemes may arise, in part, from insolvency and then serve to compound a company's circumstance to the point that, like a Ponzi scheme, recovery into solvency is impossible. The certainty of a scheme's collapse provides the basis for the Ponzi-scheme presumption.[11]

As the Court explained in the First Summary Judgment Opinion, when a debtor engages in fraud, but not necessarily a Ponzi scheme, the Court cannot merely *presume* every transfer was made with fraudulent intent. *In re Reagor-Dykes Motors*, 2022 WL 2046144, at *8. When a debtor engages in legitimate business activities, as Reagor-Dykes did, the business may recover into solvency and repay its creditors, despite its fraud. In such a situation, payment of a legitimate debt, even if made as part of a fraudulent scheme, is not necessarily made with fraudulent intent, as the transferor may merely intend to pay-off a debt without the intent to prolong a scheme that is doomed to collapse.

---

[11] "One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987) (citations omitted).

But what if the transfer is made as part of and in furtherance of the fraudulent scheme?  If an insolvent transferor transfers property (or funds) and knows or should know that achieving solvency is futile, such transfers may indeed advance the transferor's fraudulent scheme.  Like in a Ponzi scheme, the transferor understands that it is making a transfer only to delay inevitable collapse, thus intending to defraud (or hinder or delay) creditors and delay potential recovery.

Check kiting is an example of how some transfers in a fraudulent scheme may be made with the intent to hinder, delay, or defraud creditors, depending on the stage of the scheme.  As one court explained:

> [T]he reasoning behind a presumption of fraudulent intent in the case of a Ponzi scheme rests in large part on the operator's knowledge of the scheme's inevitable demise. While a check kite's operator may very well harbor an intent to defraud, it is not necessarily a foregone conclusion that it bears such intent. … [U]nlike in the Ponzi setting where the timing of transfers is irrelevant given the schemer's evil intent from the beginning, timing may play a significant role in a check kiting operation. … Ponzi schemes are run with actual intent to defraud because of the knowledge of inevitable failure from the outset. By contrast, an individual who kites checks may not act with the requisite intent to defraud if, for example, he remains financially able to promptly cover overdrafts.

*Colonial Bank v. Freeman (In re Pac. Forest Prods. Corp.)*, No. 05-23268-CIV, 2006 WL 8433477, at *7–8 (S.D. Fla. May 24, 2006).  Only when a check kiter "comes to a point of no return where [he] could never find a way out … [might every transfer] be made with an intent to defraud creditors."  *Barber v. Union Nat'l Bank of Macomb (In re KZK Livestock, Inc.)*, 190 B.R. 626, 630 (Bankr. C.D. Ill. 1996).

Importantly, for a transfer to be made with intent to hinder, delay, or defraud creditors based on the transferor's fraudulent scheme, the transfer must be made in furtherance of the scheme.

> In prosecuting a fraudulent transfer claim based on actual intent, it is typically not sufficient to show that the debtor intended to defraud someone and [that] the debtor

also made a transfer. Just because a debtor is involved in a fraudulent scheme does
not mean that every transfer made by that debtor is made with fraudulent intent.

*In re Rollaguard Sec.*, 591 B.R. at 918.  For a transfer to be made with fraudulent intent, it must

have "perpetuated and expanded [the] fraudulent scheme."  *Klein v. Shepard*, No. 2:19-CV-

00533-DN-PK, 2022 WL 2441311, at *17 (D. Utah July 5, 2022).  Thus, a plaintiff must prove a

nexus between the transfer and the transferor's fraudulent scheme.  Here, the Trustee must show

how each of the thousands of transfers he seeks to avoid "perpetuated and expanded" Reagor-

Dykes' fraudulent schemes of kiting and creating "float" and the floorplan-based frauds of

double flooring, fake flooring, and selling vehicles out of trust.  *See id.*; *see also Zazzali v. AFA*

*Fin. Group, LLC (In re DSI Renal Holdings, LLC)*, No. 10-54524 PJW, 2012 WL 4903593, at *7

(Bankr. D. Del. Aug. 28, 2012) ("[E]ven where the plaintiff has alleged the existence of a broad,

fraudulent scheme, 'the court must focus precisely on the specific transaction or transfer sought

to be avoided in order to determine whether that transaction falls within the statutory parameters

of an actually fraudulent transfer.'" (alterations omitted) (quoting *Bayou Superfund, LLC v.*

*WAM Long/Short Fund II, LP (In re Bayou Grp., LLC)*, 362 B.R. 624, 638 (Bankr. S.D.N.Y.

2007)).

       In a Ponzi scheme, all transfers perpetuate and expand the scheme because the façade of

profitability created by the transfers is necessary to keep the scheme going.  The same may be

true for other types of frauds.  If a certain transfer is made to cover the float created by a

previously kited check, that transfer perpetuates and expands the check kiting scheme by

preventing detection of the fraud and keeping the scheme alive.  *In re KZK Livestock*, 190 B.R.

at 629 ("[The transferor's] guilty plea [admitting check kiting] stands as *prima facie* evidence of

a pervasive, actual intent to defraud *the Banks* being used for the kiting. But it is only those

transfers which are deemed conclusively fraudulent.") (emphasis added)).  If, but for a particular

transfer, the enterprise will inevitably collapse, then that transfer may advance the fraudulent scheme and evidence the transferor's actual intent to hinder, delay, or defraud creditors.

Whether any of the transfers alleged here furthered or, instead, are a byproduct of Reagor-Dykes' fraudulent scheme is an intensely factual inquiry.

Looking at the evidence in the light most favorable to the nonmovant, Reagor-Dykes' fraud began at the latest in 2016. ECF No. 342-1, Pl.'s Ex. A-15 at App. 300–02. Lindsay Williams stated large payments were made to FMCC in anticipation of an audit and to conceal Reagor-Dykes' fraud. *Id*. at App. 227–28. The Trustee's evidence raises an issue of material fact.

**(ii)     Financial Condition of Reagor-Dykes**

The financial condition of the debtor may indicate the debtor's actual intent to hinder, delay, or defraud creditors. In the First Summary Judgment Opinion, the Court acknowledged that the "Trustee has presented evidence that Reagor-Dykes was insolvent when it made the transfers." *In re Reagor-Dykes Motors*, 2022 WL 2046144, at \*9; *see also* ECF No. 265-1, Def.'s Mot. To Preclude Reilly, App'x at App. 10–11; ECF No. 259-6, Def.'s Ex. D-4 at App. 1031. Whether the insolvency of Reagor-Dykes at any time is related to the intent behind its transfers to FMCC is a fact question. Accordingly, the Trustee has provided sufficient evidence under the insolvency badge at this, the summary judgment, stage.

**(iii)    Existence and Effect of the Transactions or Course of Conduct After Incurring Debt**

Shane Smith's affidavit states Reagor-Dykes faced the "issue of insufficient cash to fund normal operations at RDAG." ECF No. 337-7, Def.'s Ex. C at App. 956. Lindsay Williams's testimony also supports the proposition that Reagor-Dykes did not have the available funds to pay-off the vehicles sold. ECF No. 342-1 Pl.'s Ex. A-15 at App. 228. To cover-up its cashflow problems, Reagor-Dykes perpetuated a fraudulent scheme. ECF No. 337-7, Def.'s Ex. C at App.

14

955.  Moreover, payments were made to FMCC to conceal the fraud.  ECF No. 342-1 Pl.'s Ex. A-15 at App. 227–28.  The Trustee presented sufficient evidence of Reagor-Dykes' transactions and conduct after incurring debt.

**(iv)     General Chronology of Events and Transactions**

The Court has held that the Trustee provided evidence of "a 'general chronology of events' that include[s] acts of fraud."  *In re Reagor-Dykes Motors*, 2022 WL 2046144, at *9; *see also* ECF. No. 259-6, Def.'s Ex. D-4 at App. 1023–35; ECF No. 288-1, Pl.'s Ex. A-1 at App. 86–88; ECF No. 259-6, Def.'s Ex. C at App. 952–58.  And viewed in the light most favorable to the Trustee as the nonmovant, the Court finds that, in the general chronology of events, Lindsay Williams's deposition testimony potentially links the fraudulent acts to Reagor-Dykes' payments to FMCC for the purpose of concealing the fraud.  *See* ECF No. 342-1, Pl.'s Ex. A-15 at App. 227–28.  Under the chronology-of-events badge, this evidence demonstrates an issue of material fact on Reagor-Dykes' intent in making certain payments to FMCC.

**(v)      Antecedent Debt**

FMCC argues that Reagor-Dykes' transfers to FMCC are not subject to avoidance because they satisfied an antecedent debt.  When a transfer is made "*merely* to satisfy an antecedent debt," it is not made with actual intent to hinder, delay, or defraud.  *Burnazos*, 835 F.2d at 1508 (emphasis in original).  But payments satisfying antecedent debts are not per se outside the scope of § 548(a)(1)—some transfers made on account of antecedent debts may still be made with intent to hinder, delay, or defraud and are thus subject to a fraudulent transfer action.  *McFarland v. Gen. Elec. Cap. Corp. (In re Int'l Mfg. Grp., Inc.)*, 538 B.R. 22, 27 (Bankr. E.D. Cal. 2015) ("There is nothing in the statute to suggest that a payment on a legitimate debt to a legitimate creditor cannot be an actual fraudulent conveyance if it was made with the actual intent on the part of the transferor to hinder, delay, or defraud his or her

creditors."); *Kapila v. TD Bank, N.A. (In re Pearlman)*, 460 B.R. 306, 313 (Bankr. M.D. Fla.

2011) ("If a party can demonstrate that a debtor, acting with the actual intent to hinder, delay, or

defraud his creditors, transferred money in repayment of an existing debt, such transfer is subject

to avoidance as a fraudulent transfer under § 548 of the Bankruptcy Code."); *In re IFS Fin.

Corp.*, 669 F.3d at 265  (finding transfers made on account of antecedent debt were fraudulent

conveyances).  Additionally, § 548(c) offers innocent transferees a defense to fraudulent transfer

actions.  *Williams v. F.D.I.C. (In re Positive Health Mgmt.)*, 769 F.3d 899, 901 (5th Cir. 2014).[12]

If paying antecedent debts is outside the scope of § 548(a)(1) as a matter of law, then § 548(c)

would be superfluous.

        Here, Lindsay Williams testified that Reagor-Dykes made large payments before audits

"so that the number of vehicles that had to be located and accounted for would be reasonable[.]"

ECF No. 342-1, Pl.'s Ex. A-15 at App. 227.  This testimony gives rise to a question of fact of

whether the payments were made for the sole purpose of paying off Reagor-Dykes' legitimate

debt to FMCC or for the purpose of concealing and furthering Reagor-Dykes' fraud.

**IV.**

**FMCC's Other Arguments**

**A.**

**Background of the Trustee's Legal Theories**

        Under Count I of the Trustee's complaint—his fraudulent transfer claim—the Trustee

alleges "the Transfers were part of an ongoing Ponzi scheme or Ponzi-like scheme that was

---

[12] In *In re Positive Health Mgmt.*, the debtor paid mortgage payments on a property occupied by the debtor but owned by another entity. The trustee brought a fraudulent transfer action against the transferee. Finding the transferee accepted the payments in good faith, the court allowed the transferee to keep the mortgage payments up to the value given to the debtor. The court held the value given to the debtor was the property's rental value, which was less than the amount of the mortgage payments; thus, the trustee recovered the difference between the mortgage payments and the rental value while the transferee kept the rental value. 769 F.3d at 902–06.

perpetuated by the financial dealings of Debtors. All payments by or on behalf of the Debtors, including the Transfers, were made to FMCC to maintain this scheme." ECF No. 1 ¶ 61. The Trustee also asserted in response to a motion to compel discovery that discovery related to Reagor-Dykes' other creditors besides FMCC was irrelevant because the Trustee was relying on the Ponzi-scheme presumption, and "[o]nce a Ponzi or Ponzi-like scheme is established, the defendant cannot rebut the presumption of fraudulent intent." ECF No. 186 ¶ 16.

Based on these representations and others, FMCC (and the Court) assumed the Trustee was relying exclusively on the Ponzi-scheme presumption to prove fraudulent intent for his fraudulent transfer claim. FMCC thus argued in its first motion for summary judgment that, because the Ponzi-scheme presumption may not be extended to "Ponzi-like" schemes, the Court should dismiss the Trustee's fraudulent transfer claim. The Trustee responded that the presumption should be extended but, if not, he also presented sufficient evidence of fraudulent intent to survive summary judgment. The Court concluded the Ponzi-scheme presumption could not be extended but agreed with the Trustee that he presented evidence of fraudulent intent. *In re Reagor-Dykes Motors*, 2022 WL 2046144, at *9. The Trustee's claim thus survived summary judgment.

In a subsequent hearing, FMCC objected to the Court's decision, claiming it was prejudiced by having to address another legal theory besides the Ponzi-scheme presumption. FMCC requested that trial be abated to allow it to file a second summary judgment motion to specifically address the Trustee's direct and circumstantial evidence of fraudulent intent. The Court thus abated trial and granted FMCC's request.

17

**B.**

**Prejudice to FMCC**

Despite the trial abatement and the opportunity to file a second summary judgment motion on the singular issue not fully addressed in its first motion, FMCC still argues it is prejudiced and the Trustee's fraudulent transfer action must be dismissed.

As explained in the First Summary Judgment Opinion, the Trustee submitted evidence in response to summary judgment and pleaded numerous facts in the complaint which, if true, constitute circumstantial evidence of fraudulent intent through the badges of fraud and direct evidence of fraudulent intent. *Id.* While the Trustee never specifically mentioned the "badges of fraud" in his complaint, stating in a complaint the specific label ascribed to a theory is not a requirement to survive summary judgment based on that theory. "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (citation omitted).

"[A] plaintiff is required to give fair notice in the pleadings of all *claims* brought against the defendant." *Id.* (emphasis added). And the Trustee has undoubtedly stated a claim under § 548(a)(1)(A). *See* ECF No. 54 (denying FMCC's motion to dismiss Trustee's fraudulent transfer claim). FMCC argues, however, that it was prejudiced because the Trustee raised a new legal *theory* at summary judgment under his already-pleaded fraudulent transfer claim.

Raising a new legal theory under an already-pleaded claim at the summary-judgment stage is not unduly prejudicial, and it is certainly not outside the court's discretion to allow a party to rely on a new legal theory at summary judgment. In *Grede v. UBS Securities, LLC*, a party raised two new theories of recovery under a fraudulent transfer claim in its response to a summary judgment motion. 303 F. Supp. 3d 638, 656 (N.D. Ill. 2018). The movant objected,

claiming the party could not raise its new theories in response to summary judgment. *Id*. The
court concluded:

> UBS is correct that a plaintiff is not free to assert wholly new claims in briefs
> opposing a motion for summary judgment. That is not what the Trustee has done
> here, however. The Trustee's claim—that the $14.4 million transfer was made with
> fraudulent intent and must be avoided—remains the same. The Trustee pleaded the
> core facts of the transfer at issue…. The Trustee has since discovered evidence of
> undersegregation and the source of the transferred funds, but this evidence does not
> contradict his core claim; it supplements his claim. Furthermore, even assuming
> that UBS is correct that the Trustee's arguments are "new theories" rather than mere
> "evidence," *plaintiffs are not required to plead specific legal theories in their
> complaints.*

*Id.* at 656–57 (emphasis added) (internal citations omitted).

Like in *Grede*, the Trustee fleshed out a previously un-relied-upon legal theory to support
his fraudulent transfer claim in response to a summary judgment motion. Such a response is
permissible and nonprejudicial, especially when, as here, the Trustee continues to rely on the
same factual allegations already included in his complaint and the same evidence used to
prosecute his claim under the Ponzi-scheme presumption.

The cases from this circuit that FMCC cites are not applicable. They concern a party
denied from bringing a new *claim* in response to a summary judgment motion. *See Parish v.
Frazier*, 195 F.3d 761, 763–64 (5th Cir. 1999) (holding court did not abuse its discretion by
denying request to amend complaint to assert new claim in response to summary judgment
motion); *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1150–51 (5th Cir. 1990)
(same); *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 628–29 (5th Cir. 1993) (holding court did not
abuse its discretion in denying request for new trial to assert new theories under separate
statutes); *Wachovia Bank, Nat'l Ass'n. v. Schlegel*, No. 3:09-CV-1322-D, 2010 WL 2671316, at
*3 (N.D. Tex. June 30, 2010) (denying defendant's request to amend its answer to assert new
claims in response to summary judgment motion). Here, as explained, the Trustee is not seeking

to assert a new *claim* but is merely asserting alternate legal *theories* to the Ponzi-scheme
presumption.

FMCC has cited to no case where a court dismissed a claim because a party relied on a
new legal theory to support its claim at summary judgment, let alone any case which states a
court is *required* to dismiss a claim under such circumstances.  In response to FMCC's summary
judgment motion, the Trustee submitted direct and circumstantial evidence of fraudulent intent to
support his fraudulent transfer claim in addition to his Ponzi-scheme theory.  There was nothing
untoward about this response, and it did not unfairly prejudice FMCC.  And to whatever extent
FMCC was prejudiced, that prejudice has been cured—FMCC is aware of the Trustee's badges-
of-fraud and direct-evidence theories, it has been given an opportunity to respond to them via
summary judgment, and it has been given months to prepare to address those theories at trial.
The Court will not dismiss the Trustee's fraudulent transfer claim for altering his method of
proof at the summary judgment stage.

## C.

### The Court's Prior Orders

Unable to rely on any binding precedent, FMCC finally appeals to previous orders of the
Court entered on discovery disputes in this case.  In September 2021, FMCC filed two
discovery-related motions.  ECF Nos. 159, 172.  Through one motion to compel, FMCC sought
all documentation under the Trustee's control that related to Reagor-Dykes' relationship with its
other creditors.  ECF No. 172.  The Court denied the motion, holding the requested discovery
was irrelevant and unduly burdensome.  ECF No. 202.  In finding the requested discovery was
irrelevant, the Court relied in part on the Trustee's representation that he intended to prove
fraudulent intent through the Ponzi-scheme presumption.  The Court stated, "The Trustee will
either succeed on its [Ponzi-scheme presumption] theory or not, and unless the Complaint is

amended to assert a different theory, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors." *Id.* at 5–6.  The Court made similar statements in another discovery order that indicate the Trustee was relying on the Ponzi-scheme presumption to prove fraudulent intent.  ECF No. 207.

Seizing on the Court's language in its discovery orders, FMCC now argues that the Trustee's only available course of action to assert a legal theory other than the Ponzi-scheme presumption is through amending his complaint.  The Court's orders on the discovery disputes served a singular purpose—to resolve the discovery disputes.  They did not set the standard for a summary judgment motion and certainly did not preempt longstanding precedent concerning such motions.  To the extent the Court's orders could be read to state the Trustee was relying exclusively on the Ponzi-scheme presumption to prove fraudulent intent, those statements only have bearing on the motions they decided; they do not bind the Trustee to one legal theory in perpetuity and do not prevent him from raising direct and circumstantial evidence of fraudulent intent at the summary-judgment stage.[13]

The Trustee is not exclusively bound to the Ponzi-scheme presumption.  He appropriately presented direct and circumstantial evidence of fraudulent intent in response to FMCC's motion for summary judgment.  To the extent FMCC suffered any prejudice on account of the Trustee presenting alternative legal theories, such prejudice has been cured through the abatement of trial and the filing of its motion here.

---

[13] In a hearing held June 8, 2022, FMCC also asserted that the Court's discovery orders bind the Trustee exclusively to the Ponzi-scheme presumption under the "law of the case" doctrine.  *See* ECF No. 339, Transcript of Hearing at 4–5, 9.  But "[t]he law of the case doctrine does not impede a court's reconsideration of its own prior ruling."  *Pringle v. Atlas Van Lines & Cartus, Inc.*, No. 4:13-CV-571-O, 2014 WL 12531276, at *1 n.1 (N.D. Tex. June 16, 2014).  Even if the Court's prior orders explicitly limited the Trustee to his Ponzi-scheme presumption theory, which they do not, the Court still would not be bound to such statements.

# V.

## Conclusion

The Court denies FMCC's second request for summary judgment and will issue its order

accordingly.

### End of Memorandum Opinion ###