**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

IN RE:

Reagor-Dykes Motors, LP,
Reagor-Dykes Imports, LP,                    Case No. 18-50214-rlj-11
Reagor-Dykes Amarillo, LP,                   Jointly Administered
Reagor-Dykes Auto Company, LP,
Reagor-Dykes Plainview, LP, and
Reagor-Dykes Floydada LP,
Reagor-Dykes Auto Mall, Ltd.,
Reagor-Dykes Snyder, L.P.,
Reagor-Dykes Auto Mall I LLC,
Reagor-Dykes II LLC,
Reagor-Dykes III LLC,

           Debtors,

Dennis Faulkner, Creditors' Trustee,

           *Plaintiff*,                        Adversary No. 20-05005-rlj

           v.

Ford Motor Credit Company LLC,

           *Defendant*.

**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S MOTION FOR LEAVE TO
APPEAL INTERLOCUTORY ORDER DENYING FORD CREDIT'S SECOND
MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. §§ 158(a)(3) & 1292(b) and Federal Rules of Bankruptcy Procedure

8001, 8002, 8003, and 8004, Defendant Ford Motor Credit Company LLC ("Ford Credit") moves

for leave to pursue interlocutory appeal of the October 5, 2022, Opinion and Order of the United

States Bankruptcy Court for the Northern District of Texas, Lubbock Division (Dkts. 355, 356)

denying Ford Credit's second motion for summary judgment.  A copy of the *Opinion* and *Order*

are attached as **Exhibit A** and **Exhibit B**, respectively.

Respectfully submitted,

/s/ Kevin M. Sadler
Kevin M. Sadler, Esq.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 943304
(650) 739-7518 – Telephone
(650) 739-7618 – Facsimile
kevin.sadler@bakerbotts.com

Michael S. Goldberg, Esq.
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1401 – Telephone
(713) 229-2801 – Facsimile
michael.goldberg@bakerbotts.com

Craig A. Leslie, Esq.
Jacob S. Sonner, Esq.
Admitted Pro Hac Vice
One Canalside
125 Main Street
Buffalo, NY 14203
(716) 847-8400 – Telephone
(716) 852-6100 – Facsimile
cleslie@phillipslytle.com
jsonner@phillipslytle.com

Dated:  October 19, 2022          *Counsel for Ford Motor Credit Company LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ i

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................... 3

QUESTION PRESENTED........................................................................9

RELIEF SOUGHT..................................................................................10

ARGUMENT ..........................................................................................10

    I.     THE BENEFITS AND PURPOSES OF INTERLOCUTORY REVIEW
        WOULD BE ACHIEVED HERE BECAUSE REVERSAL OF THE
        COURT'S ORDER WILL OBVIATE THE NEED FOR TRIAL ON THE
        TRUSTEE'S $315 MILLION FRAUDULENT-TRANSFER CLAIM ...............10

        A.   Interlocutory Appeal Would Involve a Controlling Issue of Law that Would
             Materially Advance the Ultimate Termination of this Litigation ...............11

        B.   There Is Substantial Ground For Difference Of Opinion ..........................13

             1.  *The Fifth Circuit, and other courts of appeals, interpret*
                 *Supreme Court precedent to require notice not just of the*
                 *claims asserted, but also of distinct theories that support the*
                 *claim*...........................................................................................13
             2.  *The Bankrutpcy Court's decision squarely conflicts with this*
                 *precedent*......................................................................................17

CONCLUSION.......................................................................................22

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Abbott v. Equity Grp., Inc.*,
    2 F.3d 613 (5th Cir. 1993) ...................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 1, 13

*Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
    713 F.2d 618 (11th Cir. 1983) ...................................................................................... 21

*BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*,
    900 F.3d 529 (7th Cir. 2018) ...................................................................................... 14

*Calvi v. Knox Cnty.*,
    470 F.3d 422 (1st Cir. 2006) ...................................................................................... 14

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000) ...................................................................................... 14, 15

*DeFranceschi v. BAC Home Loans Servicing, L.P.*,
    477 F. App'x 200 (5th Cir. 2012) ...................................................................................... 13, 14, 15

*Eustice v. JPMorgan Chase & Co.*,
    2020 WL 5541084 (S.D. Tex. Aug. 10, 2020) ...................................................................................... 15, 16

*Grede v. UBS Sec., LLC*,
    303 F. Supp. 3d 638 (N.D. Ill. 2018) ...................................................................................... 20

*Harris v. Reston Hosp. Ctr., LLC*,
    523 F. App'x 938 (4th Cir. 2013) ...................................................................................... 16

*In re Cypress Fin. Trading Co., L.P.*,
    620 F. App'x 287 (5th Cir. 2015) ...................................................................................... 10

*In re O'Connor*,
    258 F.3d 392 (5th Cir. 2001) ...................................................................................... 10

*In re Reagor-Dykes Motors, LP*,
    2022 WL 2046144 (Bankr. N.D. Tex. June 3, 2022) ...................................................................................... 3

*In re Wiggains*,
    848 F.3d 655 (5th Cir. 2017) ...................................................................................... 17

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    854 F.3d 797 (5th Cir. 2017) ...................................................................................... 13

*Johnson v. Jones*,
  515 U.S. 304 (1995) ................................................................................................ 10

*Josey v. John R. Hollingsworth Corp.*,
  996 F.2d 632 (3d Cir. 1993) .................................................................................. 16

*Kelley v. Cypress Fin. Trading Co., L.P.*,
  518 B.R. 373 (N.D. Tex. 2014) ............................................................................. 10

*Martinez v. Petrenko*,
  792 F.3d 173 (1st Cir. 2015).................................................................................. 14

*Matter of Ichinose*,
  946 F.2d 1169 (5th Cir. 1991) .............................................................................. 10

*McLin v. Chiles*,
  2016 WL 208322 (S.D. Miss. Jan. 15, 2016) ....................................................... 13

*Miranda-Rivera v. Toledo-Davila*,
  813 F.3d 64 (1st Cir. 2016).................................................................................... 14

*NAACP v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2010) ................................................................................ 21

*Overseas Inns S.C. P.A. v. United States*,
  911 F.2d 1146 (5th Cir. 1990) .............................................................................. 14

*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989) ................................................................................ 16

*Ryan v. Flowserve Corp.*,
  444 F. Supp. 2d 718 (N.D. Tex. 2006) ....................................................... 11, 12, 13

*Sec. & Exch. Comm'n. v. Res. Dev. Int'l, LLC*,
  487 F.3d 295 (5th Cir. 2007) ................................................................................ 18

*Smith v. Travelers Cas. Ins. Co. of Am.*,
  932 F.3d 302 (5th Cir. 2019) ................................................................................ 17

*Soza v. Hill*,
  542 F.3d 1060 (5th Cir. 2008) ........................................................................ 17, 18

*TDH Partners LLP v. Ryland Grp., Inc.*,
  2006 WL 8437051 (N.D. Tex. Aug. 15, 2006) ...................................................... 11

*Thomas v. City of Chicago*,
  2021 WL 1923406 (N.D. Ill. May 13, 2021)........................................................... 21

*West v. City of Holly Springs*,
  2019 WL 1984321 (N.D. Miss. May 3, 2019) ........................................................................ 21

**Statutes:**

11 U.S.C. § 548(a)(1) ............................................................................................................. 2, 4

28 U.S.C. §§ 158(a)(3) .............................................................................................................. 10

28 U.S.C. § 1292(b) ............................................................................................................ 10, 11

**Rules:**

Fed. R. Bankr. Proc. 8001 ......................................................................................................... 10

Fed. R. Bankr. Proc. 8002 ......................................................................................................... 10

Fed. R. Bankr. Proc. 8003 ......................................................................................................... 10

Fed. R. Bankr. Proc. 8004 ......................................................................................................... 10

**Other Authorities:**

4 Am. Jur. 2d Appellate Review § 128 (2005) ......................................................................... 13

16 Charles A. Wright et al., Federal Practice and Procedure § 3930 .................................. 11, 12

## PRELIMINARY STATEMENT

This motion for interlocutory appeal presents a straightforward question of tremendous consequence in this case:  Is the Trustee authorized, after making a strategic decision to pursue only a single legal theory in support of his fraudulent-transfer claim, to reverse course when it becomes clear that his legal theory will be dismissed on summary judgment and introduce—via opposition to summary judgment and after discovery closed—two new, previously-disclaimed legal theories?  The answer should have been "no."  Fifth Circuit precedent says the Trustee's decision to keep his claim alive by invoking new legal theories came too late, because Ford Motor Credit Company ("Ford Credit") lacked fair notice of that theory.  The Bankruptcy Court, however, said such constructive amendment of the complaint via summary-judgment opposition was allowed, even though discovery had closed and the new theory was evidentiarily distinct from the prior theory.  This stretches principles of notice pleading far too thin.

The Supreme Court has said that the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests."  *Ashcroft v. Iqbal*, 556 U.S. 662, 698–699 (2009) (citation omitted).  The Fifth Circuit, and other courts of appeals, interpret this to require notice not just about the *claims* asserted, but also the *distinct theories* that support the claim.  Where differing theories would require, for example, starkly different discovery, a plaintiff must give fair notice of each distinct theory.  Otherwise a defendant will be insufficiently informed of the evidence it must adduce or the arguments and defenses it must prepare to defend against plaintiff's more-general claim.

The Bankruptcy Court paid no heed to this principle.  Instead, it has ordered Ford Credit to defend itself at trial against two theories that the Bankruptcy Court acknowledged had never been pleaded or relied upon by the Trustee—and even though the Bankruptcy Court had, in fact,

denied Ford Credit discovery relevant to these theories on the basis that the theories were not at issue in the case.  Dkt. 355 at 17-18.[1]

When the Trustee pleads a fraudulent-transfer claim, there are three ways that he can seek to show that each transfer was made "with actual intent to hinder, delay, or defraud any present or subsequent creditor." 11 U.S.C. § 548(a)(1)(A).  The three ways are: (1) by direct evidence; (2) by reference to circumstantial evidence and the "badges of fraud" as to each transfer; or (3) by proving that Reagor-Dykes operated a Ponzi scheme, which creates a presumption of fraudulent intent as to all transfers.  The Trustee pleaded only the third.  The Bankruptcy Court even denied Ford Credit's requested discovery, which would have been relevant if the Trustee were pursuing the first or second paths to prove the claim, "holding the requested discovery was irrelevant and unduly burdensome" because, in accordance with the Trustee's representations, the court "assumed the Trustee was relying *exclusively* on the Ponzi-scheme presumption to prove fraudulent intent for his fraudulent transfer claim."  Dkt. 355 at 17, 20 (emphasis added).  The Bankruptcy Court stated that the "Trustee's claims rest on the Ponzi-scheme presumption . . . unless the Complaint is amended to assert a different theory."  Dkt. 202 at 5-6.  The Trustee never objected to this characterization, nor did he amend his complaint.

Only after Ford Credit successfully moved for summary judgment on the Trustee's actually-pleaded theory of liability did the Trustee make an about-face: as the Bankruptcy Court itself put it, the Trustee "pleaded the 'badges of fraud'/direct-evidence theory for the first time in his response to [Ford Credit's] summary judgment motion."  Dkt. 355 at 2.  Despite acknowledging the limitations of the complaint and that the Trustee had disclaimed all other theories in his effort to avoid discovery, the Bankruptcy Court nevertheless concluded it was permissible and

---

[1] Unless specified otherwise, all citations to the docket are to the adversary proceeding docket, No. 20-05005-rlj.

non-prejudicial to allow the Trustee to inject what the court called "a previously un-relied-upon legal theory to support his fraudulent transfer claim in response to a summary judgment motion." *Id.* at 19.  The court did so because, in its view, Ford Credit had notice of the general fraudulent-intent claim and—despite having been denied discovery—was able to seek summary judgment on the new theories.  Had the court applied principles of fair notice, it would have dismissed the Trustee's fraudulent-transfer claim in full.

Interlocutory review is therefore appropriate to address this controlling issue of law that would allow Ford Credit to avoid the burden and expense of trial on a $315-million claim.  The Bankruptcy Court concluded that Ford Credit was entitled to notice only of *claims* the Trustee sought to pursue, regardless of whether Ford Credit had notice of the factually and legally distinct *theories* of liability that support the claim.  This decision conflicts with *Iqbal* and its progeny's fair-notice requirement.  And it deprives Ford Credit of due process.  The purpose of interlocutory review would be squarely served here, because review and reversal at this juncture would avoid an unnecessary trial on the Trustee's improperly asserted theories of liability.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the bankruptcy of the Reagor-Dykes Auto Dealerships ("Reagor-Dykes" or "Debtors").  Reagor-Dykes was a large group of affiliated dealerships and entities that were in the business of selling new and used motor vehicles.[2]  Ford Credit provided wholesale floorplan financing to Reagor-Dykes so that the dealerships could purchase new and used vehicle inventory.  It is undisputed that Reagor-Dykes was engaged in substantial legitimate business activities—in fact, Reagor-Dykes was a top-performing dealership group measured by gross sales

---

[2] Unless otherwise noted, the factual background here is a summary of those facts in the Bankruptcy Court's first summary-judgment opinion.  *See In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2022 WL 2046144, at *1-*3 (Bankr. N.D. Tex. June 3, 2022).

of Ford vehicles with a revenue stream reaching into the hundreds of millions of dollars, much of which stemmed from the sale of vehicles it acquired through floorplan financing.  Reagor-Dykes thus made many payments to Ford Credit, each of which was required under the floorplan loans and satisfied contractual debts Reagor-Dykes owed to Ford Credit.

Unbeknownst to Ford Credit, and despite the revenues from the many Ford vehicles sold by Reagor-Dykes, Reagor-Dykes was unprofitable and committed fraudulent acts to cover a cash-flow shortfall.  Some of these fraudulent acts targeted Ford Credit: for example, Reagor-Dykes repeatedly and intentionally failed to timely pay Ford Credit, including by falsifying sales data to delay making required payments; obtained financing from Ford Credit on vehicles that were already floorplanned with another lender; and obtained financing on already-sold vehicles. Reagor-Dykes also kited checks at times.  In July 2018, Ford Credit conducted an emergency audit, which revealed some of these fraudulent activities.  Ford Credit suspended its financing, demanded payment of Reagor-Dykes' outstanding obligations, and sued Reagor-Dykes to recover on those obligations.  Reagor-Dykes responded by seeking Chapter 11 protection.[3]

In June 2020, Reagor-Dykes filed this adversary proceeding against Ford Credit, which is now owned by Trustee Dennis Faulkner ("Trustee").  The complaint seeks to recover allegedly fraudulent and preferential transfers by Reagor-Dykes to Ford Credit.  At issue here is the fraudulent-transfer claim under 11 U.S.C. § 548(a)(1), pursuant to which the Trustee seeks to claw back nearly 3,000 transfers made by Reagor-Dykes to Ford Credit during the two years prior to the bankruptcy filing, and which the Trustee alleges amounted to over $315 million.

---

[3] Also unbeknownst to Ford Credit, the Federal Bureau of Investigation had been covertly investigating Reagor-Dykes since February 2018.  This ultimately led to multiple federal fraud and fraud-related charges against at least fifteen employees of Reagor-Dykes.  *See generally* Dkt. 258 at 6.

To prevail on his fraudulent-transfer claim, the Trustee must prove that Reagor-Dykes made each challenged transfer to Ford Credit with actual intent to hinder, delay, or defraud one or more creditors.  Dkt. 321 at 6-7.  Ford Credit therefore requested discovery as to Reagor-Dykes' relationships with other creditors, including serving interrogatories regarding what Reagor-Dykes owed to which creditors, whether they were paying those creditors and when, and documents verifying the transfers and liabilities.  *See* Dkts. 173-1, 173-2.  Ford Credit also sought evidence such as Reagor-Dykes' financial statements and floorplan-financing contracts and proofs of payments to other creditors.  *See id.*

The Trustee refused to provide the requested discovery, and Ford Credit moved to compel.  Dkt. 173.  The Trustee objected to Ford Credit's motion on the ground that information about specific transfers and Reagor-Dykes' other creditors was irrelevant because the Trustee had alleged that Reagor-Dykes was running a Ponzi or Ponzi-like scheme.  As the Trustee put it, a "presumption of fraudulent intent applies in a Ponzi or Ponzi-like scheme.  The entire purpose of this presumption is to circumvent the need to prove the Debtors' specific intent with regard to each particular transfer or each particular creditor."  Dkt. 186 at 1.

The Trustee further told the Bankruptcy Court that "a day-by-day analysis of the Debtors' intent" in making the transfers would be "utterly useless."  *Id.* at 10.  And he moved for a protective order limiting the scope of the Trustee's Rule 30(b)(6) deposition to prevent Ford Credit from asking questions about Reagor-Dykes' dealings with other creditors, asserting that Ford Credit did not need that information "to determine who the Debtors intended to defraud" because "[t]he fraudulent intent in a Ponzi or Ponzi-like scheme stems from the inevitability of the scheme's demise, which endangers all creditors."  Dkt. 164 at 7.  The Trustee again reiterated his reliance on the Ponzi-scheme presumption at the hearing on these discovery motions, telling the

Bankruptcy Court that he would prove his case by showing "that [Debtors] were running a Ponzi-like operation" and that he was "not relying on a creditor-by-creditor analysis to prove [his] case. It is not part of our case." Dkt. 196 at 39, 73-74.

The Bankruptcy Court took the Trustee at his word. It denied Ford Credit's motion to compel and granted in part the Trustee's motion for a protective order based on the Trustee's exclusive reliance on the Ponzi-scheme presumption to prove his fraudulent-transfer claim. The court recognized that the discovery Ford Credit sought "would all be relevant to the issue of fraudulent intent" "[u]nder a typical actual fraudulent transfer action" based on a direct-evidence and badges-of-fraud theory, which require a transfer-by-transfer analysis. Dkt. 202 at 3. But the Trustee's complaint against Ford Credit was "not typical" because he "intends to prove fraudulent intent not by the more typical means of proving the badges of fraud or specific harm to other creditors, but rather by proving the existence of a Ponzi or Ponzi-like scheme." *Id.* at 4; *see also id.* ("What is relevant to this dispute is the Trustee's theory of the case, which rests on the Ponzi-scheme presumption."). The Bankruptcy Court continued:

> The Trustee will either succeed on its [Ponzi or Ponzi-like scheme] theory or not, and unless the Complaint is amended to assert a different theory, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors.

*Id.*; *see also* Dkt. 207 at 4 ("Since the Trustee's theory of the case rests on a presumption of fraudulent intent, Ford Credit need only address whether the presumption legally applies to the case at hand, which does not require an intricate account of the Debtors' transactions with other creditors.").

The Trustee never amended his Complaint. Instead, over the next several months, the parties completed discovery; discovery closed; and the Trustee never objected to the court's characterization of his claim.

In March 2022, Ford Credit moved for summary judgment and sought dismissal of the Trustee's fraudulent-transfer claim.  Ford Credit argued that no presumption of fraudulent intent could attach because Reagor-Dykes was not running a Ponzi scheme.  Dkt. 258 at 1-2.  The Trustee then claimed—for the first time in this litigation—that he was also relying on a badges-of-fraud theory and a direct-evidence theory of fraudulent intent.  Dkt. 288 at 24-28.  Not so, Ford Credit explained in reply:  these novel theories were not at issue, and the Trustee could not change theories on the eve of trial.  Dkt. 290 at 1, 4, 12-13.

The court granted Ford Credit's motion for summary judgment as to the Ponzi-scheme presumption theory but agreed to allow the Trustee to pursue badges-of-fraud and direct-evidence theories instead.  Dkts. 321, 322.[4]  Despite agreeing with Ford Credit "that Trustee cannot rely on the Ponzi-Scheme Presumption to relieve himself of the burden to prove fraudulent intent" and dismissing that theory, the court did not dismiss the fraudulent-transfer claim entirely.  It permitted the Trustee to continue to pursue this claim under the new badges-of-fraud and direct-evidence theories.  The court did not address its prior discovery orders.  *See id.*

After Ford Credit filed an emergency motion, arguing that the Trustee could not avoid summary judgment based on new theories that it did not plead or disclose in discovery, Dkt. 329, the court allowed Ford Credit to address the Trustee's new theories in a second motion for summary judgment, and suspended all pending trial and pretrial deadlines, Dkt. 330.

Ford Credit argued in its second summary-judgment motion that the case should be dismissed entirely because Ford Credit had lacked notice of the Trustee's new theories of liability.  It pointed out that the Trustee had successfully resisted discovery on these theories by representing

---

[4] In the parties' proposed Joint Pretrial Order, filed two days before the Bankruptcy Court issued its first summary judgment order, the Trustee's submissions refer only to the Ponzi-like-presumption theory and make no mention of "badges of fraud."  Dkt. 316 at 1-7, 18-19, 26-27.  Ford Credit mentioned "badges of fraud" to specify this theory was not at issue in the case.  *Id.* at 12.

to Ford Credit and the Bankruptcy Court that he was relying solely on the Ponzi-scheme presumption and had not amended his complaint after the Bankruptcy Court told the parties that the Trustee was required to do so if he desired to pursue *any other theory* of fraudulent intent. Under these circumstances, Ford Credit explained, no badges-of-fraud or direct-evidence theory was properly in the case.  Dkt. 336 at 41-48.[5]  In addition, the denial of both discovery and the opportunity to develop defenses against these new theories meant that Ford Credit would suffer great prejudice if forced to proceed to trial on these belatedly-asserted theories.  *See id.*

The Bankruptcy Court recognized that the Trustee "pleaded the 'badges of fraud/direct-evidence theory for the first time in his response to [Ford Credit's] summary judgment motion." Dkt. 355 at 2.  But the court held it was permissible and non-prejudicial for the Trustee to inject what the court called "a previously un-relied-upon legal theory to support his fraudulent transfer claim in response to a summary judgment motion."  *Id.* at 19.  Even though "the Trustee never specifically mentioned the 'badges of fraud' in his complaint," *id.* at 18, and even though the Trustee convinced the court to deny Ford Credit's motion to compel on the theory that the "Trustee was relying exclusively on the Ponzi-scheme presumption," *id.* at 17, the court allowed the Trustee's constructive amendment.

It did so because it found it sufficient that Ford Credit had notice that the Trustee was pursuing a fraudulent-transfer claim, regardless of the theory of liability he was pursuing.  The court reasoned that any prejudice to Ford Credit was "cured through the abatement of trial and the filing of its [summary-judgment] motion."  *Id.* at 21.  Crucially, it did not matter to the court that discovery had closed and the case was on the eve of trial.

---

[5] Ford Credit's second summary-judgment motion also sought dismissal on the merits of the badges-of-fraud and direct-evidence theories so as to preserve these arguments in the event these new theories were allowed to proceed.

The Bankruptcy Court set a January 2023 trial date for the fraudulent-transfer claim, as well as a separate preference claim. Dkt. 360. The Trustee in the meantime has moved in the bankruptcy court to abandon and destroy evidence that would be relevant to his new theories of fraudulent transfer. No. 18-50214-rlj-11, Dkt. 2679; *Id.*, Dkt. 2687.[6]

Fifth Circuit precedent requires plaintiffs to plead all claims and distinct legal theories. Failure to do so cannot be cured by pleading such theories in response to defendant's summary-judgment motion. Allowing a plaintiff to so belatedly plead a distinct legal theory—one which requires new evidence and analysis—is contrary to notice pleading requirements. The Trustee made strategic choices; he should not get a do-over—especially one that would come at tremendous time and cost to Ford Credit and the court.

## QUESTION PRESENTED

The Fifth Circuit and other court of appeals have explained that a defendant must have fair notice of all claims and theories of liability so defendants may take discovery on all relevant factual issues to thus adequately defend themselves at summary judgment and trial. The question presented is:

Whether the Bankruptcy Court permissibly allowed the Trustee to inject two new *legal theories* into the case after discovery had closed, even though they require distinct evidence and analysis, because the Trustee supposedly gave fair notice of the *claim* he was pursuing.

---

[6] Because this trial date requires Ford Credit to begin trial preparations in earnest immediately, Ford Credit intends to move the Bankruptcy Court to strike the scheduling order and stay the trial date pending the outcome of this request for interlocutory appeal. Alternatively, Ford Credit intends to request the Bankruptcy Court reopen discovery as to the new theories (on which discovery was previously denied), which will help preserve Ford Credit's rights and the record in the event this motion for interlocutory appeal is denied. For the reasons detailed herein, Ford Credit is properly entitled to dismissal of the fraudulent-transfer claim altogether.

**RELIEF SOUGHT**

Ford Credit seeks leave to take an interlocutory appeal of the Bankruptcy Court's order

denying its second summary-judgment motion.  *See* 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8001,

8002, 8003, and 8004.

**ARGUMENT**

**I.    THE BENEFITS AND PURPOSES OF INTERLOCUTORY REVIEW WOULD BE
ACHIEVED HERE BECAUSE REVERSAL OF THE COURT'S ORDER WILL
OBVIATE THE NEED FOR TRIAL ON THE TRUSTEE'S $315 MILLION
FRAUDULENT-TRANSFER CLAIM.**

District courts have discretion to hear appeals from interlocutory bankruptcy court orders.

*See* 28 U.S.C. § 158(a)(3); *In re O'Connor*, 258 F.3d 392, 399-400 (5th Cir. 2001).  In determining

whether to grant a motion for leave to appeal an interlocutory order under 28 U.S.C. § 158(a)(3),

courts regularly consider the three-part test from 28 U.S.C. § 1292(b).  *See Matter of Ichinose*, 946

F.2d 1169, 1177 (5th Cir. 1991); *Kelley v. Cypress Fin. Trading Co., L.P.*, 518 B.R. 373, 377 (N.D.

Tex. 2014), *aff'd sub nom. In re Cypress Fin. Trading Co., L.P.*, 620 F. App'x 287 (5th Cir. 2015).

Under that standard, the order (1) must involve a controlling issue of law, (2) as to which there is

substantial ground for difference of opinion, and (3) that an immediate appeal therefrom may

materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. § 1292(b).  Each of

these factors is met here.  Importantly, the benefits of interlocutory appeal would be achieved here:

to "avoid injustice by quickly correcting a trial court's error" or directing the course of litigation

thereby "reduc[ing] the burdens of future proceedings."  *Johnson v. Jones*, 515 U.S. 304, 309–310

(1995).

The controlling issue of law here is whether a plaintiff can inject new theories of liability

in response to a motion for summary judgment and after the close of discovery, even where those

theories comprise distinct factual allegations, require fact-specific defenses, and involve a different

legal analysis.  The Bankruptcy Court determined that Ford Credit was entitled to notice only of

the claim against it—i.e., that the Trustee was alleging a fraudulent-transfer claim.  It determined,

however, that Ford Credit was not entitled to notice of the Trustee's *theory* underlying that claim.

In this case, that meant the Trustee was permitted to rely on the Ponzi-scheme presumption for

purposes of making disclosures to Ford Credit and resisting discovery relevant to a badges-of-

fraud or direct-evidence theory, but then invoke those disclaimed theories to defeat summary

judgment.  Resolution of that issue by this court in accordance with Supreme Court and Fifth

Circuit precedent would materially advance the litigation because it would leave the Trustee with

no remaining theory of liability on his $315-million fraudulent-transfer claim—that is, it would

prevent the Trustee from being able to pursue what the Bankruptcy Court itself called "previously

un-relied-upon" legal theories.  And because the Bankruptcy Court granted summary judgment in

favor of Ford Credit on the Trustee's sole previously-relied-upon theory of liability, the Trustee's

claim would be dismissed.

### A. Interlocutory Appeal Would Involve a Controlling Issue of Law that Would Materially Advance the Ultimate Termination of this Litigation.

"The institutional efficiency of the federal court system is among the chief concerns

motivating Section 1292(b)."  *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex.

2006).  Section 1292(b) is designed to minimize burdens "by accelerating or . . . simplifying trial

court proceedings."  16 Charles A. Wright et al., *Federal Practice and Procedure* § 3930, Westlaw

(3d ed. database updated Apr. 2022).  A controlling issue of law therefore generally hinges upon

its potential to have some impact on the course of the litigation.  *Ryan*, 444 F. Supp. 2d at 723.

Indeed, whether a "controlling question of law" exists is "closely tied" to the § 1292(b)

requirement that the appeal sought will "materially advance the ultimate termination of the

litigation."  *TDH Partners LLP v. Ryland Grp., Inc.*, Civ. No. 3:04-CV-0073, 2006 WL 8437051,

*3 (N.D. Tex. Aug. 15, 2006) (addressing the two factors together). "In sum, a *controlling* question of law—although not consistently defined—at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants." *Ryan*, 444 F. Supp. 2d at 723 (citing 16 Wright & Miller § 3930 at 432 & n.25).

Interlocutory review here would involve a controlling issue of law because reversal of the order would result in dismissal of the action, thus obviating the need for—and expense and burden of—trial on improperly pleaded theories. *See infra* 18-20. The controlling question here is whether a plaintiff can pursue a new legal theory at summary judgment—one which requires new evidence and analysis and which the plaintiff previously disclaimed to avoid providing discovery relevant to that legal theory—because the plaintiff supposedly gave fair notice of all *claims* it was pursuing, even if not all distinct legal theories. The Bankruptcy Court allowed the Trustee to inject what the Court called "a previously un-relied-upon legal theory" that was "pleaded . . . for the first time in [Trustee's] response to [Ford Credit's] summary judgment motion." Dkt. 355 at 2, 19. The Court determined (1) such a delayed theory did not constitute constructive amendment because Ford Credit had notice of the general fraudulent-transfer claim, and (2) did not prejudice Ford Credit because Ford Credit received a trial continuance and a second summary-judgment motion.

If this Court on interlocutory review holds the Trustee to the sole theory he pleaded in his complaint and relied on during discovery, then the Trustee's fraudulent-transfer claim would require dismissal because the Bankruptcy Court already dismissed the sole, properly-pleaded theory. Dkt. 321 at 16. The Trustee would be left with no theory of liability at all, and there would be no need for the multi-week trial that this claim will require. In sum, the issue here is one of

law, is controlling, and resolution of it would materially advance the claim right to its termination,

drastically diminishing the scope of this litigation.

### B.  There Is Substantial Ground For Difference Of Opinion.

When a court rules in a manner which appears contrary to the rulings of all courts of appeals

to have reached the issue, there plainly exists a "substantial ground for difference of opinion."

*Ryan*, 444 F. Supp. 2d at 723–724; *see also* 4 Am. Jur. 2d Appellate Review § 128 (2005).  Here,

the Bankruptcy Court allowed the Trustee to raise a "new legal theory at summary judgment"

because the "previously un-relied-upon legal theory" "support[ed]" the already pleaded

fraudulent-transfer claim.  Dkt. 355 at 18-19.  This belies black-letter law and fundamental

principles of fair notice and due process, as set forth by the Supreme Court and fleshed out by

courts of appeals around the country, including the Fifth Circuit.

> 1.  *The Fifth Circuit, and other courts of appeals, interpret Supreme Court precedent to require notice not just of the claims asserted, but also of distinct theories that support the claim.*

The Supreme Court has said that a properly pleaded complaint must give "fair notice of

what the . . . claim is and the grounds upon which it rests."  *Iqbal*, 556 U.S. at 698–699 (citation

omitted).  The Fifth Circuit, in turn, has held that because fair notice of the "claim" *and* "grounds

upon which it rests" is required, *DeFranceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x

200, 204 (5th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 698-699), courts can deny a plaintiff's attempt

to add "claims *or theories of liability* not present in the complaint and raised first in a motion

opposing summary judgment."  *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir.

2017) (emphasis added) (quoting *DeFranceschi*, 477 F. App'x at 204); *see McLin v. Chiles*, No.

3:14CV636-DPJ-FKB, 2016 WL 208322, at *2 (S.D. Miss. Jan. 15, 2016) ("This rule encompasses

new factual theories supporting previously pleaded legal theories.").  The "grounds" on which a

plaintiff's claim rests is the legal and factual theory of liability on which it rests, each of which must be stated with particularity sufficient to give notice and "guide[] the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000). Notice of the claim alone, without regard to the legal theory on which that claim relies, is not sufficient to guide discovery.

A plaintiff cannot add legal theories where the new theory would prejudice the defendant's ability to defend itself. *Id.* at 1293. A defendant suffers prejudice when a plaintiff switches from one theory to another: if, for example, the new theory alters "fundamental factual allegations," *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018); requires defendants to develop "entirely different defenses," *Coleman*, 232 F.3d at 1292; or presents legal issues not previously raised or requiring analysis of different law, *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 629 (5th Cir. 1993). This is especially true when plaintiff adds a new theory in response to a summary-judgment motion after the close of discovery, because it serves as a delayed, constructive amendment to the complaint; "[a] party should not, without adequate grounds, be permitted to avoid summary judgment by . . . amending its complaint." *Overseas Inns S.C. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990); *see also Calvi v. Knox Cnty.*, 470 F.3d 422, 431 (1st Cir. 2006) (Plaintiffs may not "raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment."). And this all makes sense: allowing plaintiffs to allege new theories after the close of discovery prejudices defendants "who would have focused their discovery efforts on the theories actually pled." *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016) (citing *Martinez v. Petrenko*, 792 F.3d 173, 179–180 (1st Cir. 2015)).

Consider first *DeFranceschi*, where plaintiffs pleaded breach of contract and wrongful foreclosure claims.  477 F. App'x at 204.  Although those general claims were pleaded in the complaint, plaintiffs specified new non-disclosure and improper-charge theories for the first time in the response to the summary-judgment motion.  *Id.*  These theories were "nowhere to be found in the complaint" and not "described with any particularity in the complaint."  *Id.*  As a result, although defendants had notice of the general breach-of-contract claims, they could not be required to defend against these new theories at summary judgment.  *Id.*  The Fifth Circuit therefore affirmed the district court's dismissal of plaintiffs' new theories.  *Id.*

Next consider *Coleman*, where the plaintiff alleged discriminatory treatment but had pleaded only a disparate-treatment theory of discrimination, not a disparate *impact* theory.  232 F.3d at 1293.  Plaintiff sought to add a disparate-*impact* theory at summary judgment, and the Ninth Circuit affirmed the district court's denial because the defendant would face different burdens and defenses under this new theory of liability for the same claim.  *Id.*  "A disparate impact theory, lacking the requirement that the plaintiff prove intent and focusing on statistical analyses, requires that the defendant develop *entirely different defenses*, including the job relatedness of the challenged business practice or its business necessity.  Neither of these are necessary to defend against a disparate treatment theory."  *Id.* at 1292 (emphasis added).  "The lack of notice" on a legal standard "central" to the case made it near impossible for the defendant to defend itself.  *Id.*  Not even the *Coleman* district court had any idea that "after more than two years of discovery . . . [plaintiffs] intended to pursue this legal theory."  *Id.*  Without notice to defendant that plaintiffs may proceed on that theory, the theory could not be introduced at the summary-judgment stage.  *Id.*  It did not matter that defendant knew the plaintiff was pursuing a discrimination claim.

*Eustice v. JPMorgan Chase & Co.*, No. CV H-19-1489, 2020 WL 5541084, at *6 (S.D. Tex. Aug. 10, 2020) held similarly.  Plaintiff there had pursued a disparate-treatment theory throughout the litigation, including at a discovery hearing.  *Id.*  Then, after the defendant moved for summary judgment, plaintiff sought to pursue a disparate-*impact* theory of discrimination.  The district court refused plaintiff's request for leave to add this new theory, explaining that he "did not even raise his disparate-impact theory at the most recent discovery hearing" nor in his various amendments.  *Id.*  The court "carefully scrutinize[d]" plaintiff's attempt to pursue a new theory of the already-noticed claim because the effort came after defendant sought summary judgment and required different evidence and comparators; the court thus rejected the attempt, just as the Ninth Circuit did in *Coleman.*  *Id.*

Finally, consider *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013).  The plaintiff's complaint rested her disability-discrimination claim on the theory that defendant "regarded" her as disabled.  *Id.*  In her opposition to summary judgment, plaintiff "asserted for the first time" a new theory that defendant "had a 'record of such impairment.'"  *Id.* (citation omitted).  The district court and the Fourth Circuit held that this was "an impermissible attempt to constructively amend the complaint" because, although pursuing the same claim of discrimination, plaintiff's new theory "plainly requires different discoverable inquiries."  *Id.* at 946-947.  Allowing a late shift in theory would "plac[e] a clear burden" on defendant's ability to defend itself because, after all, the complaint is supposed to "guide[] the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."  *Id.* at 946 (citation omitted).  *See also Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing

entirely different legal theories in an amended complaint."); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 642 (3d Cir. 1993) (similar).

Precedent around the country therefore makes clear that simply having notice of the plaintiff's general claim is not notice enough; the defendant must have notice sufficient to adequately prepare for and contest the theory. *Cf. Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019) (holding, in the context of whether a plaintiff would be prejudiced by defendant's assertion of an affirmative defense, that "the prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense") (citation and alteration omitted). Where a plaintiff asserts a never-relied-upon theory for the first time at summary judgment after discovery has closed, courts evaluate that theory alongside the theory actually pleaded and determine whether pursuit of the new theory alters fundamental factual allegations, requires defendants to develop entirely different defenses, or presents legal issues requiring analysis of different law. *See supra* 14. Where the new theory implicates distinct burdens or defenses, the defendant must have received fair notice of *that theory*—and not just the claim. Otherwise, the defendant's ability to sufficiently defend itself and marshal its case is severely prejudiced.

### 2. *The Bankrutpcy Court's decision squarely conflicts with this precedent.*

The Bankruptcy Court's decision cannot be reconciled with the authorities above and severely prejudices Ford Credit because it would force Ford Credit to go to trial on theories that are legally and factually different from the one that the Trustee actually pleaded and disclosed. There are various ways to establish the fraudulent-intent prong of a fraudulent-transfer claim. A plaintiff can do so through direct evidence or through circumstantial evidence. *See In re Wiggains*, 848 F.3d 655, 661 (5th Cir. 2017); *Soza v. Hill*, 542 F.3d 1060, 1066-67 (5th Cir. 2008). Under

the circumstantial-evidence umbrella, a plaintiff can pursue a "badges of fraud" theory, which requires looking at several factors on a transfer-by-transfer basis to establish that debtor made each transfer with a fraudulent intent. *Soza*, 542 F.3d at 1066-67. Alternatively, the plaintiff can avoid the transfer-by-transfer analysis entirely and receive a presumption of fraudulent intent for all transfers by establishing that the debtor engaged in a Ponzi scheme. *See Sec. & Exch. Comm'n v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007).

From the beginning, the Trustee pursued only a Ponzi-scheme-presumption theory. Defending against that theory required Ford Credit only to prove that the presumption did not apply (which it successfully did on summary judgment). But the Bankruptcy Court allowed the Trustee—through his opposition to summary judgment—to inject two new theories to support his fraudulent-transfer claim: a direct-evidence theory and a badges-of-fraud theory. Dkt. 321 at 17-8; Dkt. 355 16-21. In effect, the court allowed a constructive amendment of the complaint while denying Ford Credit discovery on the newly-pleaded theories. Dkt. 355 at 2, 18. Even though the court recognized that "the Trustee never specifically mentioned the 'badges of fraud' in his complaint," and even though it admitted that the Trustee had previously convinced the court that he "was relying exclusively on the Ponzi-scheme presumption" and no other theory, the court believed that Ford Credit nonetheless knew the Trustee was pursuing a fraudulent-transfer claim, and that notice was enough. *Id.* at 17-18. But had the court applied principles of fair notice, in accordance with Fifth Circuit precedent, it would have rejected the Trustee's belated efforts to constructively amend the complaint, and summary judgment would have resulted in the dismissal of the fraudulent-transfer claim in its entirety.

The actually-pleaded claim and theory here, and the accompanying procedural history, depict exactly why principles of fair notice are required. Ford Credit sought to compel discovery

relating to Reagor-Dykes' transactions and history with other creditors, which may have provided evidence that would have helped it evaluate intent transfer by transfer. *See generally* Dkts. 173, 182. Ford Credit also sought answers to certain interrogatories that probed Reagor-Dykes' commercial relationship with creditors other than Ford Credit—again, key evidence to any theory that relies on a transfer-by-transfer analysis because it would allow Ford Credit to show that the Trustee cannot link fraudulent intent to each transfer. *See* Dkts. 173-1, 173-2.

But Ford Credit's discovery requests were denied for one express and undisputed reason: the Trustee disclaimed reliance on any theory other than the Ponzi-scheme presumption to prove fraudulent intent. The Trustee asserted he was "not relying on a creditor-by-creditor analysis to prove our case. It is not part of our case." Dkt. 196 at 73-74. He therefore opposed Ford Credit's discovery requests because "the Ponzi scheme presumption of fraudulent intent obviates the need for discovery regarding any particular creditor." Dkt. 186 at ¶¶ 7, 16. The Bankruptcy Court acknowledged that in a "typical" fraudulent-transfer case, the discovery sought by Ford Credit would have been relevant. Dkt. 202 at 3. Taking the Trustee at his word, however, the Bankruptcy Court reasoned that the Trustee "intends to prove fraudulent intent not by the more typical means of proving the badges of fraud or specific harm to other creditors, but rather by proving the existence of a Ponzi or Ponzi-like scheme." Dkt. 202 at 4.[7] The court therefore concluded that

---

[7] The Bankruptcy Court stated that its "orders on the discovery disputes served a singular purpose—to resolve the discovery disputes." Dkt. 355 at 21. Rejecting application of the law-of-the-case doctrine here, the Bankruptcy Court reasoned that its statements in the discovery orders "only have bearing on the motions they decided; they do not bind the Trustee to one legal theory." *Id.* at 21 & n.13. It is hard to read the statement—that the "Trustee will either succeed on its [Ponzi-presumption] theory or not, and unless the Complaint is amended to assert a different theory, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors," Dkt. 202 at 5-6—as limited to the discovery orders. What's more, it would be severely prejudicial to simultaneously recognize that Ford Credit's discovery request would be relevant to a transfer-by-transfer theory, deny the request because a transfer-by-transfer theory was not part of the case, and then inject a transfer-by-transfer theory into the case after discovery closed and summary-judgment motions were filed.

In any event, if the Bankruptcy Court's change in tack amounts to reconsideration of its discovery orders, then the court would need to unwind its discovery ruling; it is not enough to reconsider a decision as an academic matter without understanding the practical effect of that decision. And here, the practical effect of the court's

the "Trustee will either succeed on its [Ponzi-presumption] theory or not, and unless the Complaint is amended to assert a different theory, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors." *Id.* at 5-6. Ford Credit's discovery requests were denied, and the case proceeded without the Trustee moving to amend. In accordance with the Trustee's position and the Court's orders, Ford Credit moved for summary judgment on the ground that the Ponzi-presumption did not apply to the case at hand. Dkt. 258. The Bankruptcy Court agreed. Dkt. 321 at 7. That should have ended the Trustee's fraudulent-transfer claim, because it resolved the Trustee's sole theory of liability supporting that claim.

It did not. The Bankruptcy Court instead allowed the Trustee to use his opposition to summary judgment to, in effect, constructively amend the complaint at this late date by injecting two new theories to support his fraudulent-transfer claim: a direct-evidence theory and a badges-of-fraud theory. *Id.* at 17-18; Dkt. 355 at 16-21. The Bankruptcy Court did not consider whether Ford Credit had notice of the distinct legal theories now alleged, theories that required new evidence and analysis. Ford Credit lacked fair notice of the Trustee's "previously un-relied-upon legal theory." Dkt. 355 at 19. The badges-of-fraud and direct-evidence theories require analysis of different facts and law; they implicate distinct burdens and defenses. *See supra* 2, 17-18. But the Bankruptcy Court stopped short of this important inquiry required by Supreme Court and Fifth Circuit precedent.

The court instead reasoned that Ford Credit knew the Trustee pursued a fraudulent-transfer claim, and notice of that general claim was notice enough. Dkt. 355 at 18-19.[8] No matter that the

_____

discovery rulings was to notify all parties involved that the only theory of liability at play was a Ponzi-presumption theory.

[8] To allow the Trustee to circumvent both his prior representations and earlier court orders, the Bankruptcy Court primarily relied on an out-of-circuit district court opinion stating that "plaintiffs are not required to plead specific legal

Trustee had disclaimed the very theory he sought to later inject.  *See generally Thomas v. City of Chicago*, No. 20 C 4323, 2021 WL 1923406, at *2 (N.D. Ill. May 13, 2021) (where the court asked plaintiff whether she asserted any federal claim other than access-to-courts claim, and she confirmed she did not, she "has forfeited, or perhaps even waived" any other theories by disclaiming them); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 623 (11th Cir. 1983) ("Despite this notice and subsequent admonitions from the court, Ploof did not institute a negligence counterclaim during that interval" and thus could not amend the complaint to add that claim).  No matter that the Bankruptcy Court denied Ford Credit discovery on the very inquiries that would be relevant to the late-breaking theories, because the court had taken the Trustee at his word that such theories were "not part of [its] case."  Dkt. 196 at 73-74.  And no matter that the case proceeded under the understanding that if the Trustee wanted to pursue any theory other than a Ponzi theory, he would need to amend the complaint to do so.  *See generally NAACP v. City of Kyle*, 626 F.3d 233, 236 & n.2 (5th Cir. 2010) (holding plaintiff abandoned a theory by failing to dispute opposing counsel's characterization at argument that such theory was waived and the case thus "rises and falls" on another theory); *West v. City of Holly Springs*, No. 3:16CV79-MPM-RP, 2019 WL 1984321, at *3 (N.D. Miss. May 3, 2019) ("[L]itigation is not a game of hide and seek.  Thus, even if there is an argument that certain language in the Third Amended Complaint is sufficiently broad to encompass a 'prompt payment' claim, that does not mean that plaintiffs were justified in allowing defendants to litigate this case under a reasonable

---

theories in their complaints." *Grede v. UBS Sec., LLC*, 303 F. Supp. 3d 638, 657 (N.D. Ill. 2018).  No part of *Grede*, however, stands for the extraordinary proposition that a party is allowed to inject distinct legal theories that a court has already found—and that the plaintiff has already conceded—were not part of the case.  The Trustee did not simply fail to plead a specific legal theory; he belatedly pleaded distinct legal theories—which require new evidence and analysis—in an opposition to summary judgment, after having disclaimed those theories to avoid discovery obligations.

assumption that they maintained one theory of the case, only to unveil a different theory in response to a summary judgment motion.").

The Bankruptcy Court's decision, forcing Ford Credit to defend itself without fair notice of the relevant allegations, or even access to discovery, is contrary to principles of notice pleading accepted by the Supreme Court and courts across the country.  It thus requires this court's attention on interlocutory review to avoid the unnecessary expense of a trial on improper, un-pleaded, "previously un-relied-upon" legal theories.

## CONCLUSION

For the foregoing reasons, the motion should be granted.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Kevin M. Sadler*
    Kevin M. Sadler, Esq.
    1001 Page Mill Road
    Building One, Suite 200
    Palo Alto, CA 943304
    (650) 739-7518 – Telephone
    (650) 739-7618 – Facsimile
    kevin.sadler@bakerbotts.com

    Michael S. Goldberg, Esq.
    910 Louisiana Street
    Houston, TX 77002-4995
    (713) 229-1401 – Telephone
    (713) 229-2801 – Facsimile
    michael.goldberg@bakerbotts.com


    PHILLIPS LYTLE LLP

    Craig A. Leslie, Esq.
    Jacob S. Sonner, Esq.
    Admitted Pro Hac Vice
    One Canalside
    125 Main Street
    Buffalo, NY 14203
    (716) 847-8400 – Telephone
    (716) 852-6100 – Facsimile
    cleslie@phillipslytle.com
    jsonner@phillipslytle.com

Dated:  October 19, 2022         *Counsel for Ford Motor Credit Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System ("ECF").  Parties may access this filing through ECF.

*/s/ Kevin M. Sadler*
Kevin M. Sadler
