**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

IN RE:

Reagor-Dykes Motors, LP,
Reagor-Dykes Imports, LP,                              Case No. 18-50214-rlj-11
Reagor-Dykes Amarillo, LP,                             Jointly Administered
Reagor-Dykes Auto Company, LP,
Reagor-Dykes Plainview, LP, and
Reagor-Dykes Floydada, LP,
Reagor Auto Mall, Ltd.,
Reagor-Dykes Snyder, L.P.,
Reagor-Dykes Auto Mall I LLC,
Reagor-Dykes II LLC,
Reagor-Dykes III LLC,

     Debtors,

Dennis Faulkner, Creditors' Trustee,

     *Plaintiff*,                                      Adversary No. 20-05005-rlj

     vs.

Ford Motor Credit Company LLC,

     *Defendant*.

**BRIEF IN SUPPORT OF DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S
MOTION FOR STAY AND ORDER STRIKING SCHEDULING ORDER DEADLINES
OR, ALTERNATIVELY, AN ORDER REOPENING DISCOVERY AND STRIKING
SCHEDULING ORDER DEADLINES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................2

      A.     Ford Credit is seeking leave for an interlocutory appeal addressing the Court's order denying Ford Credit's second summary judgment motion.....................................2

      B.     Ford Credit's trial counsel are unavailable to prepare for and attend trial on the currently scheduled dates.......................................................................................3

      C.     Based on the Trustee's objections, the Court denied Ford Credit discovery relevant to the Debtors' alleged fraudulent intent. .................................................................4

      D.     The Trustee's badges of fraud and direct evidence theories were added to the case on summary judgment after discovery closed. ........................................................7

ARGUMENT ..............................................................................................................8

      I.     This case should be stayed pending the outcome of Ford Credit's appeal. ..8

      II.     The scheduling order deadlines should be stricken because Ford Credit's chosen trial counsel have unavoidable conflicts. .......................................11

            A.     Ford Credit cannot comply with the current schedule due to prior conflicts.........................................................................................12

            B.     Forcing Ford Credit to trial without the benefit of its chosen trial counsel is highly prejudicial. ........................................................13

            C.     Continuing the trial setting would allow Ford Credit the benefit of its chosen lead trial counsel without prejudicing the Trustee. .......13

      III.     Alternatively, the Court should enter an order reopening discovery and striking the scheduling order to permit Ford Credit an opportunity to defend against the Trustee's post-discovery theories. ...........................................14

            A.     Ford Credit cannot comply with the current scheduling order, particularly the trial deadlines, because it was not afforded an opportunity to conduct discovery on the Trustee's post-discovery theories.........................................................................................15

            B.     Striking the scheduling order and reopening discovery is critically important and, absent a stay, Ford Credit will suffer extraordinary prejudice if it is not afforded such relief. .......................................17

C.      An order reopening discovery and amending the current scheduling
order minimizes (without completely mitigating) the prejudice to
Ford Credit. ...................................................................................19

CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

Page

**Cases**

*Arnold v. Garlock, Inc.*,
    278 F.3d 426 (5th Cir.2001) ........................................................9

*BCC Merch. Solutions, Inc. v. JetPay, LLC*,
    No. 3:12-CV-5185-B-BK, 2015 WL 13118141 (N.D. Tex. Aug. 17, 2015)..............12, 14, 16

*Chisesi v. Auto Club Fam. Ins. Co.*,
    374 F. App'x 475 (5th Cir. 2010) ............................................20

*CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*,
    No. 4:21-CV-182-SDJ, 2022 WL 3718491 (E.D. Tex. Aug. 29, 2022) ...............11, 12, 14, 16

*Cox v. Waste Mgmt. of Tex., Inc.*,
    No. H–10–1626, 2011 WL 3875353 (S.D. Tex. Aug. 31, 2011)................................14, 15, 16

*Duggins v. Steak 'N Shake, Inc.*,
    195 F.3d 828 (6th Cir.1999) .....................................................20

*In re Friendship Dairies*,
    No. 12–20405–RLJ–11, 2014 WL 527232 (Bankr. N.D. Tex. 2014) ................................9, 11

*In re Gleasman*,
    11 B.R. 595 (Bankr. W.D. Tex. 1990)..............................................8, 10

*Grant v. City of Houston*,
    625 F. App'x 670 (5th Cir. 2015) ................................................12

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    854 F.3d 797 (5th Cir. 2017) ....................................................11

*Jimenez v. Tuna Vessel Granada*,
    652 F.2d 415 (5th Cir. 1981) ....................................................17

*Kaina v. Cnty. of Maui*,
    No. CIV.04-00608 DAE-LEK, 2007 WL 1153829, at *6
    (D. Haw. Apr. 18, 2007) .........................................................13

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin
    v. Evers*, No. 18-CV-992-JDP, 2020 WL 7055883 (W.D. Wis. Feb. 7, 2020).......................16

*PHI, Inc. v. Off. & Pro. Emps. Int'l Union*,
    No. CIV. 06-1469, 2009 WL 1658040 (W.D. La. June 11, 2009) ...........................20

*Prudhomme v. Tenneco Oil Co.*,
  955 F.2d 390 (5th Cir. 1992) ...........................................................20

*Rotstain et al. v. Trustmark et al.*
  Case No. 4:22-cv-00800 ...............................................................12

*Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*,
  314 F.3d 278 (7th Cir. 2002) .........................................................20

*Smith v. EMC Corp.*,
  393 F.3d 590 (5th Cir. 2004) .........................................................20

*In re: Texas Equip. Co., Inc.*,
  283 B.R. 222 (Bankr. N.D. Tex. 2002).........................................9, 10

*Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*,
  117 F.3d 180 (5th Cir.1997) ...........................................................17

*Trimm v. Allstate Ins. Co.*,
  No. H-03-5338, 2007 WL 9736145 (S.D. Tex. Jan. 16, 2007)....................14, 15, 16

*West v. City of Holly Springs*,
  No. 3:16-cv-79-MPM-RP, 2019 WL 1984321 (N.D. Miss. May 3, 2019) ...........................17

*Zilberman v. Caroffer, LLC*,
  No. 4:15-CV-589, 2016 WL 3060081 (E.D. Tex. May 31, 2016) ..............14, 15, 16

**Other Authorities**

Fed. R. Bankr. P. 8005........................................................................8, 9

Fed. R. Bankr. P. 8007..........................................................1, 3, 8, 9, 10, 11

Fed. R. Bankr. P. 8007(a)(1)(A) ...........................................................8

Fed. R. Bankr. P. 8007(e)(1)...............................................................8

Fed. R. Civ. P. 26(b)(1).................................................................18, 20

Fed. R. Civ. P. 30(b)(6).....................................................................4

Fed. R. Civ. Pro. 16(b)(4) ................................................................11

## <u>PRELIMINARY STATEMENT</u>

Defendant Ford Motor Credit Company LLC ("Ford Credit") files this brief in support of its motion for a stay and order striking the deadlines in the Court's current scheduling order or, in the alternative, an order reopening discovery and striking the current scheduling order deadlines to accommodate discovery concerning the Trustee's badges of fraud and direct evidence theories of the Debtors' alleged fraudulent intent. Ford Credit is entitled to a stay and an order striking all deadlines in the current scheduling order for two reasons.

*First*, a stay pursuant to Federal Rule of Bankruptcy Procedure 8007 is appropriate because Ford Credit is pursuing an interlocutory appeal from the Court's recent order denying its second summary judgment motion. Ford Credit's appeal raises a narrow dispositive legal issue, namely whether the Trustee should be allowed to proceed to trial on theories of his fraudulent transfer claim revealed for the first time post-discovery and in opposition to summary judgment. A stay pending the outcome of the appeal mitigates any prejudice to Ford Credit and preserves its rights to fair notice and due process. The Trustee is not prejudiced by a stay. Indeed, he stands to benefit from the certainty of the resolution of Ford Credit's appeal and a final determination of whether his fraudulent transfer claim can proceed to trial.

*Second*, an order striking the Court's current scheduling order is also necessary because Ford Credit has unavoidable scheduling conflicts among its lead trial counsel which prohibit them from being available to prepare for and attend trial.

If the Court denies Ford Credit's request for a stay, Ford Credit respectfully requests an order reopening discovery and striking the current scheduling order to provide Ford Credit an opportunity to defend itself against the Trustee's belated theories concerning the fraudulent intent element of his fraudulent transfer claim. To be clear, Ford Credit maintains that it is entitled to full dismissal of the Trustee's fraudulent transfer claim, and it is pursuing that relief via

1

interlocutory appeal.  Ford Credit *alternatively* seeks an order reopening discovery to ensure that Ford Credit is afforded an opportunity to rebut the Trustee's new theories and prepare its defenses if the Trustee's fraudulent transfer claim proceeds to trial.

Absent a stay, there is good cause to reopen discovery because: (1) it is undisputed that Ford Credit was denied discovery which would be relevant to the Trustee's badges of fraud and direct evidence theories; (2) Ford Credit did not have notice of the Trustee's badges of fraud or direct evidence theories while discovery was ongoing and was not afforded an opportunity to conduct discovery on those theories (or fully formulate defenses against them); (3) Ford Credit will suffer extraordinary prejudice if it is forced to trial on theories for which it had no notice, no opportunity to conduct discovery, and no due process; and (4) an order reopening discovery is the only means of minimizing (although not fully mitigating) that prejudice.

## STATEMENT OF FACTS

### A.    Ford Credit is seeking leave for an interlocutory appeal addressing the Court's order denying Ford Credit's second summary judgment motion.

On October 5, 2022, the Court denied Ford Credit's second summary judgment motion, permitting the Trustee to pursue badges of fraud and direct evidence theories of his fraudulent transfer claim.  *See* Dkts. 355, 356.  In its decision, the Court acknowledged that badges of fraud and direct evidence were not part of the case previously, and that the Trustee had "alter[ed] his method of proof at the summary judgment stage" after the close of discovery.  *See* Dkt. 355 at 20. On October 19, 2022, Ford Credit filed a notice of appeal and motion seeking leave to pursue an interlocutory appeal of that order.  *See* Dkts. 362, 363.

Ford Credit's appeal primarily concerns a single, narrow, and controlling issue of law, namely whether a plaintiff can inject new theories of liability after discovery has closed and after a summary judgment motion has been filed, particularly when those new theories are factually and

legally distinct and require different evidence to rebut. *See* Dkt. 363. Specifically, Ford Credit's appeal concerns controlling fair notice and due process precedent from the Supreme Court and Fifth Circuit that prohibits plaintiffs from adding new legal theories in response to a summary judgment motion after the close of discovery. *See id.*

If Ford Credit's motion for leave to seek an interlocutory appeal is granted, the outcome of the appeal may render the alternative discovery-related relief requested in this motion moot. But, as of the date of this filing, Ford Credit's motion for leave to seek an interlocutory appeal remains pending.

**B.      Ford Credit's trial counsel are unavailable to prepare for and attend trial on the currently scheduled dates.**

Baker Botts LLP and Phillips Lytle LLP represent Ford Credit in this adversary proceeding. *See* Declaration of Kevin M. Sadler ("Sadler Dec.") (Exhibit A), ¶ 2; Declaration of Michael S. Goldberg ("Goldberg Dec.") (Exhibit B), ¶ 2; Declaration of Craig A. Leslie, ("Leslie Dec.") (Exhibit C), ¶ 3. Kevin Sadler, Michael Goldberg, and Craig Leslie are lead trial counsel. *See id.* Mr. Sadler has a previously-scheduled trial in February 2023 in a case that has been pending for 14 years. *See* Sadler Dec., ¶¶ 3-5 . That multi-party trial is set to begin February 27, 2023, and may last as long as three months. *See id.* The scheduling order in that case includes a series of pre-trial deadlines through the months of January 2023 and February 2023 that will prohibit Mr. Sadler from participating in the trial in this case. *See id.*

Additionally, Mr. Leslie and Mr. Goldberg will be traveling out of the country for periods in late December 2022 and early January 2023. *See* Leslie Dec., ¶¶ 4-6; Goldberg Dec., ¶¶ 3-5. Their limited availability will prevent them from being involved in critical trial preparations required under the current scheduling order. *See id.* Mr. Goldberg's travels would also force him

to miss the first day of trial (January 17, 2023) under the current scheduling order and two of the

days set aside by the Court in February 2023. *See* Goldberg Dec., ¶¶ 3-5.

**C.     Based on the Trustee's objections, the Court denied Ford Credit discovery relevant to the Debtors' alleged fraudulent intent.**

Before Ford Credit's summary judgment motions, and while discovery was ongoing, the

Trustee objected to interrogatories and requests for production propounded by Ford Credit, as well

as Federal Rule of Civil Procedure 30(b)(6) topics regarding which Ford Credit sought to question

the Trustee's representative.   The Trustee claimed that this evidence, even though relevant in

typical fraudulent transfer cases, was not relevant to his chosen method of proving Debtors'

fraudulent intent because he was relying instead on a Ponzi or Ponzi-like presumption. *See* Dkt.

202 at 5; Dkt. 207 at 3.   On September 29, 2021, Ford Credit sought an order compelling the

Trustee's full and complete answers to certain interrogatories and responses to certain requests for

production concerning evidence that was relevant to the Debtors' alleged fraudulent intent. *See*

Dkts. 172-173.   At approximately the same time, the Trustee separately moved for a protective

order barring Ford Credit from covering certain Rule 30(b)(6) topics at the Trustee's deposition

related to the Debtors' alleged fraudulent intent. *See* Dkts. 163-164.

Based on the Trustee's sole reliance on a Ponzi or Ponzi-like theory, the Court denied Ford

Credit discovery concerning documents and information that would otherwise have been relevant

to the Trustee's fraudulent transfer claim.   The Court recognized that "[u]nder a typical actual

fraudulent transfer action, the type of information sought by Ford Credit here—the identity of the

Debtors' creditors, the amount of the Debtors' indebtedness to their creditors, and payments from

the Debtors to their creditors—would all be relevant to the issue of fraudulent intent central to a

fraudulent transfer claim." Dkt. 202 at 3-4.   It determined, however, that because the Trustee was

relying solely on a Ponzi or Ponzi-like presumption to prove his fraudulent transfer claim, "***unless***

4

*the Complaint is amended to assert a different theory*, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors.  For the purposes Ford Credit has raised—to address the issue of fraudulent intent—the requested discovery is not relevant." *Id.* at 5-6 (emphasis added).  The Court granted the Trustee's motion for protective order, in part, for similar reasons.  *See* Dkt. 207 at 6-8.

The Court's discovery orders denied Ford Credit full and complete answers to the following interrogatories:

> **Interrogatory No. 1**: Describe in detail the factual basis for your allegation in Paragraph 60 of the Original Complaint that "[e]ach of the Transfers [to FMCC] was made with the actual intent of Debtors to hinder, defraud or delay their existing and/or subsequent creditors." Your answer should separately identify each creditor that the Debtors allegedly intended to hinder, defraud or delay in making each Transfer to FMCC.

> **Interrogatory No. 2**: For each creditor identified in response to Interrogatory No. 1, identify what was allegedly owed by each Debtor to the creditor on the date of each Transfer, including the amount owed by each Debtor to the creditor on the date of each Transfer, including the amount owed, any invoice, contract, or other agreement.

> **Interrogatory No. 3**: Identify any individual who was involved in the Debtors' business dealing with each creditor identified in Interrogatory No. 1, or any individual who would have knowledge of the Debtors' business dealing with that creditor, on or after August 1, 2016.

> **Interrogatory No. 4**: For each creditor identified in response to Interrogatory No. 1, identify what amount allegedly owed by each Debtor to the creditor remains unpaid, including the amount owed, any invoice, contract, or other agreement related to that debt, the nature of the goods or services provided by the creditor to the Debtors and forming the basis of the debt, and the dates and amounts of any payments or other exchange of valuable consideration by the Debtors to the creditor.

*See* Dkt. 173, Ex. A.

Ford Credit was also denied an order compelling the Trustee's production of documents responsive to the following requests for production, which directly concern the Debtors' alleged fraudulent intent:

**<u>Request for Production No. 1</u>**: For each creditor that you identify in response to Interrogatory No. 1 in FMCC's First Set of Interrogatories to Plaintiffs, produce the documents, including contracts, communications, invoices, receipts, memoranda, e-mails, and correspondence evidencing that Debtors intended to hinder, defraud, or delay that creditor when they made the challenged Transfers to FMCC.

**<u>Request for Production No. 2</u>**: For each creditor that you identify in response to Interrogatory No. 1, produce the documents comprising or evidencing the debts or amounts owed by the Debtors to each creditor.

**<u>Request for Production No. 3</u>**: For each creditor that you identify in response to Interrogatory No. 1, produce the documents comprising or evidencing the debts or amounts owed by the Debtors that remain unpaid to each creditor.

**<u>Request for Production No. 4</u>**: For each creditor that you identify in responses to Interrogatory No. 1, produce the documents comprising or evidencing payments from the Debtors to each creditor from August 1, 2016 to the present.

**<u>Request for Production No. 5</u>**: Produce the documents that reflect, refer, or relate to the communications the Trustee or his agents have had with anyone employed or previously employed by the Debtors regarding or relating to Debtors' relationship with, and debts, payments, and transfers of other valuable consideration to, each creditors that you allege the Debtors intended to hinder, defraud or delay when the Debtors made the challenged Transfers to FMCC.

**<u>Request for Production No. 6</u>**: For each creditor that you identify in response to Interrogatory No. 1, produce copies of any interviews of or statements by that creditors its agents, or employees.

**<u>Request for Production No. 7</u>**: Produce the documents and communications between the Debtors, you, or your agents, on the one hand, and the FBI and/or DOJ, on the other, relating to each of the creditors that you allege the Debtors intended to hinder, defraud or delay when the Debtors made the challenged Transfers to FMCC.

**<u>Request for Production No. 15</u>**: Produce, from August 1, 2016 to the present, the documents comprising or evidencing the amounts owed by the Debtors to creditors, customers, suppliers, or vendors other than FMCC, including without limitation invoices and billing records.

**<u>Request for Production No. 16</u>**: Produce, from August 1, 2016 to the present, the documents comprising or evidencing amounts paid or valuable consideration provided by the Debtors to creditors, customers, suppliers, or vendors other than FMCC, including without limitation invoices and billing records.

*See* Dkt. 173, Ex. B.

Finally, the Trustee obtained a protective order, and Ford Credit was denied an opportunity to ask 30(b)(6) questions, about the following topics. Each concerns the Debtors' alleged fraudulent intent:

**30(b)(6) Topic 1**: Debtors' course of dealing with the creditors who filed proofs of claim in the RDAG Bankruptcy Proceedings.

**30(b)(6) Topic 2**: Debtors' payments to, and services, goods or anything of value received from, the creditors who filed proofs of claim in the RDAG Bankruptcy Proceedings.

**30(b)(6) Topic 3**: Financial statements submitted by the Debtors to the financial institutions or creditors who filed proofs of claim in the RDAG Bankruptcy Proceedings.

**30(b)(6) Topic 17**: Debtors' floor-plan financing contracts, arrangements and security agreements with entities other than FMCC.

*See* Dkt. 164, Ex. A.

## D.    The Trustee's badges of fraud and direct evidence theories were added to the case on summary judgment after discovery closed.

The Court's discovery rulings concerning, among other things, the intent element of the Trustee's fraudulent transfer claim limited Ford Credit from pursuing further discovery and led Ford Credit to tailor its remaining discovery strategy (including analysis by its expert witnesses and expert disclosures) to address the Trustee's Ponzi or Ponzi-like scheme presumption theory— which the Court advised was the only theory supporting the Debtors' alleged fraudulent intent. After discovery closed, Ford Credit sought summary judgment dismissing the Trustee's fraudulent transfer claim in its entirety because his Ponzi or Ponzi-like presumption theory was legally and factually incapable of establishing the intent element of his claim. *See* Dkts. 257-259.

On June 3, 2022, the Court granted Ford Credit summary judgment dismissing the Trustee's fraudulent transfer claim to the extent that it was premised on a Ponzi or Ponzi-like presumption. *See* Dkt. 321 at 16. However, the Court also found that—despite the Trustee's prior representations, and the Court's prior discovery rulings—the Trustee was now pursuing other

fraudulent transfer theories, including newly-alleged direct evidence and badges of fraud theories. *Id.* at 17. Ford Credit subsequently sought and obtained a trial continuance and leave to file a second summary judgment motion concerning the Trustee's new theories. *See* Dkt. 331. The Court denied Ford Credit's second summary judgment motion. *See* Dkts. 355-356.

If the Trustee had identified his badges of fraud and direct evidence theories while discovery was ongoing, Ford Credit would have further pursued the discovery it was denied, pursued additional discovery, and tailored its discovery strategy (including expert analyses and reports) to test the alleged factual support for the Trustee's belatedly-added theories and to establish Ford Credit's defenses to same. Specifically, Ford Credit would have, among other things: (1) moved for reconsideration of the Court's rulings denying Ford Credit discovery related to the Debtors' alleged fraudulent intent; (2) asked additional questions at the Trustee's 30(b)(6) deposition, RDAG employee Lindsay Williams' deposition, and the Trustee's experts' depositions; and (3) retained experts, or relied on already-retained experts, to address the Trustee's alleged badges of fraud and the other traditionally-recognized badges of fraud in the Fifth Circuit which are not present here and do not support a finding of fraudulent intent with respect to the transfers at issue. It was, in fact, Ford Credit's right to do so.

## **ARGUMENT**

### I.    **This case should be stayed pending the outcome of Ford Credit's appeal.**

An order staying all deadlines pending the outcome of Ford Credit's appeal is appropriate and necessary. Federal Rule of Bankruptcy Procedure 8007 provides the framework for an order staying or continuing an adversary proceeding pending the outcome of an appeal. *See* Fed. R. Bankr. P. 8007(a)(1)(A) & (e)(1). Broadly, Rule 8007 empowers Courts to issue stay orders that avoid unjust results and "protect the rights of all parties in interest." *See In re Gleasman*, 11 B.R. 595, 599 (Bankr. W.D. Tex. 1990) (analyzing former Rule 8005); *see also* Fed. R. Bankr. P.

8007(e)(1).  Courts consider four factors in deciding whether a stay should be granted pending appeal: (1) likelihood of success on the merits; (2) irreparable harm to the movant absent a stay; (3) possibility of substantial injury to other parties; and (4) the public interest.  *In re: Texas Equip. Co., Inc.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002) (analyzing former Rule 8005); *see also In re Friendship Dairies*, No. 12–20405–RLJ–11, 2014 WL 527232, at *1-2 (Bankr. N.D. Tex. 2014) (same).

With respect to the first factor, this Court has historically recognized that "it is difficult to conceive of a court finding that its own order is likely to be reversed."  *In re Friendship Dairies*, 2014 WL 527232, at *2.  Accordingly, a "probability" of success is not always necessary to satisfy the first factor, particularly where "a serious legal question" is involved such that the balance of equities (*i.e.*, the other three factors) decidedly tips in favor of a stay.  *See id.* (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir.2001)).  Accordingly, this Court has also recognized that "[w]ith respect to questions of law, … especially questions involving the application of law, … the movant more easily satisfies the first element."  *In re: Texas Equip. Co., Inc.*, 283 B.R. at 227.

The second Rule 8007 factor—irreparable harm—invokes a "finality rule."  *Id.* at 228; *see In re Friendship Dairies*, 2014 WL 527232, at *3.  Where an appellant's rights will be irreversibly abridged, a stay is necessary and appropriate.  *See In re: Texas Equip. Co., Inc.*, 283 B.R. at 228; *In re Friendship Dairies*, 2014 WL 527232, at *3.  The third and fourth Rule 8007 factors— substantial injury to non-movants and public interest—are traditionally of lesser importance to the Court's stay analysis.  *See, e.g.*, *In re: Texas Equip. Co., Inc.*, 283 B.R. at 228-29.  However, mere delay is not a sufficiently "substantial injury" to overcome an appellant's demonstrated irreparable harm.  *See, e.g.*, *In re Friendship Dairies*, 2014 WL 527232, at *3.

Here, Ford Credit is pursuing an interlocutory appeal of the Court's order denying its second summary judgment motion to determine whether, under controlling Supreme Court and Fifth Circuit precedent, the Trustee should be permitted to proceed to trial on unpleaded theories of his fraudulent transfer claim, raised for the first time in response to Ford Credit's summary judgment motion and on which Ford Credit was denied discovery. *See* Dkt. 363. Ford Credit's appeal seeks to protect its fair notice and due process rights and its ability to fully defend itself against theories of a claim alleged for the first time after discovery closed.

If Ford Credit is successful, the Trustee's fraudulent transfer claim (which represents the overwhelming majority of the transfers he seeks to claw back from Ford Credit) will be dismissed, and the nature, scope, and anticipated duration of the trial in this adversary proceeding will drastically change. A trial on the Trustee's preference claim, which concerns approximately $45 million in transfers over a 90-day period, requires substantially different proof and substantially different defenses than a trial that also includes the Trustee's $315 million fraudulent transfer claim, which concerns approximately 3,000 separate transfers over a two-year period. A stay of all remaining deadlines pending the outcome of Ford Credit's appeal will: (1) avoid the unjust result of preparing for a rapidly-approaching trial on a claim that may ultimately be dismissed; and (2) ensure that Ford Credit's fundamental rights to due process and fair notice are protected. *See generally In re Gleasman*, 11 B.R. at 599.

The four Rule 8007 factors are also satisfied and support an order staying this case. *See In re: Texas Equip. Co., Inc.*, 283 B.R. at 226-27. First, Ford Credit's appeal is both likely to succeed on the merits **and** directly implicates a "serious legal question." Specifically, the appeal concerns Ford Credit's due process and fair notice rights and whether the Trustee is permitted to inject new theories of liability after discovery closed and in response to Ford Credit's summary judgment

motion. *See* Dkt. 363. Ford Credit's appeal is likely to succeed on the merits because binding

Supreme Court and Fifth Circuit precedent establish that the Trustee is not allowed to do so, and

his fraudulent transfer claim should be dismissed. *See id.* at 13 (citing, *inter alia*, *Jacked Up,*

*L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017)).

The balance of the other three Rule 8007 factors also decidedly favor a stay. Ford Credit

faces irreparable harm if it is forced to prepare for and defend itself at trial against newly-alleged

theories of liability—as to which Ford Credit was denied discovery—while an appeal seeking

dismissal of those theories is pending. By contrast, a stay does not prejudice the Trustee, because

he stands to benefit equally from the certainty afforded to both parties when Ford Credit's appeal

is resolved. Finally, there is no public interest impacted by a stay pending Ford Credit's appeal.

And if there were, it is far outweighed by the prejudice that Ford Credit faces absent a stay.

Because the four Rule 8007 factors favor a stay, and because a stay ensures that Ford

Credit's fair notice and due process rights are protected, Ford Credit's motion should be granted

and an order should be issued staying this adversary proceeding pending the outcome of Ford

Credit's appeal.

## II.     The scheduling order deadlines should be stricken because Ford Credit's chosen trial counsel have unavoidable conflicts.

In addition to granting a stay, Ford Credit independently requests that the Court strike the

currently scheduled trial dates due to previously-scheduled and unavoidable conflicts. Scheduling

orders are stricken or amended for "good cause." *See CHU de Quebec - Universite Laval v.*

*DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-182-SDJ, 2022 WL 3718491, at *2 (E.D.

Tex. Aug. 29, 2022) (quoting Fed. R. Civ. Pro. 16(b)(4)). The Fifth Circuit has established four

factors to determine whether "good cause" is sufficiently present to revise a scheduling order. *See*

*id.* They are: "(1) the explanation for the failure [or inability] to timely comply with the scheduling

order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Grant v. City of Houston*, 625 F. App'x 670, 679 (5th Cir. 2015)); *see also BCC Merch. Solutions, Inc. v. JetPay, LLC*, No. 3:12-CV-5185-B-BK, 2015 WL 13118141, at *2 (N.D. Tex. Aug. 17, 2015).

Here, the "good cause" factors establish that an order striking the current scheduling order is appropriate and necessary where Ford Credit's chosen trial counsel have unavoidable conflicts preventing them from participating in trial and critical trial preparation.

### A.    Ford Credit cannot comply with the current schedule due to prior conflicts.

Ford Credit cannot comply with the current scheduling order because its lead trial counsel have unavoidable conflicts with the current dates.  As set forth above, Ford Credit's chosen trial counsel have unavoidable conflicts which prevent them from adequately preparing and appearing for trial the week of January 17, 2023 and between February 14 and 17, 2023.  Specifically, Kevin Sadler of Baker Botts LLP has conflicting commitments, including a February 2023 multi-party trial setting and attendant trial preparation deadlines which were established prior to this Court entering its amended scheduling order. *See* Sadler Dec., ¶¶ 3-5.[1]

Meanwhile, lead trial counsel from Phillips Lytle LLP (Craig Leslie) and co-lead trial counsel from Baker Botts LLP (Michael Goldberg) will be traveling out of the country in the weeks immediately prior to, and the first day of, the currently scheduled trial dates.  *See* Leslie Dec., ¶¶ 4-6; Goldberg Dec., ¶¶ 3-5..  These previously-set travel arrangements will prevent counsel from participating in critical trial preparation in the weeks leading up to trial and in the first day of trial itself.  *See id.*

---

[1] *Rotstain et al. v. Trustmark et al.* Case No. 4:22-cv-00800, the other case being tried, has been pending since November 13, 2009. *See* 4:22-cv-00800, Dkt. 1.

**B.    Forcing Ford Credit to trial without the benefit of its chosen trial counsel is highly prejudicial.**

Ford Credit will be unfairly prejudiced if it is required to proceed to trial without its chosen trial counsel on the presently-scheduled trial dates.  *See Kaina v. Cnty. of Maui*, No. CIV.04-00608 DAE-LEK, 2007 WL 1153829, at *6 (D. Haw. Apr. 18, 2007) (vacating order denying continuance premised on unavailability of trial counsel).  "Requiring Defendants to proceed to trial without their chosen counsel simply because that attorney happens to have a conflict on the trial date set after the court required a continuance would undermine the right of parties to select their counsel. Furthermore, the forced hiring of new counsel in light of a scheduling conflict may result in a massive waste of resources, both private and judicial." *Id.* at * 6.

If the current trial setting is not changed, Ford Credit will be forced to spend enormous time and resources catching new or different counsel up to speed on the Trustee's fraudulent transfer and preference claims.  That prejudice is further compounded because the Trustee "alter[ed] his method of proof at the summary judgment stage," (Dkt. 355 at 20) and Ford Credit now requires additional discovery (including discovery it was previously denied) to defend itself against the Trustee's badges of fraud and direct evidence theories.  *See* Point III, *infra*.

**C.    Continuing the trial setting would allow Ford Credit the benefit of its chosen lead trial counsel without prejudicing the Trustee.**

At a minimum, an order resetting the current trial dates (and the associated pre-trial deadlines) ensures that Ford Credit's chosen trial counsel are available and avoids prejudicing Ford Credit by forcing it to trial without them.  The Trustee will not be prejudiced by any such continuance. The trial setting was only recently scheduled and, considering that the Trustee has repeatedly claimed there is no additional evidence or work which must be done to prove his case, the Trustee will not incur additional costs or expenses if the trial is rescheduled for a different date.

13

Ultimately, each of the four "good cause" factors support an Order striking the current scheduling order so that trial, and the associated trial deadlines, can be set at a time Ford Credit's chosen trial counsel are available.  Accordingly, the scheduling order should be stricken pending the outcome of Ford Credit's appeal or, alternatively, a time when the parties can meet and confer on a trial schedule that accommodates all counsel and witness availability.

**III.   Alternatively, the Court should enter an order reopening discovery and striking the scheduling order to permit Ford Credit an opportunity to defend against the Trustee's post-discovery theories.**

If the Court denies Ford Credit's request for a stay pending the outcome of its appeal, the Court should nevertheless issue an order striking the current scheduling order and reopening discovery to permit Ford Credit an opportunity to defend against the Trustee's post-discovery badges of fraud and direct evidence theories.

The "good cause" standard for reopening discovery is the same as amending a scheduling order.  *See CHU de Quebec - Universite Laval*, 2022 WL 3718491, at *2; *see also BCC Merch. Solutions, Inc.*, 2015 WL 13118141, at *2.  Changed circumstances and new claims and allegations raised for the first time at summary judgment or after the close of discovery are grounds for reopening discovery.  *See, e.g.*, *Cox v. Waste Mgmt. of Tex., Inc.*, No. H–10–1626, 2011 WL 3875353, at *3 (S.D. Tex. Aug. 31, 2011) (reopening discovery in light of new allegations submitted in a plaintiff's declaration in opposition to defendants' summary judgment motion); *Zilberman v. Caroffer, LLC*, No. 4:15-CV-589, 2016 WL 3060081, at *3 (E.D. Tex. May 31, 2016) (reopening discovery where "despite being diligent in pursuing discovery, [p]laintiff [was] unable to discover the evidence giving rise to his request for an extension until after the discovery deadline had already passed."); *Trimm v. Allstate Ins. Co.*, No. H-03-5338, 2007 WL 9736145, at *1 (S.D. Tex. Jan. 16, 2007) (holding that a change in circumstances bearing directly on plaintiffs' alleged damages warranted an order reopening discovery).

14

Here, the "good cause" factors weigh in favor of an order striking the current scheduling order and reopening discovery to permit Ford Credit an opportunity to conduct discovery on the Trustee's alleged badges of fraud and direct evidence theories that only became part of this case on summary judgment.

    **A.**    **Ford Credit cannot comply with the current scheduling order, particularly the trial deadlines, because it was not afforded an opportunity to conduct discovery on the Trustee's post-discovery theories.**

Discovery should be reopened in this case, and the scheduling order should be stricken, because Ford Credit was denied both relevant discovery and an opportunity to defend against the badges of fraud and direct evidence theories on which the Trustee is now seeking to proceed to trial. There is no dispute that Ford Credit was denied discovery, including requests for documents and information relevant to the Debtors' alleged fraudulent intent. And after the Court's discovery orders, Ford Credit tailored its further discovery efforts, expert disclosures, summary judgment motions, pre-trial filings, and trial preparation based on the Court's express direction that Ford Credit needed only to address the Trustee's alleged Ponzi or Ponzi-like scheme presumption. *See* Doc. 207 at 4.

The Trustee's altered, post-discovery theories for the intent element of his fraudulent transfer claim are "changed circumstances" warranting an order reopening discovery. *See Cox*, 2011 WL 3875353, at *3; *Zilberman*, 2016 WL 3060081, at *3; *Trimm*, 2007 WL 9736145, at *1. And Ford Credit must be afforded an opportunity to conduct the discovery it was previously denied and other discovery relevant to the Trustee's badges of fraud and direct evidence theories so that it can present a full defense, including expert analyses and reports.

First, the Trustee should be ordered to provide full and complete answers and responses to the specific interrogatories, document requests, and 30(b)6) topics that were denied. *See* Dkt. 202 at 3-4 (acknowledging the relevance of such demands to a badges of fraud claim). Second, now

that the Trustee has identified the four badges of fraud that he intends to rely on trial (*see* Dkt. 288 at 25-26), Ford Credit must be afforded an opportunity to conduct additional discovery that it would have sought if it had had timely notice of those theories. Such additional discovery includes the continued 30(b)(6) deposition of the Trustee, the continued deposition of Lindsay Williams, and supplemental expert discovery addressing the Trustee's belatedly-added theories. Depending on the Trustee's supplemental interrogatory answers and document productions, further discovery might also include specific contention interrogatories and requests for admission to further clarify the Trustee's methods of proof at trial.[2] It may also include additional witness depositions and requests for production. Third, Ford Credit must be afforded an opportunity to explore expert analyses of the Trustee's altered theories and an opportunity to serve additional or supplemental expert disclosures, if necessary.

Because the Trustee "alter[ed] his method of proof at the summary judgment stage" (Doc. 355 at 20), because Ford Credit was denied discovery relevant to that altered method of proof, and because Ford Credit was not afforded an opportunity to conduct discovery to test the merits of those theories or develop its defenses, Ford Credit cannot proceed to trial and comply with the deadlines in the current scheduling order. An order reopening discovery and striking the current scheduling order is both necessary and appropriate, and the first "good cause' factor favors such relief. *See CHU de Quebec - Universite Laval*, 2022 WL 3718491, at *2; *BCC Merch. Solutions, Inc.*, 2015 WL 13118141, at *2; *Cox*, 2011 WL 3875353, at *3; *Zilberman*, 2016 WL 3060081, at *3; *Trimm*, 2007 WL 9736145, at *1

---

[2] "Contention interrogatories are an appropriate means to discover an opposing party's general theory of the case and to prevent later sandbagging." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. Evers*, No. 18-CV-992-JDP, 2020 WL 7055883, at *1 (W.D. Wis. Feb. 7, 2020).

**B.    Striking the scheduling order and reopening discovery is critically important and, absent a stay, Ford Credit will suffer extraordinary prejudice if it is not afforded such relief.**

Again, Ford Credit formulated its discovery strategy (including expert disclosures), prepared its summary judgment motions, and structured its trial preparation strategy to address the Trustee's alleged Ponzi or Ponzi-like scheme theory. Effectively, the Trustee has, up to this point, been permitted to avoid discovery responses and production of evidence that this Court acknowledged are "relevant to the issue of fraudulent intent central to a fraudulent transfer claim," by claiming to rely only on a theory that "the Transfers were part of an ongoing Ponzi scheme or Ponzi-like scheme." Doc. 202 at 3-4. Now that the Trustee is attempting to proceed on a "typical" fraudulent transfer claim with belatedly-added badges of fraud and direct evidence theories, Ford Credit is entitled to the discovery it was denied, an opportunity to conduct additional discovery that may also be required, and time to fully formulate its defenses.

Indeed, a trial on the current record will violate Ford Credit's due process rights and force Ford Credit to defend itself at trial against a "method of proof" "alter[ed] . . . at the summary judgment stage," (Dkt. 355 at 20) after discovery closed, without having been afforded an opportunity to defend against it. *See Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 418-420 (5th Cir. 1981) (holding that defendant's due process rights were violated when he was found liable on an unpleaded theory of liability and noting that "each party is entitled to know what is being tried, or at least to the means to find out."); *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 193-95 (5th Cir.1997) (holding that a party was prejudiced by an order excluding evidence which "would have been relevant to the elements required to prove fraud, such as whether [a party] intended to defraud" and that the district court erred "by ruling on the claim without reopening the case to allow [the party] to defend against it."); *West v. City of Holly Springs*, No. 3:16-cv-79-MPM-RP, 2019 WL 1984321, at *3 (N.D. Miss. May 3, 2019) (stating that "[i]t seems

17

clear that a basic theory of the case is not something to be 'hidden' from the other side, since litigation is not a game of hide and seek" and holding that plaintiffs were not justified "in allowing defendants to litigate this case under a reasonable assumption that [plaintiffs] maintained one theory of the case, only to unveil a different theory in response to a summary judgment motion.").

Meanwhile, in the underlying bankruptcy case, the Trustee is seeking an order condoning his destruction of the Debtors' hard copy records. *See* Case No. 18-50214-rlj-11, Dkt. 2679. Ford Credit has opposed that motion. *See* Case No. 18-50214-rlj-11, Dkt. 2687. But if the Trustee's motion is granted, then Ford Credit will be permanently barred from obtaining further discovery from the Debtors' hard copy records, including documents: (1) relevant to the Trustee's badges of fraud and direct evidence theories; and (2) responsive to requests for which the Court denied Ford Credit's motion to compel. Ford Credit faces extraordinary prejudice if discovery is not reopened, and that prejudice will be irreversible if the Trustee is permitted to destroy the Debtors' records.

The Trustee's anticipated argument that he intends to rely on the same evidence at trial does not mitigate the manifest prejudice to Ford Credit. Ford Credit's discovery rights are established by the Federal Rules of Civil Procedure—not arguments by the Trustee's counsel about what evidence he intends to rely on. Ford Credit is not limited only to the evidence Trustee's counsel wants to present. Rather, Ford Credit is entitled to request and obtain any other evidence relevant to the Trustee's claim as well as evidence rebutting the claim and establishing Ford Credit's defenses. *See* Fed. R. Civ. P. 26(b)(1).

Moreover, it is undisputed that the Trustee's new theories have changed the factual and legal issues relevant to his fraudulent-transfer claim. When the Trustee was relying solely on the Ponzi-scheme presumption theory to establish his claim, discovery and Ford Credit's expert

witnesses focused on whether the Debtors were operating a Ponzi scheme and whether the presumption sought by the Trustee applies to a "Ponzi-like" scheme. That is no longer this case.

Without a presumption of fraudulent intent, the circumstances surrounding *each* of the challenged transfers—including their intended effects on the Debtors' creditors—are relevant. As this Court previously acknowledged, such evidence "would all be relevant to the issue of fraudulent intent central to a fraudulent transfer claim." *See* Dkt. 202 at 3-4. At a minimum, it would be relevant to: (1) the Debtors' intent generally; and (2) the specific badges of fraud on which the Trustee purports to rely (e.g., a "chronology of events").

Abiding by the Court's discovery rulings and relying on the Trustee's purported theory of the case, and the absence of any notice concerning badges of fraud or direct evidence theories before summary judgment, effectively barred Ford Credit from seeking meaningful, relevant discovery (including expert discovery) and otherwise fully formulating its defenses to the Trustee's belatedly-added theories. The prejudice facing Ford Credit, including the violation of its fair notice and due process rights, establish that the second and third "good cause" factors support an Order reopening discovery and striking the current scheduling order.

### C.     An order reopening discovery and amending the current scheduling order minimizes (without completely mitigating) the prejudice to Ford Credit.

As discussed above, forcing Ford Credit to trial on theories raised for the first time in opposition to summary judgment, and for which Ford Credit was denied discovery, violates Ford Credit's fair notice and due process rights. Sufficient time must be afforded to Ford Credit to conduct the discovery it needs to present a full defense to the Trustee's new theories.

Ultimately, an order reopening discovery cannot completely cure the prejudice facing Ford Credit if the Trustee's fraudulent transfer claim proceeds to trial. That prejudice includes, but is not limited to, the extraordinary cost of successfully litigating against the Trustee's theory of the

case before being required to re-do much of the litigation because the Trustee presented two new theories for the first time on summary judgment. As the Fifth Circuit has recognized, there is inherent prejudice when discovery is reopened so that a party can "prepare a defense for a claim different from the [one] ... that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir.1999)) (alteration in original); *see also Chisesi v. Auto Club Fam. Ins. Co.,* 374 F. App'x 475, 477 (5th Cir. 2010); *Prudhomme v. Tenneco Oil Co.*, 955 F.2d 390, 392-96 (5th Cir. 1992); *PHI, Inc. v. Off. & Pro. Emps. Int'l Union*, No. CIV. 06-1469, 2009 WL 1658040, at *5 (W.D. La. June 11, 2009). But if the Trustee's claim is not dismissed on appeal, then reopening discovery would at least provide Ford Credit an opportunity to defend against the Trustee's altered theories and reduce the otherwise irreparable prejudice that will otherwise result if Ford Credit is forced to trial on the current record. *See generally EMC Corp.*, 393 F.3d at 596.

Comparatively, the Trustee is not prejudiced by reopening discovery. And, to the extent he attempts to argues otherwise, any alleged prejudice is entirely of his own making. A "defendant is entitled to be supplied by the plaintiff one way or another with a road map of the plaintiff's suit so that he can know how to defend itself." *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 283 (7th Cir. 2002). Here, the Trustee did not provide that roadmap until his summary judgment response after the close of discovery.

The Trustee had an obligation to participate in discovery on the theory of the case he intended to take to trial. *See* Fed. R. Civ. P. 26(b)(1). After discovery closed, and in opposition to a summary judgment motion, the Trustee belatedly altered his method of proof. This Court has allowed the Trustee to pursue those alternate method of proof to trial, but the Trustee cannot now be further rewarded for avoiding his discovery obligations.

If the Court does not stay this adversary proceeding pending Ford Credit's appeal, the "good cause" factors support an order striking the current scheduling order and reopening discovery concerning the Trustee's alleged badges of fraud and direct evidence theories.

## **CONCLUSION**

For the foregoing reasons, Ford Credit respectfully requests that the Court grant its motion and: (1) stay this case pending the outcome of Ford Credit's appeal; (2) strike the current scheduling order; and (3) grant any further relief to which Ford Credit is entitled.  If the portion of this motion seeking a stay is denied, then Ford Credit respectfully requests an alternative order reopening discovery and striking the current scheduling order to accommodate further discovery on the Trustee's badges of fraud and direct evidence theories.

Dated:  October 24, 2022

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Kevin M. Sadler*

Kevin M. Sadler, Esq.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 943304
(650) 739-7518 – Telephone
(650) 739-7618 – Facsimile
kevin.sadler@bakerbotts.com

Michael S. Goldberg, Esq.
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1401 – Telephone
(713) 229-2801 – Facsimile
michael.goldberg@bakerbotts.com

PHILLIPS LYTLE LLP

Craig A. Leslie, Esq.
Jacob S. Sonner, Esq.
Admitted Pro Hac Vice
One Canalside
125 Main Street
Buffalo, NY 14203
(716) 847-8400 – Telephone
(716) 852-6100 – Facsimile
cleslie@phillipslytle.com
jsonner@phillipslytle.com

*ATTORNEYS FOR DEFENDANT*
*FORD MOTOR CREDIT COMPANY LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2022, a copy of the foregoing Brief was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System ("ECF"). Parties may access this filing through ECF.

*/s/ Kevin M. Sadler*
Kevin M. Sadler