IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| IN RE:<br><br>Reagor-Dykes Motors, LP, et. al,<br><br>*Debtors*, | Case No. 18-50214-rlj -11<br>Jointly Administered |
| Dennis Faulkner, Creditors' Trustee,<br><br>*Plaintiff*<br><br>vs.<br><br>Ford Motor Credit Company, LLC,<br><br>*Defendant* | Adversary No. 20-05005-rlj |

**PLAINTIFF DENNIS FAULKNER, CREDITORS' TRUSTEE'S
BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY**

| | |
|---|---|
| BRACEWELL LLP<br>Bryan S. Dumesnil<br>State Bar No. 00793650<br>bryan.dumesnil@bracewell.com<br>Bradley J. Benoit<br>State Bar No. 24012275<br>brad.benoit@bracewell.com<br>711 Louisiana, Suite 2300<br>Houston, Texas 77002<br>(713) 223-2300 – Telephone<br>(800) 404-3970 – Facsimile | STRICKLIN LAW FIRM, P.C.<br>Samuel M. Stricklin<br>State Bar No. 19397050<br>sam.stricklin@stricklaw.pro<br>2435 N. Central Expy.<br>Suite 1200, Palisade, Bldg. II<br>Richardson, Texas 75080<br>(972) 238-8687 – Telephone |
| Counsel to Plaintiff Dennis Faulkner, Creditors' Trustee ||

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................1

    A.  The Complaint's Allegations ....................................................................2

    B.  The Trustee Has Consistently Relied On Direct And Circumstantial
        Evidence Of Fraudulent Intent ..................................................................4

        (i)   FMCC's Motion To Dismiss ..........................................................4

        (ii)  The Trustee's Discovery Responses ................................................5

        (iii) FMCC's Motion To Compel..........................................................6

        (iv)  Expert Disclosures And Other Discovery After The Motion
              To Compel ....................................................................................8

        (v)   FMCC's First Motion For Summary Judgment.......................... 10

        (vi)  FMCC's Second Motion For Summary Judgment ..................... 10

III. ARGUMENT........................................................................................................ 11

    A.  FMCC Is Not Entitled To A Stay Pending Appeal Under Bankruptcy
        Rule 8007 ................................................................................................ 11

        (i)   FMCC is not likely to succeed on the merits of its motion for leave
              to appeal .................................................................................... 12

        (ii)  FMCC will not suffer an irreparable injury if the Court does not
              issue a stay. ................................................................................ 13

        (iii) The unsecured creditors will continue to suffer substantial harm
              and the public interest in orderly administration will not be served
              if a stay is granted. ................................................................... 14

    B.  FMCC Has Not Demonstrated "Good Cause" For Modification Of The
        Scheduling Order Deadlines .................................................................. 15

    C.  FMCC Has Not Demonstrated "Good Cause" For Reopening Discovery ........... 17

        (i)   FMCC's explanation of its need for post-summary judgment
              discovery is insufficient to establish good cause ....................... 17

**Page**

(a)    There is no "changed circumstance" that establishes good cause to reopen discovery. ........................................18

(b)    FMCC failed to diligently pursue the New Discovery Requests............................................................20

(ii)    FMCC does not explain why the requested discovery is important or relevant ................................................................................22

(iii)    The unsecured creditors will be prejudiced by further delays. .................24

IV.    CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Garlock, Inc.*,
   278 F.3d 426 (5th Cir. 2001) ...............................................................................12

*In re Burkett*,
   279 B.R. 816 (Bankr. W.D. Tex. 2002) ...............................................................12

*Caldwell-Baker Co. v. Parsons*,
   392 F.3d 886 (7th Cir. 2004) ...............................................................................14

*CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*,
   No. 4:21-CV-182-SDJ, 2022 WL 3718491 (E.D. Tex. Aug. 29, 2022) ...........................20, 21

*Colony Ins. Co. v. NJC Enter.*,
   No. CV 09-763, 2013 WL 12182608 (M.D. La. Dec. 6, 2013) .......................................22, 24

*Costa v. Sears Home Improvement Prod., Inc.*,
   178 F. Supp. 3d 108 (W.D.N.Y. 2016) .................................................................17

*Cox v. Waste Mgmt., Inc.*,
   No. CIV.A. H-10-1626, 2011 WL 3875353 (S.D. Tex. Aug. 31, 2011) ...............................20

*Daniels Health Sci., LLC v. Vascular Health Sci., LLC*,
   710 F.3d 579 (5th Cir. 2013) ...............................................................................14

*In re Dernick*,
   No. 18-32417, 2019 WL 236999 (Bankr. S.D. Tex. Jan. 16, 2019) .......................................15

*Duggins v. Steak 'N Shake, Inc.*,
   195 F.3d 828 (6th Cir. 1999) ...............................................................................24

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
   762 F.2d 464 (5th Cir. 1985) ...............................................................................14

*Fahim v. Marriott Hotel Servs., Inc.*,
   551 F.3d 344 (5th Cir. 2008) ...............................................................................15

*In re First South Sav. Ass'n*,
   820 F.2d 700 (5th Cir. 1987) ...............................................................................12

*Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Local No.
2 v. Chicago Tribune Co.*,
   779 F.2d 13 (7th Cir. 1985) ...............................................................................14

**Page(s)**

*In re IFS Fin. Corp.*,
   417 B.R. 419 (Bankr. S.D. Tex. 2009), *aff'd*, 669 F.3d 255 (5th Cir. 2012)........................5, 7

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
   No. SACV111062JVSANX, 2015 WL 13423891 (C.D. Cal. June 23, 2015) ......................21

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
   854 F.3d 797 (5th Cir. 2017) ...............................................................................................13

*Kaina v. Cnty. of Maui*,
   No. CIV.04-00608 DAE-LEK, 2007 WL 1153829 (D. Haw. Apr. 18, 2017)......................16

*Knoth v. Apollo Endosurgery US, Inc.*,
   No. 5:18-CV-49-DCB-MTP, 2021 WL 5098285 (S.D. Miss. Nov. 2, 2021) .......................21

*In re KZK Livestock, Inc.*,
   190 B.R. 626 (Bankr. C.D. Ill. 1996).................................................................................4, 5

*Marathon Fin. Ins., Inc. v. Ford Motor Co.*,
   591 F.3d 458 (5th Cir. 2009) ...............................................................................................17

*Moore v. Willis Indep. Sch. Dist.*,
   233 F.3d 871 (5th Cir. 2000) ...............................................................................................22

*Morgan v. Fletcher*,
   518 F.2d 236 (5th Cir. 1975) ...............................................................................................14

*Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*,
   884 F. Supp. 2d 108 (S.D.N.Y. 2012)..................................................................................13

*Patterson v. Dallas/Fort Worth Int'l Airport Bd.*,
   No. 3:18-CV-00307-E, 2021 WL 4240479, at *1-2 (N.D. Tex. Jan. 6, 2021) ......................13

*Peru v. Unisert Multiwall Sys., Inc.*,
   No. 4:14-CV-773, 2014 WL 7338863 (S.D. Tex. Dec. 22, 2014)....................................13, 14

*PHI, Inc. v. Office & Prof'l Emps. Int'l Union*,
   No. CIV. 06-1469, 2009 WL 1658040 (W.D. La. June 11, 2009) .........................................24

*Prudhomme v. Tenneco Oil Co.*,
   955 F.2d 390 (5th Cir. 1992) ...............................................................................................24

*Puig v. Citibank, N.A.*,
   514 Fed.Appx. 483 (5th Cir. 2013).......................................................................................20

*Ruiz v. Estelle*,
   650 F.2d 555 (5th Cir. 1981) ...............................................................................................12

**Page(s)**

*S&W Enters., LLC v. Southtrust Bank, NA*,
    315 F.3d 533 (5th Cir. 2003) ............................................................15

*Sanford v. Pershing LLC*,
    No. 3:15-CV-3832-N-BQ, 2022 WL 1590752 (N.D. Tex. Jan. 14, 2022) ......................17, 22

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ............................................................24

*Smith v. United States*,
    834 F.2d 166 (10th Cir. 1987) ..........................................................17

*Soza v. Hill (In re Soza)*,
    542 F.3d 1060 (5th Cir. 2008) ...........................................................9

*Sw. Bell Tel. Co. v. City of El Paso*,
    346 F.3d 541 (5th Cir. 2003) ............................................................24

*In re Texas Equip. Co.*,
    283 B.R. 222 (Bankr. N.D. Tex. 2002)...................................................12

*In re TMT Procurement Corp.*,
    No. 13-33741, 2014 WL 1577475 (Bankr. S.D. Tex. Apr. 16, 2014) .....................15

*Trimm v. Allstate Ins. Co.*,
    No. CV H-03-5338, 2007 WL 9736145 (S.D. Tex. Jan. 16, 2007) ......................20

*United States v. Prevezon Holdings, Ltd.*,
    236 F. Supp. 3d 871 (S.D.N.Y. 2017)...................................................17

*Warner v. Lear Corp.*,
    No. 3:15-CV-1878-D, 2017 WL 930829 (N.D. Tex. Mar. 9, 2017).......................22

*Watt v. All Clear Bus. Sols., LLC*,
    840 F. Supp. 2d 324 (D.D.C. 2012) .....................................................17

*Weingarten Realty Invs. v. Miller*,
    661 F.3d 904 (5th Cir. 2011) ............................................................14

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ..........................................................14

*Zilberman v. Caroffer, LLC*,
    No. 4:15-CV-589, 2016 WL 3060081 (E.D. Tex. May 31, 2016) .........................20

**Page(s)**

**Statutes**

11 U.S.C. § 548(a)(1)(A) ................................................................................................9, 20

11 U.S.C. § 548(b) .................................................................................................................9

**Rules**

Fed. R. Bankr. P. 8007(e) ...................................................................................................11

Fed. R. Civ. P. 16(b) ...........................................................................................................15

**Treatises**

6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1
    (2d ed. 1990) ...............................................................................................................15

## I.     INTRODUCTION

This motion is the third time that Ford Motor Credit Company, LLC ("FMCC") has argued that it did not have notice of the Trustee's claims. The Court rejected this argument in its ruling on the first motion for summary judgment, it rejected it again in its ruling on the second motion for summary judgment, and it should reject it for a third time; FMCC has had consistent notice and discovery regarding the Trustee's claims. Consistent with a pattern of seeking delay of the trial of this case, FMCC asks for a stay of the case based on its request for a discretionary appeal. But FMCC fails to establish either the requirements for an interlocutory appeal or the requirements for a stay. In the alternative, FMCC seeks to suspend the trial setting, even though most of what it presents as scheduling conflicts does not actually conflict with the Court's trial setting.

Further in the alternative, FMCC has the temerity to ask to reopen discovery after telling the Court that discovery is closed and that it was not asking to reopen discovery. FMCC stated earlier that it wanted a continuance and an opportunity to file a second summary judgment motion because it was ready to challenge the claims of fraudulent transfer premised on circumstantial and direct evidence. It got what it wanted. Only now that it has lost that motion, FMCC changes its tune to claim that it needs additional discovery. As the Court already found, FMCC has received full discovery on the Trustee's allegations. What FMCC sought in its motion to compel is no more relevant (or proportional to the needs of the case) today than it was when the Court denied that motion; the Trustee still alleges general harm to the creditor body, not harm to a specific creditor.

The Trustee urges the Court to put the parties to trial.

## II.     FACTUAL BACKGROUND

FMCC's motion to stay this case while the District Court considers FMCC's request for an interlocutory appeal, and its motion for leave to pursue that appeal, are both based on the faulty premise that FMCC did not have fair notice of the basis for the Trustee's fraudulent transfer claim.

The Court has rejected this argument twice for good reason. FMCC has known all along how the Trustee intended to prove his case.

## A. The Complaint's Allegations

Debtors Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada, LP (collectively, "Reagor-Dykes") owned and operated six auto dealerships in the Lubbock, Texas area. Original Complaint (ECF No. 1) ("Complaint") ¶¶ 4, 21. The businesses consistently operated at a loss due to an out-of-control cost structure, including excessive compensation packages. *Id.* ¶¶ 24-25. This cost structure consistently rendered Reagor-Dykes short on cash. *Id.* ¶ 27.

It was impossible for Reagor-Dykes to make up the working capital deficit through legitimate business operations. *Id*. ¶ 24. To compensate, the Chief Financial Officer, Shane Smith, devised a scheme to generate the cash flow necessary to continue enriching himself and others by securing fraudulent loans and implementing massive check kiting. *Id.* ¶¶ 27-32.

FMCC provided wholesale lines of credit to finance the purchase of Reagor-Dykes' vehicle inventory. *Id.* ¶ 22. When Reagor-Dykes sold a car that FMCC financed, Reagor-Dykes was required to repay FMCC within a week of the sale. *Id.* As part of Smith's scheme, Reagor-Dykes routinely sold FMCC-floored vehicles without making timely payoffs to FMCC—a practice known as selling vehicles "out of trust." *Id.* ¶¶ 22, 28. Reagor-Dykes would use the proceeds to pay off its excessive business expenses and other obligations. *Id.* ¶ 28.

Reagor-Dykes also engaged in other fraudulent activities to generate cash flow. *See id.* ¶¶ 29-32. For instance, it used "fake flooring," where it requested advances for vehicles it had sold months or years earlier. *Id.* ¶ 29. It also "double" and "triple floored" vehicles by receiving loans from FMCC and other lenders on the same collateral. *Id.* ¶ 30. Reagor-Dykes used the liquidity

gained from these fraudulent practices, as well as from the check-kiting scheme, to make payoffs to FMCC and thereby perpetuate the fraudulent scheme. *Id.* ¶¶ 31-34, 43-47.

FMCC had the right to conduct periodic "surprise" audits of Reagor-Dykes' financials and inventory. *Id.* ¶ 23. Truly "surprise" audits would have revealed that large amounts of collateral were missing. *Id.* ¶ 33. But Reagor-Dykes had advance notice of the audits and falsified sales paperwork to create the illusion that the missing vehicles were sold within the last week, making Reagor-Dykes' remittal to FMCC not yet due. *Id.* ¶¶ 22, 33-38. Consequently, Reagor-Dykes reported an enormous amount of "sold not due" vehicles at audits. *Id.* ¶ 34-36. FMCC admitted these numbers raised an obvious red flag that "indicated to [FMCC] that [Reagor-Dykes was] … falsifying [its] sales dates …." *Id.* Even so, FMCC ignored the clear warning signs for years and continued to accept payments from Reagor-Dykes without question. *Id.* ¶¶ 2, 5, 26, 32, 34-39, 41-43, 48-50.

These payments included disproportionately high "sold not due" amounts after each audit. *Id.* ¶¶ 34-36, 43. Reagor-Dykes made the large catch-up payments only by securing more fraudulent loans and engaging in check kiting. *Id.* ¶¶ 4, 43-47. This created a "vicious cycle" of fraudulently acquiring new funds to cover "previous loans and replenish overdrawn accounts." *Id.* ¶ 4.

"Without sufficient legitimate cash flow to repay their debts, the Debtors made payments to FMCC with an intent to hinder, delay, or defraud their creditors, who would be left without recovery when Debtors' business inevitably failed." *Id.* ¶ 4. Specifically, Reagor-Dykes made payments to FMCC to prolong its fraudulent scheme, but its failure was inevitable, as the deficit was impossible to overcome without any legitimate profits. *Id.* ¶ 32. Reagor-Dykes knew that creditors would ultimately be left holding the bag when the scheme finally collapsed. *Id.* In support

of its allegations of intent, the Complaint cites direct evidence of intent from guilty pleas of former Reagor-Dykes' employees. *Id*. at ¶ 47.

In June 2018, an FMCC employee exposed Reagor-Dykes' scheme while investigating an unrelated dealership. *Id.* ¶ 51. Despite years of "red flags," FMCC had never taken similar action to investigate Reagor-Dykes until the employee's accidental discovery. *Id.* ¶ 53. Only then did FMCC conduct a "real surprise audit" that revealed $41,000,000 worth of missing vehicles for which Reagor-Dykes could not repay FMCC. *Id.* ¶¶ 54-55. FMCC terminated funding, and Reagor-Dykes filed for bankruptcy on August 1, 2018. *Id.* ¶ 56.

The Trustee seeks to avoid and recover fraudulent and preferential transfers Reagor-Dykes made to FMCC prior to bankruptcy. *Id.* ¶¶ 1, 58-63, 73-77.

**B.    The Trustee Has Consistently Relied On Direct And Circumstantial Evidence Of Fraudulent Intent**

It is important to note that the Trustee has not amended the Complaint—it contains the allegations the Trustee has relied on throughout the case. Further, in discovery responses and in motion practice, the Trustee asserted that he was entitled to an evidentiary presumption of fraudulent intent because Reagor-Dykes operated as a Ponzi-like scheme. But the Trustee consistently stated—and never once said otherwise—that the facts provide direct and circumstantial evidence of fraudulent intent apart from any Ponzi-scheme presumption.

*(i)    FMCC's Motion To Dismiss*

In his response to FMCC's motion to dismiss (ECF No. 29), the Trustee made clear that his allegations were not limited to a Ponzi-scheme presumption: "Even outside of the context of a true Ponzi scheme, courts have found fraudulent intent where the debtor knew creditors would ultimately be left unpaid as a result of the transfer." *Id.* at 12 (citing *In re KZK Livestock, Inc.*, 190 B.R. 626 (Bankr. C.D. Ill. 1996)); *see also id.* at 14-15 ("Even if the Court finds that Debtors were

not engaged in a classic Ponzi scheme, the Complaint nevertheless properly pleads Debtors' actual fraudulent intent.") (citing *In re IFS Fin. Corp.*, 417 B.R. 419, 428 (Bankr. S.D. Tex. 2009), *aff'd*, 669 F.3d 255 (5th Cir. 2012)).

The Trustee emphasized that "[t]he Complaint does not allege an intent to prefer one creditor over another," but instead alleged that Reagor-Dykes perpetuated its fraud through the challenged transfers and with knowledge that the fraudulent schemes would "eventually come to an end and leave creditors unpaid." *Id*. In denying the motion to dismiss, the Court noted that the Trustee alleged that the scheme "defrauded the creditor body as a whole." ECF No. 54 at 4. The Court later relied on these same allegations and legal authorities in denying summary judgment. *See, e.g.*, ECF No. 355 at 9 (citing *In re IFS*), 12 (citing *In re KZK*).

(ii)     *The Trustee's Discovery Responses*

FMCC's first interrogatory asked the Trustee to disclose the factual basis for the allegation that the transfers were "made with the actual intent of the Debtors to hinder, defraud or delay their existing and/or subsequent creditors." The Trustee's response reiterated the same facts alleged in the Complaint. Creditors' Trustee Dennis Faulkner's Responses and Objections to Defendant Ford Motor Credit Company's First Set of Interrogatories (Aug. 16, 2021), Ex. A at 2-3. The Trustee cited direct evidence of intent: "Several individuals have pled guilty to their involvement in these fraudulent activities. The Trustee refers FMCC to the criminal proceedings involving those individuals (which FMCC has referenced in numerous pleadings)." *Id*. at 3. After describing Reagor-Dykes' various fraudulent practices, including the check-kiting scheme, the Trustee alleged that "[t]he Debtors made payments to FMCC to prolong [the fraudulent] scheme to the detriment of other creditors." *Id*. at 2-3.

The Trustee gave notice that his allegations of a fraudulent scheme both supported a presumption of intent and constituted circumstantial evidence of intent:

The Debtors' fraudulent schemes began before and continued throughout the time period that the fraudulent transfers were made to FMCC. As will be demonstrated through expert testimony, the fraudulent transfers were made to FMCC when the Debtors were without sufficient legitimate cash flow to repay their debts. The Debtors' conduct constitutes a fraudulent Ponzi (or Ponzi-like) scheme, which gives rise to a presumption that the transfers were fraudulent *and otherwise enables the Court to infer actual fraudulent intent for each of the transfers to FMCC*.

*Id*. at 3 (emphasis added).

(iii)    *FMCC's Motion To Compel*

FMCC asked the Trustee for voluminous information about Reagor-Dykes' dealings with other creditors. The Trustee objected that the requests sought irrelevant information and were disproportionate to the needs of the case. *Id*. at 4. While the Trustee had produced financial records that reflected transactions with creditors—including bank statements, the general ledger, and financial statements—these requests sought to impose unwarranted burdens. *Id*. at 5.

FMCC moved to compel. ECF No. 172. In response, the Trustee argued that he was entitled to a presumption of fraudulent intent. ECF No. 186 at 2-3. But the Trustee also noted that there was direct and circumstantial evidence of fraudulent intent, arguing that "[s]pecific creditor transactions are irrelevant" and that FMCC had failed to show (1) how the requests would refute fraudulent intent or (2) what could justify the enormous burdens that the requests would impose. *Id*. at 10-11.

The Court considered the motion on October 14, 2021. During the hearing, the Court asked the Trustee how he would prove his case. Ex. B, October 14, 2021 Hrg. Tr. at 36:16-22. The answer was consistent with the allegations of the Complaint, the evidence that the Trustee subsequently submitted in response to the motions for summary judgment, and the evidence the Court relied on in denying those summary judgment motions. The Trustee cited direct evidence from admissions of those who "actually committed the fraud" in sentencing information and repeatedly invited FMCC to seek the depositions of those individuals. *Id*. at 36:23-38:6. The Trustee cited expert

testimony on insolvency, proof that Reagor-Dykes was running a fraudulent scheme, and direct evidence that payments were made to FMCC "to keep the scheme going." *Id*. at 39:3-10, 75:4-15.

The Trustee maintained the information being sought was not relevant because "[w]e are not relying on a creditor-by-creditor analysis to prove our case."  *Id*. at 73:13-74:2. As the Trustee noted, he is not arguing "that there was some particular thing going on with a certain creditor, to the disadvantage of certain other specific creditors." *Id*. Instead, the Trustee alleges Reagor-Dykes "defrauded the creditor body as a whole," ECF No. 54, at 4, and FMCC did not articulate (and still has not articulated) how communications with other creditors is relevant to the theory of general harm to the creditor body.

The Trustee made an unequivocal statement about his reliance on the badges of fraud when explaining that he was not relying on a creditor-by-creditor analysis:

> *[I]f Ford thinks that that eliminates certain badges of fraud, well, we disagree, but they can make that argument.* They've got me on the record saying it right now. *If they think we can't prove some part of our case because we're not doing that creditor-by-creditor analysis, they can make that argument.* But we're not going to rely on some kind of analysis like ASARCO, where we're saying that there was some particular thing going on with a certain creditor, to the disadvantage of certain other specific creditors. That's not the case we've brought. *And if they think the absence of that evidence is important or dispositive, they can file a motion making that argument or they can argue it at trial.*

Ex. B, October 14, 2021 Hrg. Tr. at 73:16-74:2 (emphasis added). Moreover, when addressing FMCC's attempt to distinguish *In re IFS*, the Trustee reiterated his reliance on badges of fraud: "Ford notes that the [*IFS* court] considered badges of fraud. *We allege there are badges of fraud present here too*." *Id*. at 81:16-17 (emphasis added).

On October 29, 2021, the Court denied FMCC's motion to compel. ECF No. 202. While the Court cited the Trustee's intent to prove the existence of a Ponzi or Ponzi-like scheme and stated—contrary to the Trustee's statements at the hearing—that the Trustee did not intend to prove fraudulent intent by proving the badges of fraud, there were additional grounds the Court

cited for its ruling. It noted that the Trustee did not intend to prove fraudulent intent by proving specific harm to other creditors. *Id*. at 4-5, 7-8. It was in this specific context—a context that FMCC repeatedly obscures by omitting the lead-in sentence, using ellipses, and inserting bracketed words that are not in the original (ECF No. 363 at 2, 6, 19 n.7, 20)—that the Court discussed the possibility of a pleading amendment to assert a new theory:

> Nowhere in the Complaint does the Trustee allege ***specific harm to any particular creditor***. The Trustee will either succeed on its theory or not, and unless the Complaint is amended to assert a different theory, ***there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors***. For the purposes Ford Credit has raised—to address the fraudulent intent—the requested discovery is not relevant.

*Id*. at 5-6 (emphasis added). The Trustee continues to allege harm to the creditor body generally—not specific harm to any particular creditor—and there was no need to amend the Complaint.

When discussing the burdens of FMCC's discovery requests, the Court again cited the nature of the harm being alleged: "Such a Herculean task may be warranted were this a typical fraudulent conveyance action where ***specific harm to other creditors was alleged***. But where, as here, the plaintiff has alleged fraudulent intent through the Ponzi-scheme presumption, the minute details of the Debtors' every transaction with creditors are largely irrelevant." *Id*. at 7-8 (emphasis added). Though the Court referenced the Ponzi-scheme presumption, its rationale pertains to the absence of any allegation of specific harm to other creditors.

(iv)   *Expert Disclosures And Other Discovery After The Motion To Compel*

After the Court's ruling on the motion to compel, the Trustee continued to make clear that he relies on direct and circumstantial evidence of fraudulent intent and not simply a Ponzi-scheme presumption of intent. For example, on January 4, 2022, the Trustee identified two testifying experts: Robert Reilly and William Ploog. FMCC unsuccessfully sought to strike both experts. ECF Nos. 261, 265, 300, 302.

Reilly was retained to provide opinions as to (1) insolvency in the two years preceding the bankruptcy specifically in connection with the actual fraudulent transfer claim and (2) a functional analysis of whether Reagor-Dykes operated as a going-concern business enterprise during the two years preceding the bankruptcy and, if not, to identify the practices that allowed it to continue to operate. ECF No. 265-1 at App. 5, 7. Reilly expressly did not opine regarding whether Reagor-Dykes constituted a Ponzi or Ponzi-like scheme. *Id*. at App. 12-13.

In the case of an actual fraudulent transfer claim—unlike a constructive fraudulent transfer claim—insolvency is not an element of the claim. *Compare* 11 U.S.C. § 548(a)(1)(A) *with* 11 U.S.C. § 548(b). Insolvency is, however, one of the badges of fraud that allows an inference of intent. *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008); ECF No. 321 at 16-17. And Reilly's functional analysis similarly provides circumstantial evidence of fraudulent intent. ECF No. 321 at 17. As Reilly did not address whether Reagor-Dykes was a Ponzi-like scheme, the reason for offering his opinions was obvious: to provide circumstantial evidence of fraudulent intent.

The Trustee also obtained direct evidence of fraudulent intent from a former Reagor-Dykes employee, Lindsay Williams, regarding the intent of the transfers to FMCC. ECF No. 230. FMCC also questioned Williams during the deposition. Following Williams' deposition, FMCC opposed the Trustee's request for a writ of habeas corpus ad testificandum to have Williams testify at trial. ECF No. 248. The Court recommended issuance of the writ, ECF No. 266, and the District Court issued the writ. ECF No. 267.

FMCC otherwise attempted to rebut the direct and circumstantial evidence that the Trustee had provided. It designated a financial expert to counter Reilly and submitted an affidavit from the fraudulent scheme's mastermind, Shane Smith. ECF No. 259, Ex. E (Expert Report of Joshua

Johnston), ECF No. 259, Ex. C (Affidavit of Shane Smith). FMCC also questioned both the

Trustee and Williams regarding whether Reagor-Dykes made payments to other creditors. ECF

No. 258 at 7-8 & n.32. This evidence was adduced in an effort to rebut the direct and circumstantial

evidence that FMCC knew the Trustee was citing.

### (v)     FMCC's First Motion For Summary Judgment

FMCC filed a motion for summary judgment and argued that the Trustee was not entitled

to a presumption of fraudulent intent because Reagor-Dykes was not an actual Ponzi scheme. ECF

No. 258 at 12-23. Recognizing that the Trustee's case was not limited to this presumption, FMCC

argued that "[w]ithout a presumption, the Trustee cannot prove his fraudulent transfer claim." *Id*.

at 23. FMCC addressed the Trustee's evidence of insolvency (*id*. at 24) and directly acknowledged

the Trustee's reliance on direct evidence of fraudulent intent. *Id*. at 25.

The Court concluded that the Fifth Circuit "has limited application of the Ponzi-Scheme

Presumption to true Ponzi schemes," and found that Reagor-Dykes was not such a scheme. ECF

No. 321 at 15-16. It denied the motion for summary judgment, however, finding that the Trustee

had pled and submitted circumstantial evidence of fraudulent intent. *Id*. at 17-18 ("Ford Credit has

been on notice of the facts underlying a badges-of-fraud theory of fraudulent intent since this case

was filed. Trustee pleaded those facts in his complaint and provided Ford Credit with relevant

discovery.").

### (vi)     FMCC's Second Motion For Summary Judgment

After the ruling, FMCC sought a continuance and the right to file a second motion for

summary judgment to address the Trustee's claim of fraudulent intent based on direct and

circumstantial evidence. ECF No. 329. In support of its request, FMCC's affirmed that discovery

is over and that FMCC was not asking for additional discovery. Ex. C, June 8, 2022 Hrg. Tr. at

-10-

10:14-11:11. The Court continued the trial and granted leave to file a second summary judgment motion. ECF No. 331.

FMCC filed the second summary judgment motion. The Trustee responded with voluminous evidence, and the Court denied the motion for summary judgment. ECF No. 355. The Court concluded that Williams provided direct evidence of intent that raised a material issue of fact (*id*. at 6-7) and that the Trustee presented circumstantial evidence of fraudulent intent, including through several badges of fraud. *Id*. at 7-16.

The Court rejected FMCC's request to dismiss the claim based on the Trustee allegedly providing late notice of reliance on alternative "legal theories" other than a Ponzi-scheme presumption. *Id*. at 16-21. In finding that the Trustee's response was "permissible and nonprejudicial," the Court stated that "as explained in the First Summary Judgment Opinion, the Trustee submitted evidence in response to summary judgment and pleaded numerous facts in the complaint which, if true, constitute circumstantial evidence of fraudulent intent through the badges of fraud and direct evidence of fraudulent intent." *Id*. at 18. The Court further stated that "the Trustee continues to rely on the same factual allegations already included in his complaint and the same evidence used to prosecute his claim under the Ponzi-scheme presumption." *Id*. at 19. The Court also found that FMCC had suffered no unfair prejudice and that any potential prejudice was cured by allowing a second summary judgment motion and multiple additional months to prepare for trial. *Id*. at 21.

### III.    ARGUMENT

### A.    FMCC Is Not Entitled To A Stay Pending Appeal Under Bankruptcy Rule 8007

Bankruptcy Rule 8007(e) permits bankruptcy courts to "suspend or order the continuation of other proceedings in the case; or issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007(e). The Fifth Circuit

considers four factors when deciding whether to grant a discretionary stay pending an interlocutory appeal: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *In re Burkett*, 279 B.R. 816, 817 (Bankr. W.D. Tex. 2002) (quoting *In re First South Savings Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987)). The movant must satisfy each of the factors. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001). In this case, each factor weighs heavily against FMCC's request for a stay.

        (i)        *FMCC is not likely to succeed on the merits of its motion for leave to appeal*

The movant must "present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold,* 278 F.3d at 439 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). This element is unlikely to be met "[w]hen the issue appealed is mostly a factual question over which the bankruptcy court has broad discretion," because "such discretion is unlikely to be overturned on appeal." *In re Texas Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002); *see also Burkett*, 279 B.R. at 817 ("[M]ovant here cannot establish the [success on the merits element] because this court's findings of fact … are highly unlikely to be reversed on appeal as 'clearly erroneous.'").

As explained in the Trustee's brief in opposition to FMCC's motion for leave to appeal, FMCC cannot show that it has any chance of succeeding on the merits of its appeal. *See* Ex. D, App. ECF No. 4.[1] FMCC cannot make the threshold showing of a controlling question of law. *See id*. Leave to appeal is therefore improper because an interlocutory order "may be certified for interlocutory appeal only if it turns on 'a pure issue of law [that] the appellate court can efficiently

---

[1] "App. ECF No." refers to the numbered docket entries in the District Court appellate proceeding, No. 5:22-cv-00276.

rule on without making an intensive inquiry into the record.'" *Patterson v. Dallas/Fort Worth Int'l Airport Board*, No. 3:18-CV-00307-E, 2021 WL 4240479, at *1-2 (N.D. Tex. Jan. 6, 2021) (citations omitted).

Even if the question presented by FMCC were reviewable, FMCC has not identified a substantial ground for difference of opinion as to its proposed question. As this Court explained, "FMCC has cited to no case where a court dismissed a claim because a party relied on a new legal theory to support its claim at summary judgment, let alone any case which states a court is *required* to dismiss a claim under such circumstances." ECF No. 335 at 20 (emphasis in original). Indeed, the Fifth Circuit opinion FMCC highlights in its motion to stay found that the district court ***erred*** by dismissing an unpled ***cause of action*** on summary judgment because the complaint alleged facts consistent with that cause of action. ECF No. 365 at 11 (citing *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 810-11 (5th Cir. 2017)). This is a much easier case; the Trustee does not seek to add an unpled cause of action. And as the Court and FMCC have both acknowledged, the Trustee has continuously relied on the same factual allegations already included in his Complaint.[2]

(ii)    *FMCC will not suffer an irreparable injury if the Court does not issue a stay.*

FMCC must show "injury that 'is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary damages.'" *Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 123 (S.D.N.Y. 2012) (citations omitted). The Fifth Circuit and other courts have "rejected the argument that the time and expense of litigation alone constitutes an irreparable injury." *Peru v. Unisert Multiwall Sys., Inc.*, No. 4:14-CV-773, 2014 WL

---

[2] *See* ECF No. 321 at 17-18 (The Court: "Ford Credit has been on notice of the facts underlying a badges-of-fraud theory of fraudulent intent since this case was filed. Trustee pleaded those facts in his complaint and provided Ford Credit with relevant discovery."), ECF No. 355 at 19 (The Court: "[T]he Trustee continues to rely on the same factual allegations already included in his complaint and the same evidence used to prosecute his claim under the Ponzi-scheme presumption."); and Ex. C, June 8, 2022 Hrg. Tr. at 7:19-8:1 (FMCC: "[T]he very same facts that were pled that you acknowledged in your summary judgment order that are now being called badges of fraud, they are the exact same facts, no different facts").

7338863, at *3 (S.D. Tex. Dec. 22, 2014) (citing *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011)); *see also Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to establish irreparable harm.).

FMCC's alleged "irreparable injury" is that it will be "forced to prepare and defend itself at trial against newly-alleged theories of liability—as to which [FMCC] was denied discovery— while an appeal seeking dismissal of those theories is pending."[3] *See* ECF No. 365 at 11. "[B]eing forced to try a case that one does not believe should be tried" does not constitute irreparable injury. *Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co.*, 779 F.2d 13, 15-16 (7th Cir. 1985); *see also Peru*, 2014 WL 7338863, at *3. This is particularly true given that FMCC was not in fact denied relevant discovery.

> (iii)    *The unsecured creditors will continue to suffer substantial harm and the public interest in orderly administration will not be served if a stay is granted.*

The third factor requires this Court to balance the competing interests of the parties and determine whether the harm to the Trustee or the unsecured creditors outweigh any likely irreparable injury to FMCC absent a stay. *See Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 585 (5th Cir. 2013). Courts generally find that "a significant delay in the administration of an estate, or a delay in the distribution to creditors … satisfies the criterion

---

[3] FMCC also appears to allege that its "fundamental rights to due process and fair notice" will be irreparably harmed if a stay is not granted. ECF No. 365 at 9 ("Where an appellant's rights will be irreversibly abridged, a stay is necessary and appropriate."); *id*. at 10 ("A stay of all remaining deadlines … will … ensure that [FMCC's] fundamental rights to due process and fair notice are protected."). However, these rights are protected by FMCC's ability to appeal a final judgment. *See Caldwell-Baker Co. v. Parsons*, 392 F.3d 886, 888 (7th Cir. 2004) ("The order … is no more a "final decision" than an order denying summary judgment or denying a request for additional discovery; the litigation proceeds and the issue will be reviewed if it turns out to make a difference to an order that is independently appealable."); *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

of harm to other parties." *In re Dernick*, No. 18-32417, 2019 WL 236999, at \*4 (Bankr. S.D. Tex. Jan. 16, 2019). Similarly, courts consider the public interests of the "orderly administration of the debtor's assets" and "satisf[action] of valid claims against the estate" in determining whether the fourth factor has been met. *Id.* at \*5; *see also In re TMT Procurement Corp.*, No. 13-33741, 2014 WL 1577475, at \*6 (Bankr. S.D. Tex. Apr. 16, 2014).

This case has been pending for twenty-nine months—a testament to the success of FMCC's continued delay tactics. The unsecured creditors have remained unpaid for over four years. If the Court grants FMCC a stay to pursue its meritless appeal, those creditors will continue to suffer substantial harm, damaging public confidence in the efficient administration of bankruptcy estates.

## B.    FMCC Has Not Demonstrated "Good Cause" For Modification Of The Scheduling Order Deadlines

Federal Rule of Civil Procedure 16(b) provides that "once [the] scheduling order has been entered, it may be modified only for good cause and with the judge's consent." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). The party seeking relief must show "that the deadlines cannot reasonably be met despite [its] diligence …." *S&W Enters., LLC v. Southtrust Bank, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

FMCC has no reason it cannot be ready for trial on January 17, 2023. Rather, FMCC argues that it would be inconvenient for its counsel to do so. Mr. Sadler has another case set for trial on February 27, 2023, but a trial that *may start after* this Court's trial setting is not a conflict.[4] Mr. Leslie has a personal vacation scheduled in late December 2022 that concludes the first week of

---

[4] There is no guarantee Mr. Sadler's other case will actually be tried in February 2023. As this Court's own experience will confirm, trial settings routinely get moved in federal court for a variety of reasons. One such reason is settlement, and the parties in Mr. Sadler's other case have advised the court in that case that they intend to mediate by December 2, 2022. *See* Ex. E, [Proposed] Fifth Amended Scheduling Order, *Rotstain et al. v. Trustmark et al.*, Case No. 4:22-cv-0800, at ECF No. 1312 and 1312-1.

January 2023. That is not a conflict. Mr. Goldberg has a personal vacation scheduled in January 2023 that might cause him to miss the first day of trial. FMCC offers no explanation for why it needs all three of its "lead trial counsel" to be present on the first day of trial (or why a one-day postponement would not suffice). Mr. Goldberg is attending a wedding that would cause him to miss the provisional trial dates this Court reserved on February 14-17, 2023. But it is not certain those dates will be needed. Even if they are, there is no reason the trial should not commence in January 2023. If more time is needed, the Court can address any scheduling conflicts at that time.[5]

FMCC argues that these "unavoidable conflicts" and "conflicting commitments" will prevent its counsel from having time to prepare for trial. But back-to-back trial settings are common, as are other work and personal commitments. And cases would never get to trial if courts were required to find the most convenient time to accommodate a busy trial lawyer's schedule or otherwise decide which case on a lawyer's docket is most important.

FMCC has failed to demonstrate good cause to move the trial of this case. The Trustee filed the Complaint on June 10, 2020—more than two years and five months ago. During that time, FMCC has moved three times—including now—to continue the trial date over the Trustee's objection. FMCC would seemingly have the Court continue the trial setting indefinitely.[6] There will never be a convenient time for FMCC to try this case. The unsecured creditors have remained unpaid for over four years while FMCC retains hundreds of millions of dollars in fraudulent transfers and preferences; these true victims of Reagor-Dykes' fraud deserve their day in court.

---

[5] FMCC cites to an unreported opinion, *Kaina v. Cnty. of Maui*, No. CIV.04-00608 DAE-LEK, 2007 WL 1153829 (D. Haw. Apr. 18, 2017), for the proposition that FMCC would be prejudiced if forced to trial without the benefit of its chosen trial counsel. As noted above, however, Mr. Sadler and Mr. Leslie do not have a conflict preventing them from attending trial on January 17, 2023. At most, Mr. Goldberg has a conflict on only the first day of trial, which could be addressed without an indefinite postponement of the trial.

[6] According to Mr. Sadler, his other trial—that may or may not start on February 27, 2023—"will take at least 6 weeks; and defendants have represented that the trial may take considerably longer." ECF No. 365-1, Ex. A at ¶ 4.

## C.    FMCC Has Not Demonstrated "Good Cause" For Reopening Discovery

FMCC has not made a showing of "good cause" sufficient for the Court to reopen discovery. FMCC bears the burden of establishing good cause. *See Costa v. Sears Home Improvement Prod., Inc.*, 178 F. Supp. 3d 108, 111 (W.D.N.Y. 2016). Courts in this Circuit typically consider four factors[7] in determining whether "good cause" exists to reopen discovery: "(1) the explanation for the party's failure to meet the [discovery] deadline; (2) the importance of the [discovery sought]; (3) potential prejudice [to the opposing party] if the Court allows the [discovery]; and (4) the availability of a continuance to remedy such prejudice." *Sanford v. Pershing LLC*, No. 3:15-CV-3832-N-BQ, 2022 WL 1590752, at *3 (N.D. Tex. Jan. 14, 2022) (citing *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009)). Each of these factors weighs heavily against reopening discovery at this late date.

### (i)    *FMCC's explanation of its need for post-summary judgment discovery is insufficient to establish good cause*

FMCC seeks to obtain two broad categories of additional discovery. First, FMCC demands responses to the interrogatories, request for production, and 30(b)(6) topics that were the subject of this Court's discovery orders (the "Creditor-Specific Discovery"). *See* ECF No. 365 at 5-7, 15; *see also* ECF No. 201; ECF No. 207. Second, FMCC claims it "must be afforded an opportunity to conduct additional discovery" related to badges of fraud, including "the continued 30(b)(6) deposition of the Trustee, the continued deposition of Lindsay Williams," "supplemental expert discovery," "specific contention interrogatories and requests for admission," "additional witness

---

[7] Other courts also consider "(1) the imminence of trial; [and] (2) whether the request is opposed" in determining whether good cause exists. *See United States v. Prevezon Holdings, Ltd.*, 236 F. Supp. 3d 871, 873 (S.D.N.Y. 2017); *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987); *Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012). Here, trial is imminent, *see* ECF No. 365 at 10 (complaining that it must prepare for a "rapidly approaching trial"), and the Trustee opposes FMCC's request to reopen discovery.

depositions and requests for production," and "additional or supplemental expert disclosures" (collectively, the "New Discovery"). There is no good cause to reopen discovery.

> (a) There is no "changed circumstance" that establishes good cause to reopen discovery.

FMCC's argument that there are "changed circumstances" because the Trustee presented evidence of "badges of fraud" and "actual fraud" theories in response to the motion for summary judgment is inaccurate. No matter how many times FMCC disingenuously asserts it—no matter how vociferously it may do so—the Trustee never disclaimed reliance on circumstantial or direct evidence of fraudulent intent. To the contrary, he specifically affirmed his reliance on both:

> [W]e're relying upon… the guilty pleas from Reagor-Dykes employees who admitted… that Reagor-Dykes did not have the funds to pay Ford, and that is what led them, then, to… engage in these fraudulent schemes, like the check-kiting that occurred, to rob, beg, borrow, and steal from anyone they could to repay Ford…. We allege that there are badges of fraud present here….[8]

As both FMCC and this Court have acknowledged, the Trustee never amended the Complaint and has, at all times, relied on the same factual allegations for his actual fraudulent transfer claim. *See* Ex. C, June 8, 2022 Hrg. Tr. at 7:19-8:1 ("[T]he very same facts that were pled that you acknowledged in your summary judgment order that are now being called badges of fraud, **they are the exact same facts**, no different facts, which were being used to support the Ponzi scheme theory .... So **we're not talking about any new facts**.") (emphasis added). These factual allegations include, as FMCC admits, allegations of actual intent to defraud. *See* ECF No. 258 at 25 ("In his pleadings and discovery responses, the Trustee has cited the Debtors' guilty pleas in support of his fraudulent transfer claim."). These factual allegations also include the various "badges of fraud." *See* ECF No. 321 at 17 ("Ford Credit has been on notice of the facts underlying a badges-of-fraud theory of fraudulent intent since the case was filed."). Importantly, these factual

---

[8] Ex. B, Oct. 14, 2021 Hrg. Tr. at 75:4-13, 81:16-17.

allegations have never included allegations that each transfer was made to harm a specific creditor of Reagor-Dykes other than FMCC itself.[9]

FMCC's argument that "changed circumstances" entitle it to post-summary judgment discovery responsive to the Creditor Discovery Requests is rooted in a faulty premise—that, in the absence of a Ponzi-scheme presumption, the Trustee must prove Reagor-Dykes intended to defraud specific creditor(s) in making each transfer to FMCC.[10] FMCC assumes that because the Trustee disclaimed a creditor-specific analysis, that he also disclaimed all other theories of liability for fraudulent intent outside of the Ponzi-scheme presumption. At the hearing on the discovery motions, counsel for the Trustee challenged FMCC to test this premise: "[I]f Ford thinks that [a lack of creditor-specific evidence] eliminates certain badges of fraud … [or] if they think the absence of [creditor-specific] evidence is important or dispositive, they can file a motion making that argument ...."[11] FMCC accepted this challenge in filing a second motion for summary judgment arguing that the Trustee's fraudulent transfer claim must fail in the absence of the Ponzi-scheme presumption.[12] In seeking a continuance and leave to file the summary judgment motion, FMCC affirmed to the Court that it did not need and that it was not seeking additional discovery.[13]

---

[9] *See* Ex. B, Oct. 14, 2021 Hrg. Tr. at 73:14-15 ("We are not relying on a creditor-by-creditor analysis to prove our case.").

[10] *See* ECF No. 16 at 15 ("Debtors make no effort to plausibly allege how each type of payment was, allegedly, fraudulent or intended to interfere with rights of other creditors."); ECF No. 173 at 5 ("[T]o prove his fraudulent transfer claim, the Trustee must prove that the Debtors actually intended to hinder, delay, or defraud one or more of their other creditors by making each alleged transfer to Ford Credit."); ECF No. 258 at 25 ("The [guilty] pleas … do not even mention individual transfers to Ford Credit, any allegedly targeted creditors, or the Debtors' intentions towards those creditors in making the transfers."); ECF No. 336 at 45 ("The badges-of-fraud and direct-evidence theories … are transfer-specific and focus on the Debtors' other creditors."); App. ECF No. 6-1 ("[I]f [Trustee] now seeks to rely on a non-Ponzi-presumption theory, then there would be a need for that type of creditor-specific discovery.").

[11] *See* Ex. B, Oct. 14, 2021 Hrg. Tr. at 73:16-74:2.

[12] *See* ECF No. 336 at 1; *see also id.* at 11-12, 13-18, 21, 30-32; ECF No. 335 at 11 ("FMCC … argues the evidence fails to show Reagor-Dykes made the transfers to FMCC with the intent to defraud other creditors and thus his fraudulent transfer claim fails.").

[13] *See* Ex. C, June 8, 2022 Hrg. Tr. at 11:6-8 ("If they think they're ready to go to trial on a badges of fraud transfer-by-transfer theory, then it ought to be ready to be tested on a motion for summary judgment.… So, yes, discovery is over.…").

The Court rejected the underlying premise of FMCC's argument:

> While fraudulent transfer actions *typically* target transfers made with intent to defraud creditors other than the transferee, the language of § 548(a)(1)(A) places no limitation on the type of creditor sought to be defrauded, and thus intent to hinder, delay, or defraud *a creditor-transferee* is encompassed by the statute.… Indeed, courts have found transfers to be fraudulent when they were made with intent to defraud *the creditor body as a whole.… [C]ontrary to FMCC's focus on other creditors*, under § 548(a)(1)(A) … fraudulent transfers can include transfers made to defraud a creditor-transferee—in this case, FMCC.

ECF No. 355 at 4, 11-12 (emphasis added).  In other words, the Court affirmed that the Trustee could pursue a "badges of fraud" or "actual intent" case without evidence of Reagor-Dykes' intent towards specific creditors other than FMCC; there has not been a "change of circumstance"[14] that would make creditor-specific discovery any more relevant now than it was before the Trustee filed his first summary judgment response.[15]

        (b)    <u>FMCC failed to diligently pursue the New Discovery Requests</u>

The Trustee's case has not changed. But even if it had, FMCC is still "require[d] … to show that the [discovery] deadlines [could not have been] met despite [its] diligence …." *Puig v. Citibank, N.A.*, 514 Fed.Appx. 483, 487-88 (5th Cir. 2013). A movant's failure to timely move for an extension of discovery deadlines upon discovering "new information" demonstrates a lack of diligence. *See CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No.

---

[14] The three unreported cases FMCC relies on to support its claim that discovery must be reopened due to "changed circumstances" all involve a change in *factual circumstances*, as opposed to the alleged introduction of an alternate method of proving a cause of action pleaded in the original complaint. *See Zilberman v. Caroffer, LLC*, No. 4:15-CV-589, 2016 WL 3060081, at *3 (E.D. Tex. May 31, 2016) (granting extension where "[non-movant] knowingly misrepresented important and material facts" causing movant to be "unable to discover the evidence giving rise to his request … until after the discovery deadline had already passed."); *Cox v. Waste Mgmt., Inc.*, No. CIV.A. H-10-1626, 2011 WL 3875353, at *3 (S.D. Tex. Aug. 31, 2011) (granting extension when there were reasons for party to question the veracity of a declaration submitted in support of summary judgment); *Trimm v. Allstate Ins. Co.*, No. CV H-03-5338, 2007 WL 9736145, at *1 (S.D. Tex. Jan. 16, 2007) (granting extension where non-movant "recently sold the subject resident and … the circumstances associated with that sale may have a bearing upon [non-movant's] damages").

[15] *See* ECF No. 201 at 5-6 ("Nowhere in the Complaint does the Trustee allege specific harm to any particular creditor. The Trustee will either succeed on its theory or not, and unless the Complaint is amended to assert a different theory, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors.").

4:21-CV-182-SDJ, 2022 WL 3718491, at *4-5 (E.D. Tex. Aug. 29, 2022); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV111062JVSANX, 2015 WL 13423891, at *3 (C.D. Cal. June 23, 2015) ("[Movant] cannot claim that it acted diligently when it waited until after losing on an issue at summary judgment to seek the same relief that it could have sought [before]."). For example, in *CHU de Quebec*, which FMCC cites extensively, the court found that the movant had not been diligent in seeking additional discovery where movants did not "offer a reasonable justification for why they waited … nearly three months" to move to reopen discovery after first raising the issue of extending the discovery deadline. *CHU de Quebec*, 2022 WL 3718491, at *4.

Even if the Court credited FMCC's version of when it supposedly learned of a new theory (in spite of all the evidence to the contrary), FMCC would have first learned of the "the four badges of fraud that [Trustee] intends to rely on [at] trial" upon reading Trustee's March 25, 2022 summary judgment response. *See* ECF No. 365 at 16. FMCC complained that it was "prohibited from developing and exploring discovery on" these "four badges of fraud" in its June 8, 2022 motion for leave, *see* ECF No. 329 ¶¶ 3, 6. In its second motion for summary judgment filed on June 29, 2022, FMCC claimed for the first time that the Trustee's "badges-of-fraud and direct-evidence theories" would require "reopening costly fact and expert discovery." ECF No. 336 at 45. According to its own briefing, FMCC waited ***seven months*** from the day it supposedly learned of the alleged "changed circumstances" and ***four months*** after saying it would need additional discovery to move to strike the scheduling order and reopen discovery. FMCC's failure to provide a plausible explanation for its delayed motion to modify the scheduling order demonstrates a lack of diligence. *See CHU de Quebec*, 2022 WL 3718491, at *4; *see also Knoth v. Apollo Endosurgery US, Inc.*, No. 5:18-CV-49-DCB-MTP, 2021 WL 5098285, at *4 (S.D. Miss. Nov. 2, 2021)

(declining to reopen discovery because "[a]nother continuance [was] not warranted to address issues that were or could have been addressed [earlier in the case]").

Worse still, when the Court asked counsel for FMCC whether it had "done all the discovery that [FMCC] need[s]," counsel for FMCC denied needing discovery:

> What I will tell you, from Ford Credit's point of view, discovery is done. Your Honor ruled months and months ago in discovery fights over what the discovery scope was supposed to be…. So *we're not here asking for reopening discovery*, let's start this all over again. We're not asking for that. And I think that would be a terrible waste of the parties' resources, to essentially start all over again. If they think they're ready to go to trial on a badges of fraud transfer-by-transfer-theory, then it ought to be ready to be tested on a motion for summary judgment…. So, yes, *discovery is over*, is the short answer to your question.…

Ex. C, June 8, 2022 Hrg. Tr. at 10:14-11:11 (emphasis added). Having successfully obtained a continuance and the right to file a second motion for summary judgment on the representation to the Court that "discovery is over," FMCC should not be heard on its plea to reopen discovery.

> (ii)    *FMCC does not explain why the requested discovery is important or relevant*

Courts consider whether the movant "provides … facts or argument specifically demonstrating the importance or relevance of the information" sought. *Sanford*, 2022 WL 1590752. Conclusory statements regarding the relevance of the requested discovery are insufficient to establish good cause. *See id.* at *3-4; *see also Warner v. Lear Corp.*, No. 3:15-CV-1878-D, 2017 WL 930829, at *3 (N.D. Tex. Mar. 9, 2017) (denying plaintiff's motion to reopen discovery in part because he failed to describe "what information he seeks, or describe its importance"); *Colony Ins. Co. v. NJC Enterprises*, No. CV 09-763, 2013 WL 12182608, at *4–5 (M.D. La. Dec. 6, 2013) ("Simply referring to certain potential discovery as being 'relevant' is insufficient in persuading the Court to abandon the discovery deadline .…"); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000) (denying additional discovery because

movants "d[id] not state what relevant evidence they expected to uncover with additional discovery").

FMCC claims that it needs the Creditor-Specific Discovery to defend itself against the intent element of the Trustee's badges of fraud case, but it does not state how creditor-specific information will be relevant to rebutting any of the badges the Trustee alleges. The Court's prior orders—including both its ruling on the motion to compel and the second summary judgment opinion—reject the notion that proof of fraudulent intent requires creditor-specific allegations. The Trustee can rely on fraudulent intent towards the transferee (i.e., FMCC) and fraudulent intent towards the creditor body generally. *See, e.g.,* ECF No. 355 at 4.

It bears noting that FMCC has adduced evidence that would allow it to make the arguments it wishes to make. The Trustee has produced the general ledger with every transaction with every creditor, the bank statements, the financial statements, and the adjusted financial statements. The Trustee and Williams have testified that Reagor-Dykes made payments to other creditors. None of that effectively refutes fraudulent intent—but FMCC has the evidence.

Even if FMCC could articulate why every document, contract, email, communication, invoice, receipt, memorandum, and correspondence with every other creditor bears some relevance, the Court already found that requiring Trustee to respond to the Creditor-Specific Discovery would be "unduly burdensome and disproportionate to the needs of this case." ECF No. 201 at 8. This finding is supported by uncontroverted evidence of the burden involved.

FMCC further claims it is entitled to the New Discovery, which includes additional depositions, supplemental and contention interrogatories, requests for production, and supplemental expert discovery, because it "would have sought" this discovery if it "had timely notice" of "the four badges of fraud that [Trustee] intends to rely on [at] trial." ECF No. 365 at 16.

However, FMCC provides no detail as to what information it is seeking through the New Discovery, no explanation of how that information would be relevant, and no legitimate explanation for its failure to seek this discovery previously.

(iii)   *The unsecured creditors will be prejudiced by further delays.*

The third and fourth factors of the good cause test consider whether parties will be prejudiced if discovery is reopened and whether that prejudice may be cured by a continuance. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003). Courts have found that where a party seeks to reopen discovery late in the litigation once the case is "ripe for trial," the third and fourth factors weigh against allowing for modification of the discovery deadline. *See Colony Ins. Co.*, 2013 WL 12182608, at *4.

FMCC's argument that it will be prejudiced if the Court declines to reopen discovery is irrelevant—the appropriate consideration under Fifth Circuit precedent is the "potential prejudice *in allowing the amendment*" to the scheduling order. *See Sw. Bell*, 346 F.3d at 546 (emphasis added). FMCC, recognizing this, also argues that it will be prejudiced even if discovery is reopened. *See* ECF No. 365 at 20. But it relies on cases in which the plaintiff sought to amend its complaint to add a new cause of action in the middle of or immediately before trial—those cases are inapplicable.[16] The unsecured creditor body will be prejudiced by further delay of this case.

---

[16] *See Smith v. EMC Corp.*, 393 F.3d 590, 594 (5th Cir. 2004) (affirming denial of plaintiff's request to amend complaint to add a new cause of action on the last day of trial); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 831 (6th Cir. 1999) (affirming denial of request to add a new cause of action after defendant filed motion for summary judgment); *Prudhomme v. Tenneco Oil Co.*, 955 F.2d 390 (5th Cir. 1992) (reversing district court's decision to permit plaintiff to seek recovery on unpled cause of action even though, some three months before trial, district court itself had ordered dismissal of plaintiff's motion to amend complaint to add the same cause of action). FMCC also cites *PHI, Inc. v. Office & Prof'l Emps. Int'l Union*, in which the court found that defendant's "trial preparation has been substantially prejudiced" and that defendant "has been denied the opportunity to fully explore the specifics of the [plaintiffs'] claims" where plaintiffs repeatedly disobeyed discovery orders and issued sanctions. No. CIV. 06-1469, 2009 WL 1658040, at *5 (W.D. La. June 11, 2009). This case is obviously inapplicable, as the Trustee has not disobeyed any of this Court's orders.

## IV.    CONCLUSION

The Trustee respectfully requests that the Court deny FMCC's motion.

Respectfully Submitted,

**BRACEWELL LLP**

By: */s/ Bryan S. Dumesnil*
Bryan S. Dumesnil
State Bar No. 00793650
bryan.dumesnil@bracewell.com
Bradley J. Benoit
State Bar No. 24012275
brad.benoit@bracewell.com
711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 – Telephone
(800) 404-3970 – Facsimile

**STRICKLIN LAW FIRM, P.C.**

By: */s/ Samuel M. Stricklin*
Samuel M. Stricklin
State Bar No. 19397050
sam.stricklin@stricklaw.pro
2435 N. Central Expy.
Suite 1200, Palisade, Bldg. II
Richardson, TX 75080
(972) 238-8687 – Telephone

**COUNSEL TO APPELLEE/PLAINTIFF
DENNIS FAULKNER,
CREDITORS' TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record by the Court's CM-ECF system on November 14, 2022.

Kevin M. Sadler
State Bar No. 17512450
kevin.sadler@bakerbotts.com
Baker Botts LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
(650) 739-7518 – Telephone
(650) 739-7618 – Facsimile

Craig A. Leslie
cleslie@phillipslytle.com
Jacob S. Sonner
jsonner@phillipslytle.com
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
716-847-8400 – Telephone
716-852-6100 – Facsimile

Michael S. Goldberg
State Bar No. 08075800
michael.goldberg@bakerbotts.com
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
(713) 229-1234 – Telephone
(713) 229-1522 – Facsimile

*/s/ Bryan S. Dumesnil*
Bryan S. Dumesnil