IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

IN RE:

Reagor-Dykes Motors, LP,
Reagor-Dykes Imports, LP,
Reagor-Dykes Amarillo, LP,
Reagor-Dykes Auto Company, LP,
Reagor-Dykes Plainview, LP, and
Reagor-Dykes Floydada, LP,
Reagor Auto Mall, Ltd.,
Reagor-Dykes Snyder, L.P.,
Reagor-Dykes Auto Mall I LLC,
Reagor-Dykes II LLC,
Reagor-Dykes III LLC,

    Debtors,

Case No. 18-50214-rlj-11
Jointly Administered

Dennis Faulkner, Creditors' Trustee,

    *Plaintiff*,

vs.

Ford Motor Credit Company LLC,

    *Defendant*.

Adversary No. 20-05005-rlj

**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S REPLY IN SUPPORT OF MOTION FOR STAY AND AN ORDER STRIKING SCHEDULING ORDER DEADLINES OR, ALTERNATIVELY, AN ORDER REOPENING DISCOVERY AND STRIKING SCHEDULING ORDER DEADLINES**

The Trustee's opposition largely focuses on rehashing (and often mischaracterizing) the record in this case. And where the opposition addresses the relief requested by Ford Credit's motion, it fails to identify any argument or evidence that creates doubt about Ford Credit's entitlement to that relief. Ford Credit is defending itself against a $315-million fraudulent transfer claim and is entitled to a fair adversarial process. The Trustee does not dispute that this includes fair notice of the other side's claims, the right to counsel, and the right to mount a meaningful defense with the aid of discovery. All of these would be honored by granting Ford Credit's motion.

First, the Trustee does not dispute that a stay is necessary to enable the district court to consider Ford Credit's motion for leave for interlocutory appeal, which raises the question of whether Ford Credit had fair notice of the Trustee's new badges-of-fraud and direct-evidence theories. Trying to circumvent that appellate process, the Trustee insists that Ford Credit has failed to establish any of the four stay factors. His arguments depend, however, on a mischaracterization of the record and ignore the points raised by Ford Credit in its motion. Ford Credit's motion for leave to appeal is fully briefed, and it would advance both the goals of fairness and the ultimate resolution of this litigation to allow that process to move forward without interference from a concurrent (and potentially unnecessary) trial.

Second, even if no appeal goes forward, this Court should reject the Trustee's attempt to force Ford Credit to proceed to trial without its lead counsel. Ford Credit's counsel have attested that their other commitments, all of which predated entry of the current scheduling order, will substantially interfere with their ability to prepare for and participate in the trial. The Trustee belittles these conflicts but does not contest their genuineness, nor does he claim that he would be unable to try the case on a different schedule. Moreover, the trial date was changed because the Trustee "alter[ed] his method of proof at the summary judgment stage." Dkt. 355 at 20. Under

2

these circumstances, striking the scheduling order is necessary and appropriate to protect Ford Credit's right to counsel and the integrity of the adversarial process.

Finally, the Trustee identifies no valid reason to deny Ford Credit's alternative motion to reopen discovery. The Trustee cannot first evade discovery by persuading this Court that he is pursuing only the Ponzi-scheme presumption theory, and then—once that theory is dismissed—evade discovery **again** by claiming that Ford Credit does not need it. If the Trustee's initial representations to this Court were correct and only the Ponzi-scheme presumption theory was at issue in this case, then there is no fraudulent-transfer claim left to go to trial. On the other hand, if—as the Trustee now claims—his other theories were always part of this case, then Ford Credit should have been permitted to conduct discovery on those theories all along. The only way to rectify that injustice is to reopen discovery now.

Ford Credit respectfully requests that the Court grant its motion.

## ARGUMENT

**I.   The Trustee fails to overcome Ford Credit's showing that its motion satisfies all four factors for a stay pending appeal**

Ford Credit's motion for leave to appeal is fully briefed, and the Trustee does not dispute that a stay is necessary to permit the district court to resolve that motion and any appeal. The Trustee's arguments that Ford Credit has nonetheless failed to meet the four stay factors mischaracterize both the record and Ford Credit's arguments.

First, the Trustee contends that Ford Credit has not shown a likelihood of success on the merits because, according to the Trustee, "the issue appealed is mostly a factual question over which the bankruptcy court has broad discretion." Dkt. 374 at 12 (quoting *In re Texas Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002)). But the appeal raises a controlling issue of law: whether it was a violation of Ford Credit's fair notice and due process rights to allow the Trustee

3

to inject on summary judgment what this Court described as "previously un-relied-upon" theories of liability. *See* Dkt. 355 at 19.[1]  The Trustee does not dispute that when a legal question is at issue, "the movant more easily satisfies the first element." *In re Texas Equip. Co.*, 283 B.R. at 227.

In the alternative, the Trustee asserts that there is no "substantial ground for difference of opinion as to [Ford Credit's] proposed question." Dkt. 374 at 13.  This too is wrong.  Extensive precedent requires fair notice not only of a party's claims, but of the distinct **theories** supporting them that require analysis of different facts and law or implicate distinct burdens and defenses. *See* Dkt. 365 at 8-11 (collecting cases); *see also Reagor-Dykes Motors, LP*, No. 5:22-cv-00276-C, Dkt. 2 at 13-17 (filed Oct. 25, 2022) (gathering additional authorities). The Trustee argues that the Fifth Circuit's opinion in *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 810-11 (5th Cir. 2017) establishes that a plaintiff may raise even an unpled claim on summary judgment, so long as the complaint alleged facts consistent with that claim.  Dkt. 374 at 13.  But *Jacked Up* merely recognized that allegations in a complaint can constitute adequate notice of a claim.  It in no way condoned what the Trustee is attempting to do here—namely, injecting new theories on summary judgment after both telling the court and defendant that those theories were **not** in the case and successfully resisting discovery on them.  *See* Dkt. 365 at 17-19.

The Trustee next argues that Ford Credit has not shown an irreparable injury because a party is not entitled to a stay merely to avoid the time and expense of litigation or to circumvent a trial it believes is unwarranted. Dkt. 374 at 13-14.  But without a stay, Ford Credit will not merely be required to go to trial.  As Ford Credit has explained, *see* Dkt. 365 at 12-19, it will be forced to

---

[1] The Trustee points this Court to the brief he filed with the district court in support of his opposition to Ford Credit's motion for leave for interlocutory appeal.  *See* Dkt. 374 at 12 & Ex. D.  Ford Credit refuted those arguments in its reply. *In re: Reagor-Dykes Motors, LP, et al.,* No. 5:22-cv-00276-C, Dkt. 8 (filed Nov. 14, 2022).

4

defend itself against a $315-million claim (1) based on two newly-asserted theories of liability (2) on which it was repeatedly denied discovery (3) in a compressed time frame that does not enable it to adequately prepare new defenses (4) without the benefit of all of its lead counsel at and during the lead-up to trial.  Such extraordinary circumstances constitute an irreparable injury, and the Trustee unsurprisingly identifies no contrary authority.[2]

Finally, the Trustee erroneously asserts that the remaining factors—the possibility of substantial injury to other parties and the public interest—are not satisfied because this case has been pending for many months and a stay could delay creditor distributions.  Dkt. 374 at 14-15.  But even if it causes a delay in the short-term, entering a stay so that Ford Credit's appeal can proceed would ultimately enable a more efficient resolution of this case.  The Trustee does not deny that the appeal would dispose of a major issue that would no longer have to be litigated later in the case, and that all parties would benefit from the certainty provided by the appeal.  He also does not contest that if the appeal is resolved in Ford Credit's favor and the Trustee's $315-million fraudulent-transfer claim dismissed, that decision would obviate the need for trial on that claim and both streamline and shorten subsequent proceedings.

Ford Credit's stay request satisfies all four factors and should be granted.

## II. Good cause exists to strike the scheduling order due to the unavailability of Ford Credit's counsel to meaningfully prepare for, and appear at, trial

This Court should also strike the current scheduling order because Ford Credit's counsel have attested that their conflicts will impede their preparations and attendance at trial.

---

[2] The Trustee argues in a footnote that the ability to appeal an adverse final judgment means Ford Credit cannot show an irreparable injury.  Dkt. 374 at 14 n.3.  None of the cases the Trustee cites involve circumstances comparable to this case, where a defendant would be forced to trial without fair notice, discovery, or its chosen counsel. The cited cases do not address the stay factors at all (*see Caldwell-Baker Co. v. Parsons*, 392 F.3d 886 (7th Cir. 2004)), or concluded that there was no irreparable injury because the movant could later be made whole through an award of monetary damages.  *See Enter. Intern., Inc. v. Corporacion Estatal Pterolera Ecuatoriana*, 762 F.2d 464, 472-75 (5th Cir. 1985); *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975).

5

Nothing in the Trustee's response justifies denying this relief to Ford Credit. The Trustee's facile suggestions that Ford Credit simply proceed without some of its lead counsel should be rejected. *See Kaina v. Cnty. of Maui*, No. CIV.04-00608 DAE-LEK, 2007 WL 1153829, at *6 (D. Haw. Apr. 18, 2007) (vacating order denying continuance premised on unavailability of trial counsel). The Trustee does not dispute that he could accommodate a different trial date, a solution that would be fair to all parties. Instead, he asks the Court to simply dismiss the fact that some of Ford Credit's lead counsel will be unable to attend part of the trial. Dkt. 374 at 16. But Ford Credit is entitled to the counsel of its choice, and the Trustee offers no authority to justify curtailing that right. The Trustee also emphasizes that many of counsel's conflicts relate to their ability to prepare for trial, and suggests that such conflicts are of little or no importance. *Id.* Developing strategy and preparing for trial are not minor considerations, however; they are an essential part of counsel's role. Ford Credit's counsel has provided sworn statements that in light of the compressed time between now and January 2023 and the substantial work that will need to be done to prepare brand-new defenses on a complex $315-million claim involving 3,000 individual transfers that spanned two years, counsel's previous commitments will impede their ability to prepare for trial.

Contrary to the Trustee's unsupported contentions, Ford Credit is not seeking to indefinitely delay trial. Ford Credit was prepared to go to trial this past spring and summer on the claims and theories that the Trustee timely disclosed. It met the deadlines set by this Court's prior scheduling orders. And when its counsel made other professional and personal commitments, they respected and prioritized those scheduling orders. If the Trustee had abided by his original Ponzi-scheme presumption theory or timely informed Ford Credit and the Court that he intended to pursue additional theories, then his claim would likely already have been resolved by summary judgment or trial. Instead, the Trustee waited until the summary-judgment stage to assert two new

6

theories. *See* Doc. 365 at 15-16; *see also* Doc. 355 at 20 (order on second motion for summary judgment, acknowledging the Trustee had "alter[ed] his method of proof at the summary judgment stage"). That last-minute pivot by the Trustee—not any decision by Ford Credit or its counsel—is what required the Court to set a new trial date and caused the unavoidable conflict with Ford Credit's counsel's other commitments.

Forcing Ford Credit to trial under the circumstances described above would be enormously and unfairly prejudicial to Ford Credit. Rescheduling trial to a date that permits both parties and their counsel to adequately prepare and participate, in contrast, would meaningfully prejudice no one. Ford Credit's request to strike the existing scheduling order should be granted.

**III.    If this Court declines to grant a stay, good cause exists to reopen discovery.**

Finally, the Trustee's response fails to identify any compelling reason to deny Ford Credit's alternative request to reopen discovery. Reopening discovery is appropriate because Ford Credit made the discovery requests at issue more than a year ago—but they were denied when the Trustee persuaded this Court that he intended to pursue only a Ponzi-scheme presumption theory and that the requests were therefore irrelevant and unduly burdensome. *See* Dkt. 365 at 4-5. In ruling for the Trustee and denying Ford Credit's motion to compel, this Court emphasized that its decision was based on "the Trustee's theory of the case, which rests on the Ponzi-scheme presumption." Dkt. 202 at 5.[3] The Ponzi-scheme presumption is unique because it is the only legal theory under which a party can prove that a transfer was made with actual fraudulent intent **without** engaging in a transfer-by-transfer analysis of the debtors' fraudulent intent—in other words, without the discovery that Ford Credit was seeking. *See id.* at 3-4; *see also* Dkt. 321 at 14-16 (first summary

---

[3] At the same time that he accused Ford Credit of "obscur[ing]" the context of this Court's rulings (Dkt. 374 at 8), the Trustee himself block-quoted the Court's discovery order but left out this key lead-in sentence, in which the court specified that the "theory" the "Trustee will either succeed on" or not was the **Ponzi-scheme presumption theory**. Dkt. 202 at 5-6. It was thus the only theory in the case.

7

judgment order explaining the Trustee's burden of proof under 11 U.S.C. § 548(a)(1)). The Court went on to explain that "[t]he Trustee will either succeed on its theory or not, and unless the Complaint is amended to assert a different theory, there is no need to engage in an analysis of fraudulent intent that requires a transfer-by-transfer account of the Debtors' relationship with other creditors." Dkt. 202 at 5-6. As a result, Ford Credit was barred from conducting discovery on any other theory, including any badges-of-fraud and direct-evidence theories. *See* Dkt. 202 at 3-6; *see also* Dkt. 207 at 3-4.

The Trustee now claims that this Court's discovery orders were "contrary to the Trustee's statements." Dkt. 374 at 7. But the Trustee never told Ford Credit or the Court that, nor does he explain why he allowed them to labor for so long under a supposed misunderstanding. In any event, if Ford Credit is required to go to trial on the Trustee's badges-of-fraud and direct-evidence theories, then it must have a meaningful opportunity to conduct discovery on them—regardless of when they became part of the Trustee's case. If these theories were part of the case all along, then Ford Credit should have been permitted to conduct discovery on them and discovery must thus be reopened. If, on the other hand, the Trustee's badges-of-fraud and direct-evidence theories are new to this case, then they constitute "changed circumstances" that justify reopening discovery. *See* Dkt. 365 at 14-16 (gathering cases); *see also* Dkt. 355 at 20 (order on second motion for summary judgment, acknowledging the Trustee had "alter[ed] his method of proof at the summary judgment stage").[4] Under either scenario, discovery should be reopened.

---

[4] The Trustee mischaracterizes, or misunderstands, the ample authority Ford Credit presented in in support of its request to reopen discovery. The Trustee claims that these cases are inapplicable because they involved plaintiffs that improperly sought to amend their complaints to add a new cause of action immediately before trial, which was prejudicial to the defendant. Dkt. 374 at 24 & n.16. But that is precisely what happened here: the Court's first summary judgment order allowing the Trustee to inject his new theories came just three weeks before trial, seven months after this Court said those theories were not part of this case, and after the close of discovery. *See* Dkts. 202, 207, 321.

The Trustee's other attacks on Ford Credit's motion are similarly without merit. The Trustee claims that reopening discovery is unnecessary because he intends to prove his new badges-of-fraud and direct-evidence theories using the same facts and evidence that he attempted to use in support of his meritless Ponzi-scheme presumption theory. Dkt. 374 at 18-20. That argument is illogical. A plaintiff cannot limit the scope of discoverable evidence to that which it believes favors its side and which it thus intends to use at trial. The Trustee's position is not only unsupported by any authority, but belied by the plain text of the Federal Rules. *See* Fed. R. Civ. P. R. 26(b)(1) ("Parties may obtain discovery regarding **any nonprivileged matter that is relevant to any party's claim or defense** . . . .") (emphasis added). The Trustee's argument also ignores half of the equation: Ford Credit's defenses. Ford Credit is entitled to conduct discovery to uncover any evidence that rebuts the Trustee's claims and supports Ford Credit's defenses. *See* Dkt. 365 at 17-19.

The Trustee next declares that the discovery sought by Ford Credit is irrelevant. Dkt. 374 at 18-19. This Court has already found otherwise, explaining in its order denying Ford Credit's motion to compel that "[u]nder a typical fraudulent transfer action, the type of information sought by Ford Credit here—the identity of the Debtors' creditors, the amount of the Debtors' indebtedness to their creditors, and payments from the Debtors to their creditors—would all be relevant to the issue of fraudulent intent central to a fraudulent transfer claim." Dkt. 202 at 3-4. The only reason the Trustee's claim was "not typical," and thus the only reason the requested discovery was not relevant, was because the Trustee persuaded this Court that "[he] intends to prove fraudulent intent not by the more typical means of proving the badges of fraud or specific harm to other creditors, but rather by proving the existence of a Ponzi or Ponzi-like scheme." *Id.* at 4.

9

The Trustee also points to this Court's statement in that same order that Ford Credit's discovery requests were unduly burdensome, and argues that Ford Credit's requests should be rejected on that ground. *See* Dkt. 374 at 23. The Trustee ignores, however, that this finding was based on the Court's conclusion that the discovery was unnecessary because it did not go to the only theory at issue—i.e., the Ponzi-scheme presumption. Dkt. 202 at 7-8. Now that the presumption is out of the case, there is no sound basis for denying Ford Credit's discovery requests on the grounds of relevance or burden. Instead, Ford Credit should be placed in the position it would have been in had the Trustee timely disclosed his legal theories: it should have a full discovery period to obtain answers to its original discovery requests, as well as to decide based on the Trustee's responses whether any additional discovery is necessary.[5]

Finally, this Court should reject the Trustee's claim that Ford Credit's request to reopen discovery comes too late. Ford Credit made its discovery requests nearly a year and a half ago, in July 2021. Dkt. 173 at 3. Those requests, and Ford Credit's subsequent motion to compel, were denied because the Trustee persuaded this Court that he was pursuing only a Ponzi-scheme presumption theory. *See* Dkts. 202 at 3-6 & 207 at 3-4. Ford Credit therefore—and in accordance with this Court's orders—focused its litigation efforts on that theory, and secured its dismissal on summary judgment. Dkt. 321 at 14-16. Because dismissal of the Trustee's only theory entitled Ford Credit to judgment on the fraudulent transfer claim, Ford Credit filed a second motion for summary judgment seeking that relief. *See* Dkt. 336. This Court disagreed with Ford Credit, and ruled that the Trustee could pursue his new theories at trial. Dkt. 355 at 20. Ford Credit moved to reopen discovery just two and a half weeks later, alongside its motions for leave to appeal and for

---

[5] The Trustee's conclusory statement that Ford Credit already has the evidence it seeks is incorrect. *See* Dkt. 374 at 23. The Trustee generally identifies some categories of documents that he produced in this litigation, but does not explain how those documents are responsive to Ford Credit's requests, nor does he claim that they are the only responsive documents in his possession or control.

10

stay.  Dkts. 363, 365.  Far from being dilatory, Ford Credit has diligently pursued its discovery rights throughout this litigation and despite the Trustee's best efforts at evasion.

The Trustee nonetheless insists that Ford Credit's request is untimely because, according to the Trustee, Ford Credit should have moved to reopen discovery the moment that the Trustee asserted his badges-of-fraud and direct-evidence theories in response to Ford Credit's first motion for summary judgment.  In other words, it is the Trustee's view that Ford Credit was required to waive its right to fair notice and effectively accede to the Trustee's litigation tactics by proceeding as though the Trustee's claims were properly part of the case.  That is wrong.  Ford Credit had every right to resist the Trustee's attempt to inject new theories into the case, and to ask the Court to enforce its discovery orders and dismiss the fraudulent-transfer claim once Ford Credit defeated the Ponzi-scheme presumption theory.  Once this Court ruled against Ford Credit, Ford Credit lost no time in filing its motion to reopen discovery.

Ford Credit has already been prejudiced by the Trustee's belated assertions of two new theories, which—if permitted to proceed to trial—will force Ford Credit to develop entirely new defenses.  By also opposing Ford Credit's request to reopen discovery, the Trustee asks the Court to double-down on that prejudice.  That meritless position is contrary to basic notions of fairness and due process and should be rejected.

## CONCLUSION

Ford Credit respectfully requests that the Court grant its motion.

11

Dated:  November 18, 2022

Respectfully submitted,

BAKER BOTTS L.L.P.

By: /s/ Kevin M. Sadler
    Kevin M. Sadler, Esq.
    1001 Page Mill Road
    Building One, Suite 200
    Palo Alto, CA 943304
    (650) 739-7518 – Telephone
    (650) 739-7618 – Facsimile
    kevin.sadler@bakerbotts.com

    Michael S. Goldberg, Esq.
    910 Louisiana Street
    Houston, TX 77002-4995
    (713) 229-1401 – Telephone
    (713) 229-2801 – Facsimile
    michael.goldberg@bakerbotts.com

PHILLIPS LYTLE LLP

    Craig A. Leslie, Esq.
    Jacob S. Sonner, Esq.
    Admitted Pro Hac Vice
    One Canalside
    125 Main Street
    Buffalo, NY 14203
    (716) 847-8400 – Telephone
    (716) 852-6100 – Facsimile
    cleslie@phillipslytle.com
    jsonner@phillipslytle.com

*ATTORNEYS FOR DEFENDANT*
*FORD MOTOR CREDIT COMPANY LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022, a copy of the foregoing reply was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System ("ECF"). Parties may access this filing through ECF.

                                            */s/ Kevin M. Sadler*
                                            Kevin M. Sadler