IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| IN RE: | |
| Reagor-Dykes Motors, LP, et al. | Case No. 18-50214-rlj-11 |
| Debtors, | Jointly Administered |
| Dennis Faulkner, As Trustee of the Creditors Trust, | |
| *Plaintiff,* | Adversary No. 20-05005-rlj |
| vs. | |
| Ford Motor Credit Company, LLC, | |
| *Defendant.* | |

**CREDITORS' TRUSTEE DENNIS FAULKNER'S BRIEF IN OPPOSITION TO
FORD MOTOR CREDIT COMPANY, LLC'S MOTION TO COMPEL**

Dennis Faulkner, in his capacity as Creditors' Trustee (the "Trustee"), submits this brief in

opposition to the motion to compel ("Motion") filed by Defendant Ford Motor Credit Company

("Ford Credit").

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction ............................................................................................................1

II.    Legal Standard .....................................................................................................2

    A.    Discovery Obligations Generally ...............................................................2

    B.    Contention Interrogatories ........................................................................3

    C.    Requests For Production ............................................................................4

III.    Argument ............................................................................................................4

    A.    The Supplemental Answers To The Interrogatories Fully Comply With
The Trustee's Discovery Obligations And The Court's Discovery Order ..............4

        1.    Supplemental Answer To Interrogatory No. 1 – Direct Evidence ..............4

        2.    Supplemental Answer To Interrogatory No. 1 – Badges of Fraud .............6

        3.    Supplemental Answer To Interrogatory No. 3 ..........................................14

    B.    The Supplemental Response To The Requests For Production Fully
Comply With The Trustee's Discovery Obligations And The Court's
Discovery Order .................................................................................................17

        1.    Request For Production No. 1 ...................................................................18

        2.    Request For Production Nos. 13-16 ..........................................................19

        3.    Request For Production Nos. 18-19 ..........................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
  338 B.R. 546 (Bankr. S.D.N.Y. 2005) ..............................................................17, 19

*Alexander v. Hartford Life & Accident Ins. Co.*,
  Civ. A. No. 3-07-cv-1486-M, 2008 WL 906786 (N.D. Tex. Apr. 3, 2008) ............................8

*Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*,
  No. 3:16-cv-356-WHB-JCG, 2017 WL 11687941 (S.D. Miss. May 9, 2017) ........................3

*Heller v. City of Dallas*,
  303 F.R.D. 466 (N.D. Tex. 2014) ......................................................................................3

*In re Heritage Org., LLC*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009) ..............................................................................5

*InternetAd Sys., LLC v. ESPN, Inc.*,
  No. Civ.A.3:03CV2787-D, 2004 WL 5181346 (N.D. Tex. Oct. 8, 2004) ..............................6

*Janvey v. Greenberg Traurig, LLP*,
  No. 3:12-CV-4641-N-BQ, 2019 WL 13175533 (N.D. Tex. Feb. 12, 2019) ............................6

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) ....................................................................................18

*Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*,
  323 F.R.D. 522 (D.S.C. 2018) ..........................................................................................8

*MGP Ingredients, Inc. v. Mars, Inc.*,
  No. CIV.A.06-2318JWL-DJW, 2007 WL 3010343 (D. Kan. Oct. 15, 2007) .............17, 18, 19

*Moses v. Halstead*,
  236 F.R.D. 667 (D. Kan. 2006)......................................................................................3, 8

*Pressman v. Publix Super Markets, Inc.*,
  No. 06-61350-CIV, 2007 WL 9700560 (S.D. Fla. Oct. 1, 2007) ...........................................17

*Principia Partners LLC v. Swap Fin. Grp., LLC*,
  No. 18-cv-7998, 2019 WL 13249027 (S.D.N.Y. July 18, 2019)..............................................3

*TIG Ins. Co. v. Woodsboro Farmers Coop.*,
  No. 5:18-CV-191, 2020 WL 12573285 (S.D. Tex. Apr. 7, 2020)...........................................7

**Page(s)**

*United States v. The La. Clinic,*
 No. Civ. A. 99-1767, 2003 WL 21283944 (E.D. La. June 4, 2003)........................................3

*In re Wiggains,*
 848 F.3d 655 (5th Cir. 2017) ............................................................................................5, 6

*Willis v. City of Hattiesburg,*
 No. 2:14-cv-89-KS-MTP, 2016 WL 918038 (S.D. Miss. Mar. 10, 2016)................................3

**Statute**

11 U.S.C. § 548(a) .............................................................................................................13

**Rules**

Fed. R. Civ. P. 26(b) ......................................................................................................2, 3

Fed. R. Civ. P. 26(b)(2)(C) .................................................................................................19

Fed. R. Civ. P. 26(g) ......................................................................................................2, 3

Fed. R. Civ. P. 34.................................................................................................................4

Fed. R. Civ. P. 34(b)(2)(E) ..............................................................................................4, 17

**Treatise**

8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal
 Practice and Procedure* § 2213 (2d ed. 1994)........................................................17

## I.    INTRODUCTION

1.    The filing of this motion was as predictable and inevitable as was Reagor-Dykes' demise.  There were no words that the Trustee could have offered in the supplemental responses that would have prevented Ford Credit from asserting—once again—that there is no evidence to support the Trustee's claim.  That the point was to roll out this argument again—and not to remedy insufficient disclosures—was on full display during the parties' "meet and confer."  There was no real effort to resolve a discovery issue; despite persistent requests from the Trustee, Ford Credit refused to offer details of what it believed the Trustee needed to do.

2.    Ford Credit's assertion that it still does not know the factual basis for the Trustee's fraudulent transfer claim or what evidence he intends to offer at trial is nonsense.  Ford Credit has always had notice of the factual bases for the Trustee's claim.  The Complaint spells out Reagor-Dykes' fraudulent scheme and its intent in making the transfers to Ford Credit.  The Trustee extensively briefed his legal theories and the underlying factual support when responding to Ford Credit's two motions for summary judgment.

3.    Before Ford Credit filed its second motion for summary judgment, the Trustee had already filed a trial exhibit list (and provided copies of those exhibits to Ford Credit).[1]  For the Court's convenience (and Ford Credit's), the Trustee's trial exhibits are segregated by categories.[2] In response to the second motion for summary judgment, the Trustee attached 443 of these trial exhibits—in chronological order and annotated—to direct the Court (and Ford Credit) to where in

---

[1] ECF No. 320.

[2] *Id.* (segregating exhibits into the following categories: Factual Resumes & Guilty Pleas, Smith Trial Testimony, Cash Flow Emails, Audit Falsification, Fake Flooring Spreadsheets, Double Flooring Spreadsheets, Check Kiting Emails, Check Kiting Spreadsheets, Expert Reports, BlackBriar Adjusted Financial Work Papers, Dealer Financial Statements, Bank Statements and Spreadsheets, Audits, Registration Data Reports, Department of Motor Vehicle Files, Monthly Wholesale Statements, FMCC Policies, 2010 Field Credit Review, Liquidity, RLOC Draws, Overline, 30 Day No Title, RAM Interco-WTA, Questionable Financials, Sold Not Due, Test Drives, Suspicious Behavior Audit, Changing Audit Dates, FBI, Delaney, Conlan-Emergency Audit, Declarations & Affidavits of FMCC Employees, Settlement, General Partners, and Sentencing Documents).

each exhibit there is evidence of Reagor-Dykes' fraudulent intent in making the transfers.[3]

4.      Against this backdrop—which Ford Credit intentionally disregards—the Trustee supplemented his answer to Interrogatory No. 1 with pages of further explanation of the facts supporting his claim and why those facts give rise to fraudulent transfer liability.  The Trustee also supplemented his responses to Ford Credit's requests for production.  While these supplemental responses—standing alone—more than satisfy the Trustee's discovery obligations, the responses cannot be considered in a vacuum.  Ford Credit knows what the Trustee is alleging, what evidence the Trustee has offered in summary judgment, what evidence the Court has found presents a fact issue for trial, and what evidence the Trustee intends to offer at trial to prove his claim.

5.      Ford Credit's motion is a third motion for summary judgment masquerading as a discovery dispute.  No matter how often and vehemently Ford Credit falsely claims that there is no support and that there are no details, the Trustee's claim is properly pled, properly disclosed, properly evidenced, properly supported by legal authority, and properly postured for trial.

## II.      Legal Standard

### A.      Discovery Obligations Generally

6.      Federal Rule of Civil Procedure 26(b) generally permits discovery of any nonprivileged matter that is both "relevant" and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  To this end, Rule 26(g) imposes an affirmative duty on each party's attorney before conducting discovery to make a reasonable inquiry to inform its belief that each discovery request is "not interposed for any improper purpose, such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation, and [is] neither unreasonable nor unduly burdensome or expensive, considering [among other things] the needs of the case [and] prior discovery in the

---

[3] ECF No. 341-1.

case." Fed. R. Civ. P. 26(g); *Heller v. City of Dallas*, 303 F.R.D. 466, 477 (N.D. Tex. 2014) ("Rule 26(g) was enacted 'to eliminate one of the most prevalent of all discovery abuses: kneejerk discovery requests served without consideration of cost or burden to the responding party.'")

7.       "At some point . . . discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute." *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, No. 3:16-cv-356-WHB-JCG, 2017 WL 11687941, at *2 (S.D. Miss. May 9, 2017) (citing *Willis v. City of Hattiesburg*, No. 2:14-cv-89-KS-MTP, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016)).  Accordingly, the court "must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information . . . ." Fed. R. Civ. P. 26(b).

**B.       Contention Interrogatories**

8.       Contention interrogatories allow a party to "seek information about the factual bases underlying the claims and contentions of an adverse party." *Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18-cv-7998, 2019 WL 13249027, at *6 (S.D.N.Y. July 18, 2019).  When responding to a contention interrogatory, a party need only state the "material" or "principal" facts that support each contention.  *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) (holding that an interrogatory was "overly broad and unduly burdensome on its face to the extent it asks [responding party] to state 'all' facts that support each [contention]").  The serving party cannot "make [the responding party] 'try [its] case in the context of a response to interrogatories.'" *Consumer Fin.*, 2017 WL 11687941, at *4 (quoting *United States v. The La. Clinic*, No. Civ. A. 99-1767, 2003 WL 21283944, at *6 (E.D. La. June 4, 2003)).

C.    **Requests For Production**

9.     Rule 34 provides that a party must either "produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E) (emphasis added); *see also* Fed. R. Civ. P. 34 advisory committee's note (1980) (the two-alternative approach was taken in response to the frequent practice of parties deliberately mixing critical documents with others for the purpose of obscuring their significance).

### III.    Argument

A.    **The Supplemental Answers To The Interrogatories Fully Comply With The Trustee's Discovery Obligations And The Court's Discovery Order**

1.    *Supplemental Answer To Interrogatory No. 1 – Direct Evidence*

10.    Ford Credit complains that the Trustee's supplemental answer to Interrogatory No. 1 "does not identify any of the 'direct evidence' of the Debtors' fraudulent intent which the Trustee has repeatedly claimed exits." ECF No. 386 at 17.[4]  As a threshold issue, Interrogatory No. 1 does not even ask the Trustee to identify and distinguish between direct and circumstantial evidence:

> Describe in detail the factual basis for your allegation in Paragraph 60 of the Original Complaint that "[e]ach of the Transfers [to FMCC] was made with the actual intent of Debtors to hinder, defraud or delay their existing and/or subsequent creditors."  Your answer should separately identify each creditor that the Debtors allegedly intended to hinder, defraud or delay in making each Transfer to FMCC.[5]

Similarly, the Court's order for the Trustee to supplement his answer to Interrogatory No. 1 did not require the Trustee to distinguish between direct and circumstantial evidence:

> Without limiting the Trustee's obligation under paragraph 1 above, the Trustee shall supplement his response to Interrogatory 1 to state his factual bases for his

---

[4] The references to page numbers in an ECF document is to the ECF page number as opposed to any page number on the original document.

[5] ECF No. 386-1 at 3.  The Trustee objected to the second sentence of Interrogatory No. 1.

contention that the transfers to Ford Credit were made with actual intent to hinder, delay, or defraud Reagor-Dykes' existing or subsequent creditors, or both.[6]

The Trustee's supplemental answer fully responded to the interrogatory and complied with the Court's order.

11.     Although Interrogatory No. 1 does not require it, the Trustee previously identified and offered direct evidence of intent in response to Ford Credit's second motion for summary judgment:

- The factual resumes and guilty pleas of Smith and the other former Reagor-Dykes' employees;[7]

- Shane Smith's affidavit;[8]

- Shane Smith's trial testimony;[9]

- Lindsay Williams' testimony;[10] and

- Reagor-Dykes' contemporaneous statements.[11]

12.     The parties disagree about the import of this evidence, including whether the items provide direct or circumstantial evidence of intent,[12] but that debate concerns how the Court will

---

[6] ECF No. 383 at 6.

[7] ECF No. 341 at 33-35.  The factual resumes were included on the Trustee's Exhibit List (ECF No. 320) at PX0001-PX0026-2.  The Trustee also included the factual resume and guilty plea of Steven Anthony Reinhart (PX0026-3 and PX0026-4), but the Court has since held that these items concerning Reinhart will not be admissible during trial because the charge against him did not require intent as an element of the crime.  ECF No. 354 at 4-5.

[8] *Id*. at 35-36.  Although the Court noted that the statements in Smith's affidavit are "better characterized as circumstantial evidence of Reagor-Dykes' intent in making payments to FMCC" (ECF No. 355 at 6), the Trustee reserves the right to argue that these statements—when considered in concert with Smith's factual resume and guilty plea, as well as contemporaneous records and emails created by Smith—properly constitute direct evidence of intent.

[9] The Court denied admission of Smith's trial testimony even though the circumstances "support[ed] the truthfulness of Smith's testimony" because the Court found that "other evidence better relates to the transfers made by Reagor-Dykes" and because the "Trustee [failed] to show that Smith's testimony is 'more probative' than any other evidence of Reagor-Dykes' intent when making transfers to FMCC."  ECF No. 354 at 3.

[10] ECF No. 341 at 37-38.  In discussing the direct evidence the Trustee offered, the Court found that Lindsay Williams' deposition testimony "raises an issue of material fact of Reagor-Dykes' actual intent when making payments to FMCC."  ECF No. 355 at 7.

[11] ECF No. 341 at 38-40.  These contemporaneous records were also identified using the trial exhibit numbers from the Trustee's Exhibit List.  ECF No. 320.

[12] Ford Credit once again misstates the holdings in *In re Wiggains*, 848 F.3d 655, 661, 662 (5th Cir. 2017) and *In re Heritage Org., LLC*, 413 B.R. 438, 470 (Bankr. N.D. Tex. 2009) to argue that direct evidence is "generally an admission by the transferor that it intended for the transfer to hinder, delay, or defraud its creditors."  ECF No. 386

ultimately weigh the evidence.  That is a determination to be made at trial, not through a motion

to compel.  And it is beyond the scope of discovery to require the Trustee to parse through every

email and deposition transcripts to identify what constitutes direct evidence versus circumstantial

evidence.  It is evidence of fraudulent intent, and Ford Credit knows what it is.

### 2.    *Supplemental Answer To Interrogatory No. 1 – Badges of Fraud*

13.    Ford Credit served a contention interrogatory asking the Trustee to provide "the

factual basis for [the Trustee's] allegation" that the transfers to Ford Credit were made with

fraudulent intent.[13]  The Trustee provided a description of those facts in his supplemental answer,

and he explained why those facts support the allegation.  Now, Ford Credit complains that the

Trustee's answer relies solely on "legal argument" that is "unsupported by any evidence identified

or produced by the parties in this case."[14]

14.    Ford Credit's complaint about the Trustee providing legal explanations is curious;

a contention interrogatory by its very nature calls for the Trustee to explain why the facts identified

support his legal claim.  *See Janvey v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N-BQ, 2019

WL 13175533, at *5 (N.D. Tex. Feb. 12, 2019) ("'[C]ontention interrogatory' . . . usually refers

to 'an interrogatory that asks a party to . . . take a position or explain or defend the position

concerning how the law applies to facts, or state the legal or theoretical basis for a contention.'")

(quoting *InternetAd Sys., LLC v. ESPN, Inc.*, No. Civ.A.3:03CV2787-D, 2004 WL 5181346, at *2

(N.D. Tex. Oct. 8, 2004)).

15.    Ford Credit's assertion that the Trustee's claims are "unsupported by any evidence"

illustrates how baseless the Motion is.  How could it possibly be that the Trustee's claims are

---

at 17.  As the Trustee previously explained, the Fifth Circuit ruled in *In re Wiggains* that direct evidence need not
specifically admit fraudulent intent and that a denial of intent is not conclusive.  ECF No. 341 at 40-43.

[13] ECF No. 386-1 at 3.

[14] ECF No. 386 at 18.

unsupported by any evidence when the Court has previously evaluated that evidence and found

that it raises a fact issue to be tried?  The Court has done so twice.[15]  Ford Credit makes these

arguments with utter disregard for those rulings.

16.      Ford Credit argues that the Trustee's description of the fraud is "irrelevant and non-

responsive because, as this Court previously held, the Debtors' fraud does not presumptively

establish their intent in making transfers to Ford Credit."[16]  But this ignores the other part of the

Court's holding: that "a fraudulent scheme can be circumstantial evidence of a debtor's intent to

hinder, delay, or defraud."[17]  The Court has also held that payments made in furtherance of a

fraudulent scheme for the purpose of expanding and concealing the fraud can demonstrate intent.[18]

The Trustee's description of Reagor-Dykes' fraud is both responsive and highly relevant.[19]

17.      Ford Credit complains that "the Trustee's supplemental answer does not

specifically identify any documents or information to support his speculative characterization of

the Debtors' knowledge or intent."[20]  While Ford Credit's complaint is factually inaccurate, it

bears noting (in light of the burdens Ford Credit seeks to impose) that a party responding to a

contention interrogatory is not obligated to provide "a detailed and exhaustive list of all evidence

that may be offered . . . ."  *TIG Ins. Co. v. Woodsboro Farmers Coop.*, No. 5:18-CV-191, 2020

---

[15] ECF Nos. 321 and 355 (the Court's Memorandum Opinions denying Ford Credit's summary judgment motions).

[16] ECF No. 386 at 18.

[17] ECF No. 383 at 5 (citing to ECF No. 355 at 11-14).

[18] ECF No. 355 at 12-14.

[19] Ford Credit suggests that the Trustee's description of Reagor-Dykes' fraud is "in several instances, factually incorrect," without providing any example.  ECF No. 386 at 18.  The evidence of the fraud is voluminous and clear.

[20] ECF No. 386 at 19.  Ford Credit also takes issue with the Trustee referring to and incorporating by reference into his supplemental answer the Trustee's summary judgment briefing that previously detailed the fraud.  *Id.*  Ford Credit fails to acknowledge that the Trustee also incorporated by reference the exhibits to the briefing, which were numerous, and in 443 instances, annotated to identify where in each exhibit the Court would find evidence of intent. What benefit to the judicial process would it afford for the Trustee to copy and paste its prior briefing, or attach its previous exhibits, to the discovery responses?  Discovery is about obtaining information, and Ford Credit has the information.

WL 12573285, at *3 (S.D. Tex. Apr. 7, 2020) (internal quotations and citations omitted).  The

responding party need only "generally explain the factual basis for each [of the contentions] . . ..

That is all the interrogatories require." *Alexander v. Hartford Life & Accident Ins. Co.*, Civ. A. No.

3-07-cv-1486-M, 2008 WL 906786, at *4, (N.D. Tex. Apr. 3, 2008); *see also Mach. Sols., Inc. v.*

*Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018) (contention interrogatories

should seek only "principal or material facts" supporting claim or defense) (citing *Moses v.*

*Halstead*, 236 F.R.D. 667 (D. Kan. 2006)).

18.      Standing alone, the Trustee's supplemental answer to Interrogatory No. 1 easily

satisfies this obligation.  But as noted above, the Trustee previously identified—and in great

detail—precisely which documents support his allegation of intent.  Ford Credit already knows

where to find them, but the Trustee will identify them again:

The Trustee's Exhibit List[21]

- Factual resumes & guilty pleas: PX0001—PX0026-3

- Cash flow emails: PX0028—PX0086

- Audit falsification: PX0087—PX0125

- Fake flooring spreadsheets: PX0126—PX0137

- Double flooring spreadsheets: PX0138—PX0198

- Check kiting emails: PX0199—PX022

- Check kiting spreadsheets: PX0223—PX0486

- Expert reports: PX0487—PX0488

- BlackBriar adjusted financial work papers: PX0489—PX0506

- Dealer financial statements: PX0507—PX0705

- Bank statements and spreadsheets: PX0706—PX1010

---

[21] ECF No. 320.

- DMV files: PX1011—PX1105

- 2010 Field Credit Review: PX1304—PX1315

- Liquidity: PX1316—PX1330

- RLOC draws: PX1331—PX1336

- Overline: PX1337—PX1357

- RAM-Interco-WTA: PX1358—PX1368

- Sold not due: PX1377—PX1402

- Test drives: PX1403—PX1419

- Suspicious behavior audit: PX1420—PX1434

- Changing audit dates: PX1431-1—PX1448

- Delaney: PX1450—PX1463

- Conlan-Emergency Audit: PX1464—PX1490

- Sentencing documents: PX1503—PX1519

<u>The Trustee's Exhibits in Response to First Motion for Summary Judgment</u>

- Exhibits A-1—A-2, A-4, A-8[22]

- Exhibits B-1—B-13[23]

<u>The Trustee's Exhibits in Response to Second Motion for Summary Judgment</u>

- Exhibits A-1—A-13, A-15, A-17—A-18[24]

- Exhibits B-1—B-443 (annotated)[25]

<u>The Trustee's Deposition Excerpt Designations</u>

- Lindsay Williams[26]

---

[22] ECF No. 288-1.
[23] *Id*.
[24] ECF No. 341-1.
[25] *Id*.
[26] ECF No. 317 at 32.

Affidavits

- Affidavit of Shane Smith[27]

19.    Ford Credit also strikes up its common refrain about the number of transfers to suggest that the Trustee is seeking a blanket presumption or inference of intent, only to remind the Trustee what he already knows—that "the Trustee will need to prove that each transfer was made with the requisite intent."[28]  The Trustee understands his burden, and he is not asking the Court to apply a blanket presumption.  But as the Court previously held:

> This does not mean, however, that evidence of fraudulent intent must specifically mention every transfer sought to be avoided or that evidence of intent cannot apply to numerous transfers.  Courts have relied on evidence of intent spanning a specific time period to determine that large numbers of transfers during that time were made with intent to hinder, delay, or defraud.[29]

Having disclosed the factual and legal bases for his claim, the Trustee is ready to present the evidence at trial to demonstrate that each of the transfers to Ford Credit during the two years preceding the bankruptcy were made with fraudulent intent.  Ford Credit can argue otherwise at trial, but the relevant question for this motion is whether the Trustee adequately described his claim and the bases for it.  The answer is yes.

20.    In an effort to provide Ford Credit even more information than the rules require, the Trustee also included an exhibit to his supplemental answer to Interrogatory No. 1 that identified every transfer between Reagor-Dykes and Ford Credit by debtor, date, and dollar amount.[30]  With this information, the Trustee identified a subset of transfers in the timeframe of

---

[27] ECF No. 337-7, App. 952-58.  Ford Credit procured Shane Smith's affidavit, wherein he admitted that Reagor-Dykes had "insufficient cash to fund normal operations," and that he "engaged in 'check-kiting' in order to cover up the fraud against FMCC." *Id.* at App. 956 ¶¶ 12-13.

[28] ECF No. 386 at 19 (citing to the Court's discovery order, ECF No. 383 at 4).

[29] ECF No. 355 at 3-4.

[30] ECF No. 386-1 at 7-9.  The exhibit can be found in the Expert Report of Robert Reilly, at Exhibit 32a, which was provided to Ford Credit on January 4, 2021.

the audits.[31]  The Trustee then provided detailed factual information about the lengths that Reagor-Dykes went to during these time periods to make payments to Ford Credit to conceal and further Reagor-Dykes' fraud.[32]

21.     Ford Credit argues that this 14-day time period is "arbitrary" (ECF No. 386 at 10), but Ford Credit knows better.  Reagor-Dykes was obligated to repay Ford Credit the earlier of when Reagor-Dykes received payment for a vehicle or seven processing days after the sale.  In denying Ford Credit's second motion for summary judgment, the Court cited to Lindsay Williams's testimony that Reagor-Dykes made large payments before audits "so that the number of vehicles that had to be located and accounted for would be reasonable[.]").[33]  To hide that vehicles were missing (or never existed in inventory) during an audit, Reagor-Dykes presented "dummy shucks" to the auditors and claimed that millions of dollars in vehicles had been sold in the seven days preceding the audit.[34]  Then, after the audit, Reagor-Dykes had to pay off these "sold not due" vehicles within seven processing days of the claimed date of these fictitious sales.[35]  The amount of money transferred to Ford Credit during the 14-day time period surrounding the audits bears out the significance of what was occurring; the transfers during these time periods were significantly higher than during the weeks in which no audit occurred.

22.     Ford Credit complains that the Trustee relies on nothing more than "legal conclusions and wholly unsupported conclusory claims" concerning Reagor-Dykes' intent in making transfers around the time of audits.[36]  The problem with this argument is twofold.  First,

---

[31] *Id.*
[32] ECF No. 386-1 at 7-9.  The net transfers associated with the audits and those that occurred during January 22, 2018 until July 31, 2018, to the best of the Trustee's current knowledge, total $175,596,885.34.  *Id.* at 9.
[33] ECF No. 355 at 20.
[34] ECF No. 341, Trustee 2nd MSJ Cntr. App. 227-228, 247, Ex. A-15, Williams Dep. at 87:7-88:1, 107:3-11.
[35] ECF No. 341, Trustee 2nd MSJ Cntr. App. 251, Ex. A-15, Williams Dep. at 111:13-24.
[36] ECF No. 386 at 20.

the Court has already found that Reagor-Dykes' large payments to Ford Credit before audits "gives rise to a question of fact of whether the payments were made . . . for the purpose of concealing and furthering Reagor-Dykes' fraud."[37] Second, Ford Credit ignores the evidence the Trustee has produced during discovery and identified on his trial exhibit list. During the days surrounding the time of audits (or anticipated audits, which were sometimes put off until a later date at Reagor-Dykes' request), contemporaneous documents demonstrate that Reagor-Dykes made these payments to Ford Credit to perpetuate the fraud and to evade detection.

23.    The Trustee attaches a demonstrative as Exhibit A that takes the exhibit attached to his supplemental answer and adds to it (by trial exhibit number) examples of evidence the Trustee intends to rely on during trial concerning this subset of transfers.[38] This additional information goes well beyond what is required in discovery, and Ford Credit has had the same evidence since the parties exchanged trial exhibits in June 2021.[39]

24.    The Trustee also identified a subset of transfers beginning January 22, 2018, when Reagor-Dykes was conducting a significant volume of check kiting on a daily, or near daily, basis.[40] Ford Credit asserts that the supplemental answer "does not provide any evidence linking the alleged check kiting to the Debtors' actual intent in making those transfers or a nexus (other than an arbitrary six-month period) between those transfers and the Debtors' fraud."[41] It is hard to take this assertion seriously. Ford Credit itself has adduced evidence that the wrongdoers check

---

[37] ECF No. 355 at 16 (citing to Lindsay Williams' testimony that Reagor-Dykes made large payments before audits "so that the number of vehicles that had to be located and accounted for would be reasonable[.]").

[38] Because Exhibit A is a demonstrative exhibit prepared for trial, and because the trial will not commence until June 2023, the demonstrative is a work in progress. The Trustee reserves the right to add to it and otherwise refine it before trial. Exhibit A has a key at the bottom of the first page that provides a description of the nature of the conduct described in the referenced exhibits.

[39] The identification of a subset of transfers does not, as Ford Credit asserts, reflect a concern that the Trustee cannot prove intent for all of the transfers; the Trustee is permitted to pursue both the full claim and subsets of it.

[40] ECF 386-1 at 9.

[41] ECF 386 at 10.

kited because Reagor-Dykes did not have the money to pay Ford Credit and Reagor-Dykes needed to make the payments to avoid detection.[42]  Lindsay Williams so testified,[43] and, as shown on the demonstrative attached as Exhibit A, there are lots of contemporaneous documents during this period that the Trustee has identified that document this fact.  This period was not selected arbitrarily; it was identified based on the evidence—evidence that the Trustee has previously described and disclosed to Ford Credit.

25.     Ford Credit finally complains that the Trustee does not "attempt to distinguish the hundreds or thousands of irrefutably legitimate transfers from the Debtors to Ford Credit timely paying off amounts legitimately owed."[44]  The Trustee presumes that Ford Credit is referring to the fact that Reagor-Dykes had legitimate car sales, a fact the Trustee does not deny.  But Section 548(a) of the Bankruptcy Code concerns the intent of the debtor in making the transfer; it does not depend necessarily on how the funds were obtained.  Indeed, fraudulent transfers often involve money legitimately earned or procured but transferred to another with fraudulent intent.

26.     And as to the reference to "amounts legitimately owed," the Court has already ruled—consistent with the law—that transfers to pay legitimate debts can still constitute fraudulent transfers if "made as part of and in furtherance of the fraudulent scheme."[45]  The Court noted that whether the transfers "furthered or, instead, are a byproduct of Reagor-Dykes' fraudulent scheme is an intensely factual inquiry."[46]  Resolving that factual inquiry is done at trial, not through contention interrogatories.  The Trustee has disclosed the bases for his contention that each of the

---

[42] *See, e.g.*, ECF No. 337-7, App. 956 at ¶¶ 12-13 (Shane Smith admitting that Reagor-Dykes had "insufficient cash to fund normal operations," and that he "engaged in 'check-kiting' in order to cover up the fraud against FMCC").

[43] ECF No. 341, Trustee 2nd MSJ Cntr. App. 251, 278-79, Ex. A-15, Williams Dep. at 111:19-24, 138:20-139:19 (vehicle proceeds were "long gone" when payoffs were required after audits and Reagor-Dykes was able to make payoffs through check kiting).

[44] ECF No. 386 at 16.

[45] ECF No. 355 at 11-12.

[46] *Id*. at 14.

transfers was made as part of and in furtherance of a fraudulent scheme with knowledge that achieving solvency was futile and "only to delay inevitable collapse, thus intending to defraud (or hinder or delay) creditors and delay potential recovery."[47]

27.     Further, the payments to Ford Credit were made daily on an aggregated basis and paid from commingled accounts that contained proceeds of Reagor-Dykes' fraud.[48]  To the extent Ford Credit wanted to argue that some of the transfers were made using the proceeds of its collateral, Ford Credit had the burden to trace those funds.  But as the Court noted in denying Ford Credit's first motion for summary judgment, "Ford Credit has made no attempt at tracing."[49]

### 3.     *Supplemental Answer To Interrogatory No. 3*

28.     Interrogatory No. 3 asks the Trustee to "identify any individual who was involved in the Debtors' business dealing with each creditor identified in Interrogatory No. 1, or any individual who would have knowledge of the Debtors' business dealing with that creditor, on or after August 1, 2016."  In his supplemental answer to Interrogatory No. 3, the Trustee incorporated *both* his supplemental answer *and* objection into Interrogatory No. 1.[50]  In answering Interrogatory No. 1, the Trustee identified "(1) Lindsay Williams, (2) Shane Smith, [and] (3) the other former Reagor-Dykes' employees who pled guilty and provided factual resumes acknowledging what occurred at Reagor-Dykes with respect to these transfers."[51]  Ford Credit has known the identity of these individuals for years.

---

[47] *Id*. at 12.
[48] ECF No. 321 at 19 ("Trustee, on the other hand, has provided evidence that Reagor-Dykes paid Ford Credit from general operating accounts that consisted of proceeds of Ford-Credit collateral that were commingled with other funds.").
[49] *Id*. at 20-21 ("By showing the transfers came from commingled general operating accounts over which Reagor-Dykes had complete control, Trustee has shown that the funds came from property of the estate from which other 'creditors could have sought payment.'  Thus, just as Ford Credit had the burden of tracing trust funds, it also bears the burden of tracing the proceeds of its collateral to prove it retained a security interest in the proceeds.  Ford Credit has made no attempt at tracing.") (citations omitted).
[50] ECF No. 386-1 at 32.
[51] *Id*. at 29.

29.    Despite sitting idly during the initial discovery period—and despite the Trustee's repeated suggestions that Ford Credit should depose the former Reagor-Dykes employees that perpetrated the fraud if Ford Credit wanted more discovery[52]—Ford Credit now argues that it is "entitled to discovery concerning any direct evidence of the Debtors' entirely ***non-fraudulent*** intent in making transfers to Ford Credit."[53]  This is an interesting position for Ford Credit to take; from day one in the bankruptcy cases, Ford Credit has alleged that Reagor-Dykes acted with fraudulent intent.[54]  And not just fraud apart from the fraudulent transfers; Ford Credit obtained and submitted affidavit testimony from Shane Smith confirming that the transfers were made to Ford Credit in furtherance of and to conceal the fraud.[55]  But if Ford Credit was serious about wanting to discover if there was "non-fraudulent intent" in making the transfers, it has always known the individuals to depose.  Ford Credit has made no effort to do so.

30.    The Trustee properly objected to Interrogatory No. 3 in his initial answer, and again in his supplemental answer, to the extent it calls for discovery concerning Reagor-Dykes' dealings with other creditors.  The Trustee has consistently asserted that such discovery is irrelevant because the Trustee is alleging general harm to the creditor body.  As explained in the supplemental answer:

> The Trustee continues to object to requests seeking information about particular creditors.  As the Trustee explained in his letter to the Court on November 22, 2022, [ECF No. 382], "the Court previously held that this discovery was not relevant and was disproportionate to the needs of the case, noting that [n]owhere in the

---

[52] *See e.g.*, Trustee's Motion for Protection, ECF No. 164 at 11; October 10, 2021 Hearing Transcript at 37:20-38:2, 58:14-24; December 29, 2021 Hearing Transcript at 14:17-15:1 ("And on the record, I said at that time, at that [October 10, 2021] hearing, that the Trustee would not oppose a motion by Ford for leave to go depose any of these incarcerated individuals if they wanted to do so.  And despite that, they've sat on their hands for months, and they're still doing so.  But I'll make the same offer today, because there's still time in the schedule.  If Ford wants to go talk to any of these witnesses, we will not oppose a motion for leave to seek their depositions.").

[53] ECF No. 386 at 15 (emphasis in original).

[54] *See, e.g.*, Case No. 18-50214, ECF No. 47 ("This may be one of the largest floor-plan-financing frauds in the history of the United States."); ECF No. 16 at 11, Ford Credit's Brief in Support of Motion to Dismiss (referencing "***fraud committed by the Debtors against Ford Credit***" and "fraud *against* Ford Credit" (emphasis is original); ECF No. 258 at 2, Ford Credit's Brief in Support of Motion for Summary Judgment ("the Debtors ***defrauded Ford Credit***") (emphasis in original).

[55] The Court characterized Smith's affidavit testimony as "circumstantial evidence of Reagor-Dykes' intent in making payments to FMCC." ECF No. 355 at 5-6.

Complaint does the Trustee allege specific harm to any particular creditor' and `[s]uch a Herculean task may be warranted were this a typical fraudulent conveyance action where specific harm to other creditors was alleged.' ECF No. 201 at 5, 7. These statements the Court made remain true today with or without a Ponzi-scheme presumption." The Trustee continues to maintain that this portion of the interrogatory is objectionable for all the reasons previously stated.

Identifying each of the Debtors' creditors is not relevant to any claims and defenses in the case and requiring the Trustee to compile the information is overly burdensome and disproportionate to the needs of the case. *See* ECF No. 186. To be sure, identifying every creditor of the Debtors during the two years leading up to the bankruptcy remains a "Herculean"—if not impossible—task. But for more than a year, FMCC has had access to the Debtors' monthly general ledgers (containing tens of thousands of journal entries each month) and monthly bank statements totaling more than 30,000 pages (and also containing tens of thousands of transactions each month). Additionally, FMCC has had access to the publicly available information in the Claims Register in the bankruptcy case and the results of the claims objection work—that FMCC insisted the Trustee prosecute—all of which is publicly available. This information provides FMCC with the identification of a substantial portion of the Debtors' creditors.[56]

The Trustee concluded his objection by noting that:

Despite having this information, and despite the numerous opportunities FMCC has had to explain the relevance of its requests, FMCC has offered no explanation of how any creditor's identity or information (other than that pertaining to FMCC, which has been fully discovered) would be relevant to FMCC's defense of the Trustee's claims. FMCC has done nothing with the information concerning other creditors that it has had for a long time, it has offered no explanation of why it needs more, and FMCC has not narrowed its requests in any way. It appears that FMCC continues to insist on this information only to impose undue and disproportionate burdens and costs on the Trustee.[57]

31.     The Court has previously held that discovery concerning Reagor-Dykes' dealings with other creditors is not relevant and is disproportionate to the needs of the case.[58] The Court's ruling remains correct. Even so, Ford Credit has known the identify of a substantial number of Reagor-Dykes' creditors since the inception of the bankruptcy cases. Not only has Ford Credit

---

[56] ECF No. 386-1 at 9-10. The Trustee also incorporated by reference in his objection ECF No. 186 (Trustee's Brief in Opposition to FMCC's Motion to Compel Discovery [ECF. No. 172]) (including Ex. A, Dumesnil Affidavit).
[57] *Id*. at 10.
[58] ECF No. 201 at 5, 7.

done nothing with this information, but it has also failed to explain how the identity of or further discovery about Reagor-Dykes' dealings with other creditors would be relevant to FMCC's defense of the Trustee's claims; it would not be.  And even it that information was relevant, Ford Credit has also known about the individuals who were running Reagor-Dykes and who would therefore be knowledgeable about its dealings with other creditors.  But again, Ford Credit has declined to depose those individuals.

**B.      The Supplemental Response To The Requests For Production Fully Comply With The Trustee's Discovery Obligations And The Court's Discovery Order**

32.      Ford Credit complains that it cannot find documents the Trustee produced in response to Ford Credit's requests for production because the Trustee did not specifically identify them in his responses.[59]  However, the Trustee is under no obligation to specifically identify which documents are responsive to each request.[60]   *See MGP Ingredients, Inc. v. Mars, Inc.*, No. CIV.A.06-2318JWL-DJW, 2007 WL 3010343, at *3 (D. Kan. Oct. 15, 2007) ("If the producing party produces documents in the order in which they are kept in the usual course of business, the Rule imposes no duty to organize and label the documents, provide an index of the documents produced, or correlate the documents to the particular request to which they are responsive."); *Pressman v. Publix Super Markets, Inc.*, No. 06-61350-CIV, 2007 WL 9700560, at *4 (S.D. Fla. Oct. 1, 2007) (denying motion to compel party to reorganize produced documents to correspond with requests where there were no allegations that party "attempted to hide a few important documents in the midst of numerous marginally relevant documents"); 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2213 at p. 431 (2d ed.

---

[59] ECF No. 386 at 12-13.

[60] Ford Credit has never argued that the Trustee failed to produce documents "as they are kept in the usual course of business" and, if necessary, the Trustee can demonstrate that it complied with Rule 34(b)(2)(E).  *See*, e.g., *In re Adelphia Commc'ns Corp.*, 338 B.R. 546, 552 (Bankr. S.D.N.Y. 2005) (permitting access to warehoused documents of bankruptcy debtor was sufficient to meet requirement that documents be produced "as they are kept in the usual course of business.").

1994) ("Requiring . . . that these requested documents be segregated according to the requests would impose a difficult and usually unnecessary additional burden on the producing party.").

33.    Notably, Ford Credit did not request that the Trustee produce documents in a manner such that they would be identifiable by request, nor did it ask the Court to impose such a requirement on the Trustee prior to serving its requests.  Ford Credit "formulated the requests in the manner it did . . . [and therefore] must take responsibility for undertaking the task of determining which documents relate to each set of its . . . requests." *MGP Ingredients*, 2007 WL 3010343, at *4.

34.    Even if the Trustee had some obligation to identify responsive documents for each request, the Trustee should not be required to do so where, as here, that information is easily obtainable from another source.  As noted above, the Trustee already identified these documents— by category—in June 2022 when he filed his exhibit list with the Court.[61]  The Trustee then provided even more information when he annotated 443 of these exhibits when responding to Ford Credit's second motion for summary judgment.[62]  Ford Credit knows precisely where to find the responsive documents.  *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 577 (N.D. Tex. 2018) ("[T]he attorney or party serving discovery requests [must] make[] an affirmative certification that the requests are not unreasonable or unduly burdensome or expensive, considering the needs of the case, [and] prior discovery in the case . . ..").

### 1.    *Request For Production No. 1*

35.    This request seeks documents and information concerning Reagor-Dykes' fraudulent intent in making the transfers to Ford Credit.[63]  The Trustee responded by incorporating

---

[61] ECF No. 320.
[62] ECF No. 341-1.
[63] ECF No. 386-2 at 3.

by reference his detailed supplemental answer to Interrogatory No. 1, and he further referred Ford

Credit to the Trustee's exhibit list and the exhibits attached in response to Ford Credit's two

motions for summary judgment.[64] Above, the Trustee identified this evidence again by trial exhibit

numbers, where applicable.  Given the posture of this case, and the level of detail already provided

to Ford Credit, the Trustee's supplemental response is more than sufficient.  Fed. R. Civ. P.

26(b)(2)(C).

        **2.**    ***Request For Production Nos. 13-16***

    36.    Request for Production Nos. 13-16 seek documents and information concerning

Reagor-Dykes' financial condition.[65]  Ford has had this information for years, and it knows where

to find it:

    The Trustee's Exhibit List

- Factual resumes & guilty pleas: PX0001—PX0026-3

- Cash flow emails: PX0028—PX0086

- Robert Reilly's expert report: PX0487

- BlackBriar adjusted financial work papers: PX0489—PX0506

- Dealer financial statements: PX0507—PX0705

- Bank statements and spreadsheets: PX0706—PX1010

- Liquidity: PX1316—PX1330

- RLOC draws: PX1331—PX1336

- Overline: PX1337—PX1357[66]

---

[64] *Id.*  The Trustee objected to the extent that Request for Production No. 1 sought voluminous and irrelevant documentation about Reagor Dykes' dealings with particular creditors.  *Id.*  Ford Credit did not move to compel production of this subset of records.

[65] *Id.* at 7-8.

[66] Because the requests asked for financial information "to the present," the Trustee also referred Ford Credit to the monthly operating reports filed in the bankruptcy cases and to post-petition bank statements.  *Id.*

Affidavits

- Affidavit of Shane Smith

Deposition Testimony Solicited By Ford Credit Concerning Reagor-Dykes' Financial Condition

- Deposition of Robert Reilly

- Deposition of Joseph Danko

**3.    *Request For Production Nos. 18-19***

37.    Request for Production Nos. 18-19 seek documents and information concerning Reagor-Dykes' insolvency.  Not only has Ford Credit had records responsive to these requests for years, but it also has had the expert report of Robert Reilly since January 4, 2022.[67]  It also deposed Robert Reilly for the maximum amount of time permitted under the Federal Rules.  Ford Credit also knows where to find these records:

The Trustee's Exhibit List

- Cash flow emails: PX0028—PX0086

- Factual resumes & guilty pleas: PX0001—PX0026-3

- Expert reports: PX0487—PX0488

- BlackBriar adjusted financial work papers: PX0489—PX0506

- Dealer financial statements: PX0507—PX0705

- Bank statements and spreadsheets: PX0706—PX1010

- Liquidity: PX1316—PX1330

- RLOC draws: PX1331—PX1336

- Overline: PX1337—PX1357

---

[67] ECF No. 320, Trustee's Exhibit List, PX0487, Expert Report of Robert Reilly (Reilly identifies in his report the records and information he relied on to conclude that Reagor-Dykes was insolvent at all times during the two years prior to the bankruptcy filing).

- Suspicious behavior audit: PX1420—PX1434

<u>The Expert Report Of Robert Reilly</u>

- Appendix A – Data and Documents Considered[68]

- Appendix I – Documents Cited and Relied On[69]

<u>Deposition Testimony Solicited By Ford Credit Concerning Reagor-Dykes' Insolvency</u>

- Deposition of Robert Reilly

<u>The Trustee's Deposition Excerpt Designations</u>

- Lindsay Williams[70]

<u>Affidavits</u>

- Affidavit of Shane Smith[71]

*     *     *

38.     The Trustee respectfully requests that the Court deny Ford Credit's motion to compel in its entirety.

---

[68] *Id.* at 38-51 (Reilly identified the items produced during discovery by Bates label).

[69] *Id*. at 319-1161.

[70] ECF No. 317 at 32.

[71] ECF No. 337-7, App. 952-58.  The requests also ask for documents or information about when Reagor-Dykes knew that it was insolvent.  ECF No. 386-2, Request for Production No. 19 at 9.  The factual resumes of most of the former Reagor-Dykes' employees discussed the entities' financial difficulties, Shane Smith does as well in his factual resume and affidavit, as does Lindsay Williams in her factual resume and in her deposition testimony.  As Ford Credit knows, and by way of example, Ms. Williams testified that RDAG was undercapitalized and had inadequate cash flow during 2016, 2017, and 2018.  ECF No. 341, Trustee 2nd MSJ Cntr. App. 164-65, Ex. A-15, Williams Dep. at 24:11-25:20.

Dated: February 17, 2023                Respectfully submitted,

**BRACEWELL LLP**


By:*/s/ Bryan S. Dumesnil*
    Bryan S. Dumesnil
    State Bar No. 00793650
    bryan.dumesnil@bracewell.com
    Bradley J. Benoit
    State Bar No. 24012275
    brad.benoit@bracewell.com
    711 Louisiana, Suite 2300
    Houston, Texas 77002
    (713) 223-2300 – Telephone
    (800) 404-3970 – Facsimile


**STRICKLIN LAW FIRM, P.C.**


By:*/s/ Samuel M. Stricklin*
    Samuel M. Stricklin
    State Bar No. 19397050
    sam.stricklin@stricklaw.pro
    2435 N. Central Expy
    Suite 1200, Palisade, Bldg. II
    Richardson, Texas 75080
    (972) 238-8687 – Telephone

**COUNSEL TO CREDITORS' TRUSTEE
DENNIS FAULKNER, AS SUCCESSOR TO
DEBTORS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedures on February 17, 2023.

Kevin M. Sadler
kevin.sadler@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
(650) 739-7518 – Telephone
(650) 739-7618 – Facsimile

Michael S. Goldberg
michael.goldberg@bakerbotts.com
**BAKER BOTTS LLP**
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234 – Telephone
(713) 229-1522 – Facsimile

Craig A. Leslie
cleslie@phillipslytle.com
Jacob S. Sonner
jsonner@phillipslytle.com
**PHILLIPS LYTLE LLP**
One Canalside
125 Main Street
Buffalo, New York 14203
(716) 847-8400 – Telephone
(716) 852-6100 – Facsimile

*/s/ Bryan S. Dumesnil*
Bryan S. Dumesnil